# Exhibit A

eFiled
01/23/2024 4:11:52 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA RECTOR**<br>503 49th St. NE<br>Washington DC, 20019,<br><br>on behalf of herself and all others<br>similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>**WALMART INC.,**<br>702 Southwest Eighth St.<br>Bentonville, AR, 72716<br><br>　　　　Defendant. | CASE NO.:　　2024-CAB-000434<br><br>JUDGE:<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

Plaintiff Christina Rector, by and through undersigned counsel, bring this class action

complaint against Defendant Walmart, Inc. ("Walmart"), individually and on behalf of all others

similarly situated, and allege upon personal knowledge as to her own acts and experience, and as

to all other matters, upon information and belief, including the investigation conducted by

Plaintiff's counsel.

## NATURE OF THE ACTION AND BACKGROUND FACTS

1.　　Prices charged at Walmart stores in the District of Columbia are not set by the

local store management, but instead are set by Walmart's corporate management.

2.　　When Walmart's corporate management sets a new price for an item at a D.C.

store, it sends that price to the store, and the employees at the store update the price by

completing a price change procedure within Walmart's computer system and printing a shelf tag.

3.      When the shelf tag is printed, the price is automatically updated in the store's point-of-sale system ("register").

4.      While printing the shelf tag automatically updates the price that customers are charged at the register, to change the price displayed on the shelf, employees must manually affix the new shelf tag to the shelf.

5.      To avoid a discrepancy between the price displayed on the shelf and the price charged at the register, employees must immediately affix the new shelf tag to the shelf upon printing it.

6.      But employees frequently print a new shelf tag and never affix it to the shelf. When employees fail to affix the new shelf tag to the shelf, the printing of the shelf tag causes the register price to be automatically updated with the new, higher price, while the old, lower price continues to be displayed on the shelf.

7.      The failure to timely implement price changes sent by Walmart corporate management may result in disciplinary action. Therefore, Walmart employees are incentivized to print shelf tags as quickly as possible, thereby updating the register price, even if they do not have time to affix those tags to the shelves.

8.      As a result of Walmart's failure to update the shelf-tag price, when customers at Walmart's D.C. locations select an item to purchase, the price that Walmart charges them at the register is frequently higher than the price on the shelf tag viewed by customers when selecting an item.

9. For over a year, Plaintiff's counsel has conducted an investigation of Walmart's two D.C. locations: 310 Riggs Road, N.E. (Walmart Supercenter #3035) and 5929 Georgia Avenue, N.W. (Walmart Supercenter #5968). [1]

10. The investigation was conducted by Scott Kucik, an experienced private investigator in the D.C. area. See Affidavit of Scott Kucik, attached as Exhibit A to this Complaint.

11. To date, the investigation has uncovered over 400 items that were mispriced throughout Walmart's D.C. locations. Many of the mispriced items remained uncorrected for months.

12. Mispriced items were confirmed by comparison of the shelf-tag price with Walmart's in-store price scanner in their mobile app (which reflects the price at the register); some items were additionally confirmed through actual purchase at the register.

13. The following pages contain examples of these mispriced items, with the dates and details of the mispricing, and imaging of the shelf-tag price alongside the in-store scanner price[2] and/or an image of the physical receipt.

---

[1] A third Walmart store, located at 99 H St. NW, Washington (the "H Street" location), closed on approximately March 31, 2023. An initial investigation of the H Street location undertaken by Plaintiff's counsel prior to its closing uncovered mispricing at that location as well. However, an extensive investigation of that store could not be completed.

[2] For the images of the shelf-tag and in-store scanner price, these are a screenshot of the investigator's phone. When the Walmart mobile app's in-store scanner feature is opened, the phone's camera is accessed. A consumer can then scan the shelf-tag's barcode with the camera, and the app will display the price at the bottom of the screen. A screenshot taken at that moment records the physical shelf-tag, as well as the app's display of the price, as seen below.

14.    On August 24, 2022, at Walmart's Riggs Road location, the shelf-tag price for an

Anker 25c Wi-fi Connected vacuum was $129.00, but Walmart charged $149.00 at the register

(left image). This price discrepancy continued through at least September 6, 2022 (right image).

 

15.    On August 24, 2022, at Walmart's Riggs Road location, the shelf-tag price for a Farberware Cordless 2 speed immersion blender was $39.88, but Walmart charged $47.97 at the register (left image). This price discrepancy continued through at least September 6, 2022 (right image).

 

16.    On June 17, 2022, at Walmart's Riggs Road location, the shelf-tag price for a bottle of Arbor Mist Mango Strawberry Wine was $7.48, but Walmart charged $9.48 at the register (left image). This price discrepancy continued through at least March 26, 2023 (right image).




17.    On November 6, 2022, at Walmart's Georgia Avenue location, the shelf-tag price for an Oster DiamondForce 12-inch x 16-inch nonstick electric skillet was $41.00, but Walmart charged $49.96 at the register (left image). The price discrepancy continued through at least January 30, 2023 (right image).




18.     On June 6, 2022, at Walmart's Riggs Road location, the shelf-tag price for a KitchenAid 2-speed hand blender was $39.92, but Walmart charged $44.98 at the register (left image). The price discrepancy continued (and in fact the register price increased to $52.00 with no correction to the shelf-tag), through at least September 6, 2022 (right image).




19.    On November 22, 2022, at Walmart's Georgia Avenue location, the shelf-tag price for Hefty Steelsak large trash bags was $12.58, but Walmart charged $14.48 at the register (left image). The price discrepancy continued through at least March 15, 2023 (right image).

 

20.    On November 4, 2023, at Walmart's Georgia Avenue location, the shelf-tag for a

Mainstays 20-inch griddle was $19.98, but Walmart charged $24.98 at the register.



21.    On November 5, 2023, at Walmart's Georgia Avenue location, the shelf-tag for a Klean Strip gallon container of paint remover was $39.96, but Walmart charged $49.98 at the register:



22.    On November 5, 2023, at Walmart's Georgia Avenue location, the shelf-tag for a Klean Strip one-quart spray bottle of paint remover was $11.84, but Walmart charged $17.97 at the register:



23.    On November 5, 2023, at Walmart's Georgia Avenue location, the shelf-tag for a

32 oz. container of Drydax spackle was $7.12, but Walmart charged $8.97 at the register:



24.    On November 25, 2023, at Walmart's Riggs Road location, the shelf-tag for a

Rowenta clothing iron was $59.00, but Walmart charged $66.00 at the register:



25.    On November 25, 2023, at Walmart's Riggs Road location, the shelf-tag for a bottle of La Marca Prosecco wine was $13.98, but Walmart charged $14.98 at the register:



26.    On November 25, 2023, at Walmart's Riggs Road location, the shelf-tag for a

baseball bat grip was $6.48, but Walmart charged $8.98 at the register:



27.    At all relevant times, Walmart knew or should have known that many of its shelf-

tag prices were different from the prices charged at the register.

28.    At all relevant times, Walmart knew or should have known that it was engaged in

the practice of failing to update shelf prices at its stores, including its Riggs Road and Georgia

Avenue locations, and was therefore providing consumers with misleading and incorrect price

information.

29.    At all relevant times, Walmart did not disclose to shoppers that its shelf-tag prices

may be different from the prices charged at the register.

16

30.     Consumers expect shelf-tag prices to be correct.

31.     This consumer expectation is reflected in vigorous enforcement actions and hefty penalties when state governments become aware of misleading pricing practices such as those alleged in this Complaint.

32.     Attorneys General in several jurisdictions have sought and recovered fines and penalties from stores that have presented misleading price information on shelf tags.[3]

33.     In *State of Missouri v. Walgreen Co.,* No. 1316-CV-21688 (Mo. Cir. Ct. June 17, 2016) (attached as Exhibit. B), the trial court imposed fines of $1,000 per violation on Walgreens for violating a consent judgment requiring Walgreens to timely update its shelf tag prices. The court stated that "[i]nformation contained on a tag on the store shelf should be information upon which a consumer can reasonably rely." *Id.* at pg. 9.

34.     In *People v. Wal-Mart, Inc.,* No. 37-2008-00096757-CU-BT-CTL (Cal. Sup. Ct. San Diego March 21, 2012) (Modified Final Judgment attached as Exhibit C), Walmart was ordered to pay more than $3 million for violating a consent judgment requiring Walmart to ensure its shelf tag prices were accurate and in accordance with the prices charged to the consumer.

35.     In *People v. Target Corp.,* No. CIV 1500474 (Cal. Sup. Ct. Marin Cty. Feb. 9, 2015) (Final Judgment attached as Exhibit D), Target was ordered to pay $3,352,500 in civil penalties for charging a price at the point-of-sale system that was different from the advertised

---

[3] Regarding a $500,000 settlement with Walgreens in 2016 for this practice, then New York AG Eric Schneiderman stated "when consumers purchase products at retail stores in New York, they should be able to rely on the prices displayed in advertisements and on shelf tags and not have to worry about being overcharged when they get to the register." https://www.nydailynews.com/news/politics/walgreens-duane-reade-overcharged-customers-probe-article-1.2609183 (last visited Aug. 24, 2023).

price. *Id.* at pp. 13-14. Target was also ordered to conduct weekly expired price audits by having personnel walk the entire store to search for and remove expired shelf tags. *Id.* at pg. 8.

## PARTIES

36.    Plaintiff Christina Rector is an adult resident of Washington, D.C. At various times in the three years prior to the filing-date of this complaint, Ms. Rector shopped at the Walmart stores located at 99 H Street, N.W., 5929 Georgia Avenue, N.W., and 310 Riggs Road, N.E. While shopping at these stores, Ms. Rector purchased items for which the price that Walmart charged at the register was higher than the price displayed on the shelf tag.

37.    Defendant Walmart is a Delaware corporation with its principal offices and headquarters located in Bentonville, Arkansas.

38.    Walmart, a mass merchandiser of consumer products, operates over 4,700 stores in the United States, including two stores in the District of Columbia.

## JURISDICTION AND VENUE

39.    The Court has subject matter jurisdiction under D.C. Code § 28-3905(k)(2).

40.    The Court has personal jurisdiction over Walmart because Walmart conducts business in the District of Columbia, is registered to do business in the District of Columbia, and the conduct at issue occurred at Walmart stores in the District of Columbia.

41.    Venue is proper in this forum because this Court has personal jurisdiction over Walmart.

## FACTS REGARDING PLAINTIFF CHRISTINE RECTOR'S PURCHASES

42.    Plaintiff Christine Rector purchased Tide laundry detergent for personal, household, or family purposes in approximately June of 2022, at the Walmart located at 99 H St. NW, Washington.

43.    The shelf tag stated that the detergent was being offered at a price of $9.99.

44.    At the register, Plaintiff Rector was charged $11.99.

45.    Plaintiff Rector was charged more than the advertised price on the shelf tag.

46.    By means of its shelf tag, Walmart advertised detergent as being available at a price of $9.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

47.    Walmart did not disclose that its shelf tag price for detergent was different from its register price.

48.    When Plaintiff Rector noticed the discrepancy and informed the cashier, the cashier told her she would still have to pay the higher register price. Because she was already at the register and needed laundry detergent, Plaintiff Rector paid the higher price.

49.    Plaintiff Rector shopped for the same bottle of Tide laundry detergent, sometime between December 2022 and January 2023, at Walmart's Georgia Avenue location.

50.    The shelf tag stated that the detergent was being offered at a price of $9.99.

51.    At the register, Plaintiff Rector was charged $11.99.

52.    Plaintiff Rector was charged more than the advertised price on the shelf tag.

53.    By means of its shelf tag, Walmart advertised detergent as being available at a price of $9.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

54.    Walmart did not disclose that its shelf tag price for detergent was different from its register price.

55.    When Plaintiff Rector noticed the discrepancy and informed the cashier, she was again told that she would have to pay the register price. This time, rather than pay the higher price again, Plaintiff Rector left the detergent there.

56.    Due to Walmart's practice of mispricing products on its shelf price tags, Rector was forced to spend time and resources traveling to another store to purchase the detergent.

57.    Plaintiff Rector also purchased a package of Charmin toilet paper for personal, household, or family purposes in September of 2022 at the Riggs Road Walmart.

58.    The shelf tag stated that the toilet paper was being offered at a price of $7.99.

59.    At the register, Plaintiff Rector was charged $9.99.

60.    Plaintiff Rector was charged more than the advertised price on the shelf tag.

61.    By means of its shelf tag, Walmart advertised Charmin toilet paper as being available at a price of $7.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

62.    Walmart did not disclose to Plaintiff Rector that its shelf tag price for Charmin toilet paper was different from its register prices.

63.    When Plaintiff Rector noticed the misprice and requested a refund, she was again told that she would have to pay the higher price. Because she was already at the register and needed toilet paper, Plaintiff Rector paid the higher price.

64.    As to each the above-described items purchased by Plaintiff Rector, Walmart misrepresented the price.

65.    As to each of the above-described items purchased by Plaintiff Rector, Walmart concealed the actual price and instead represented that the items were sold at an incorrect price.

66.     As to each of the above-described items purchased by Plaintiff Rector, Walmart advertised said items at a price at which it had no intent to sell them.

67.     Price is important to Plaintiff Rector and other consumers in making shopping decisions.

68.     Incorrect prices on shelf tags had a tendency to mislead Plaintiff Rector and other consumers.

### FACTS REGARDING WALMART'S DATA COLLECTION

69.     Upon information and belief, Walmart collects 2.5 petabytes of data from 1 million customers every hour.

70.     Upon information and belief, one petabyte is equivalent to 20 million filing cabinets of text.

71.     Upon information and belief, the data generated by Walmart every hour is equivalent to 167 times the books in the Library of Congress.

72.     Upon information and belief, Walmart tracks and targets every consumer individually.

73.     Upon information and belief, Walmart has customer data of close to 145 million Americans.

74.     Upon information and belief, Walmart maintains for each customer detailed purchase data for each product purchased, including the universal product code (UPC), the price paid, the date of purchase, and the store at which the product was purchased.

75.     For returns without receipts, Walmart can look up store purchases if the customer presents the debit or credit card used to make the purchase.

76.    For example, in *Farneth v. Walmart Stores, Inc.,* Civil Action-Class Action, No. G.D. 13-11472, Allegheny County, Pennsylvania, Walmart was ordered to produce detailed information on thousands of transactions where the customer did not pay cash, including the customer's name and address, the date of the transaction, the address of the store, and the amount of the coupon tendered with the transaction.

### CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Rule 23(b)(3) of the Superior Court Rules of Civil Procedure on behalf of herself and all others similarly situated, as members of the following class:

> All persons who, during the three-year period prior to the date of filing of this Complaint, were charged more for an item than the displayed shelf-tag price at a Walmart store located in Washington, D.C.

78.    Excluded from the Class are (i) Walmart's employees; (ii) all persons who make a timely election to be excluded from the Class; and (iii) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

79.    The class contains more than 40 class members.

80.    Through an investigation by counsel, Plaintiff has identified more than 400 items for which Walmart charged consumers more than the shelf-tag price.

81.    Plaintiff is an adequate class representative. Plaintiff has hired experienced class counsel to prosecute this claim. Plaintiff's interest in this litigation is identical to that of the putative class members: the recovery of statutory damages under D.C.'s Consumer Protection Procedures Act ("CPPA").

82.    Plaintiff's claim and those of the putative class members involve common questions of law, including: (i) Is Walmart a merchant under the CPPA? (ii) Is price a material

term in a transaction involving the sale of goods to consumers? (iii) Would a reasonable person, while shopping, attach importance to the shelf-tag price? (iv) Did Walmart know or have reason to know that price was important to Plaintiff and the putative class members in making purchasing decisions? (v) Did Walmart disclose to Plaintiff and the putative class members that the price charged at the register would be higher than the shelf-tag price? (vi) Are Plaintiff and the class members entitled to recover statutory damages under the CPPA for Walmart's practice of offering items for sale at the shelf-tag price, but charging customers more than the shelf-tag price when they presented the items for purchase?

83.    Plaintiff's claims are typical of the putative class members' claims because Plaintiff and the putative class members were injured through Walmart's uniform misconduct in charging more than the shelf-tag price for items. Plaintiff is pursuing the same claims and legal theories on behalf of herself and the putative class members, and there are no defenses that would render Plaintiff atypical.

84.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages for each putative class member are small compared to the expense that would be required to litigate the claims on an individual basis, and the legal issues are identical for every putative class member.

85.    Upon information and belief, no putative class member has filed a separate action against Walmart with respect to practice of charging a higher price at the register for an item than the price reflected on the shelf tag, indicating that the putative class members have no interest in prosecuting their claims on an individual basis.

86.     Given Walmart's uniform conduct, the simple nature of the transaction at issue (the selection and purchase of an item from Walmart), and uniform statutory damages for every putative class member, there should be no difficulties in managing this case as a class action.

87.     The concentration of this litigation in this forum is desirable because the activity occurred in the District of Columbia, the claim is governed by District of Columbia law, and the majority of the class members are District of Columbia residents.

## CAUSES OF ACTION

### COUNT I
**Violations of the District of Columbia's Consumer Protection Procedures Act
DC Code §§ 28-3901, *et seq*.**

88.     Plaintiff re-alleges and incorporate herein all the foregoing allegations.

89.     Plaintiff is, and was at all relevant times, a consumer as defined by D.C. Code § 28-3901(a)(2).

90.     Plaintiff purchased items such as laundry detergent and toilet paper from Walmart for personal, household, or family purposes.

91.     Walmart is, and was at all relevant times, a merchant, as defined by D.C. Code § 28-3901(a)(3).

92.     Walmart in the ordinary course of business directly sells consumer goods to consumers like Plaintiff.

93.     Price is a material term in the purchase of goods.

94.     A reasonable person would attach importance to the price of consumer goods while shopping.

95.     Walmart shoppers, including Plaintiff, find price information important and material in making purchasing decisions.

96.     Walmart knows or has reason to know that its customers, including Plaintiff, regard or are likely to regard price as important in making purchasing decisions.

97.     Walmart's marketing strategies frequently involve references to lower prices. For example, Walmart offers price "rollbacks" on certain items.[4]

98.     At all relevant times, by mispricing items in their Washington, D.C. stores as described and set forth above, Walmart engaged in unfair and deceptive trade practices proscribed by D.C. Code § 28-3904.

99.     Walmart violated § 28-3904(e) by misrepresenting a material fact which had a tendency to mislead.

100.    The material fact that Walmart misrepresented was the price of items purchased by Plaintiff and the putative class members.

101.    Walmart also violated § 28-3904(f) by failing to state a material fact when the failure tends to mislead.

102.    The material fact that Walmart failed to state was that the shelf-tag prices of the items in its stores were lower than the prices charged at the register.

103.    Consumers, including Plaintiff, expect a shelf-tag price to reflect the current price of an item, not an older, lower price.

104.    Consumers, including Plaintiff, would find the true cost of items at Walmart stores to be important in making purchasing decisions.

---

[4] A price rollback is a temporary price reduction on an item in a Walmart store. https://www.8thandwalton.com/blog/walmart-rollback/#:~:text=What%20Is%20a%20Walmart%20Rollback,%E2%80%9CWas%2FNow%E2%80%9D%20signing. (last visited Oct. 9, 2023).

105.    Walmart violated § 28-3904(h) by advertising and/or offering goods without the intent to sell them as offered.

106.    Walmart advertised and/or offered goods to Plaintiff and the putative class members with the intent to sell them at higher prices.

107.    At all times relevant hereto, Plaintiff acted reasonably by relying on Walmart's statements, advertisements, and representations as to the shelf price of its products.

108.    Walmart's unfair and deceptive trade practices caused Plaintiff and the putative class members to suffer damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the putative class members respectfully requests that the Court enter judgment in Plaintiff's favor and against Walmart as follows:

A.    Entering an Order that this case proceed as a class action, and appointing Plaintiff and Plaintiff's counsel as representatives for the class;

B.    Entering an Order enjoining Walmart from continuing its unlawful conduct (§ 28-3905(k)(1)(D));

C.    Awarding statutory and punitive damages in an amount to be determined at trial ((§ 28-3905(k)(1)(A) and (C));

D.    Ordering Walmart to pay the attorney fees of Plaintiff and the putative class members ((§ 28-3905(k)(1)(B);

E.    Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Respectfully submitted,

*/s/ Drew LaFramboise*
Veronica Nannis, Esq. (# 485151)
Drew LaFramboise, Esq. (# 1018140)
**JOSEPH, GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com

Nicole T. Fiorelli, Esq. (pro hac vice to be filed)
Frank A. Bartela, Esq. (pro hac vice to be filed)
Patrick J. Perotti, Esq. (pro hac vice to be filed)
Shmuel S. Kleinman, Esq. (pro hac vice to be filed)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
pperotti@dworkenlaw.com
skleinman@dworkenlaw.com

*Attorneys for Plaintiff Christine Rector and the Class*

# IN THE SUPERIOR COURT
## OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUDREY BAKER, CHRISTINA RECTOR, Individually and on behalf of others similarly situated, | Case No. _____ |
| | Judge: _____ |
| Plaintiffs, | |
| vs. | |
| WALMART INC., | **AFFIDAVIT OF SCOTT KUCIK** |
| Defendant. | |

1. I am over 18 years old and of sound mind.

2. I am a partner in the Company of CPI - Columbia Process and Investigative Services, LLC which was formed in 2015 with my brother and business partner, George Kucik, former Deputy Chief/Commander of Criminal Investigations with the District of Columbia Police Department.

3. Prior to forming CPI, I managed a large litigation service company specializing in Investigations, Legal Research, and Service of Process. I have approximately thirty years of experience working in the litigation service industry in and around the DC area.

4. I have conducted numerous investigations, inquiries, and research assignments.

5. Throughout this time, I have submitted numerous affidavits and/or given testimony, both in depositions and at trial, in multiple cases, most recently in a large construction litigation/arbitration matter.

6. Beginning in June of 2022, I was hired to investigate whether the stated shelf prices at Walmart stores in Washington D.C. were lower than the actual price that was being charged at the register.

7. I investigated the Washington D.C. Walmart stores located at 310 Riggs Road NE; 5929 Georgia Avenue NW; and 99 H Street NW.

8. Although included in my preliminary investigation, the H Street location closed in March of 2023, and therefore could not be included in my final investigation.

9. Since June of 2022, I have made at least 30 visits to the Walmart locations on Riggs Road and Georgia Avenue.

10. During the course of my investigation, I discovered hundreds of items at both Walmart locations in Washington D.C. where the stated shelf price was lower than the actual price that Walmart was charging.

11. This mispricing occurred in various areas of the store and was not limited to certain departments or dates, nor was it limited to instances of expired sales.

12. For example, I have seen mispricing occur in the grocery, freezer, home improvement, household appliance, and auto sections of the store.

13. A substantial number of the mispriced items went uncorrected for months.

14. For example, at Walmart's Riggs Road location, various flavors of Arbor Mist wines had a shelf-tag price of $7.48, but at the register Walmart charged $9.48. I have documentation of this error beginning in June of 2022 and continuing into at least March of 2023.

15. At Walmart's Riggs Road location, a Mainstays shoe rack had a shelf-tag price of $23.50, but at the register Walmart charged $29.97. I have documentation of this error beginning in July of 2022 and continuing into at least September of 2022.

16. At Walmart's Riggs Road location, a Crockpot slow cooker had a shelf-tag price of $26.94, but at the register Walmart charged $32.98. I have documentation of this error

beginning in June of 2022 and continuing into at least August of 2022.

17. At Walmart's Georgia Avenue location, Rain-X wiper blades had a shelf-tag price of $9.44, but at the register Walmart charged $11.54. I have documentation of this error, as well as similar errors on various sizes of Rain-X wiper blades, beginning in November of 2022 and continuing into at least July of 2023.

18. At Walmart's Georgia Avenue location, Hefty Steelsak trash bags had a shelf-tag price of $12.58, but at the register Walmart charged $14.48. I have documentation of this error beginning in November of 2022 and continuing through March of 2023

19. For other items, the price charged is significantly higher than the stated shelf price.

20. For example, on November 6, 2022 at Walmart's Georgia Avenue location, the shelf-tag price for a Better Homes and Garden Floor Lamp was $51.78, but at the register Walmart charged $85.98, an overcharge of $34.20.

21. On July 19, 2022 at Walmart's Riggs Road location, the shelf-tag price for a Keurig single-serve coffee maker was $67.00, but at the register Walmart charged $89.00, an overcharge of $22.00.

22. On August 24, 2022 at Walmart's Riggs Road location, the shelf-tag price for an Anker vacuum was $129.00, but at the register Walmart charged $149.00, an overcharge of $20.00.

23. On October 13, 2022 at Walmart's Riggs Road location, the shelf-tag price for a Farberware toaster oven was $98.00, but at the register Walmart charged $119.00, an overcharge of $21.00.

24. For all mispriced items, I compiled photo evidence of the incorrect shelf price and the higher price charged at the register via Walmart's in-store price scanner in their mobile

app.

25. As further evidence, I purchased a number of the mispriced items and retained receipts showing that the price charged was higher than the stated price on the shelf.

26. Based on my investigation, the issue of mispricing at Washington, D.C. Walmart stores has been ongoing since at least June 2022 and to my knowledge has not been corrected as of the date of this Affidavit.

27. Further, based on my observations, the Walmart locations at Riggs Rd. and Georgia Ave. are typically very busy, and customers try to check out quickly so as to keep the lines moving. Based on my experience, this type of environment makes it very difficult for customers to notice mispriced items while checking out.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Signature

SCOTT J. KLEIN

Print Full Legal Name

12.15.23
_____
Date

Sworn to or affirmed and subscribed before me by _Scott Klein_ on this 15TH day of _December_, 2023.

_____
Signature of Notary Public

SUZANNE E CRONIN

SUZANNE E CRONIN
Notary Public - State of Maryland
Harford County
My Commission Expires Aug 20, 2025

State of _Maryland_

My Commission expires: _August 20, 2025_
(date)

1

2

3

4

5

6

7

F I L E D
Clerk of the Superior Court

MAR 2 1 2012

By: D. JELLISON, Deputy

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF SAN DIEGO**

10  THE PEOPLE OF THE STATE OF CALIFORNIA,     |  Case No.: 37-2008-00096757-CU-BT-CTL

11                                      Plaintiff,

12                    v.                              **MODIFIED FINAL JUDGMENT
                                                    PURSUANT TO STIPULATION**

13  WAL-MART, INC., a Delaware corporation,

14

15                                      Defendant.

16

17       The People of the State of California, Plaintiff, by and through KAMALA D. HARRIS,

18  Attorney General of the State of California, by, ALBERT NORMAN SHELDEN, Deputy

19  Attorney General; BONNIE M. DUMANIS, San Diego District Attorney, by GINA DARVAS,

20  Deputy District Attorney; and JAN I. GOLDSMITH, San Diego City Attorney, by TRICIA

21  PUMMILL, Assistant City Attorney; and Defendant WAL-MART STORES, INC., a Delaware

22  corporation, ("Wal-Mart" or "Defendant") by and through its attorneys, GREENBERG

23  TRAURIG, LLP, by ROBERT HERRINGTON, (collectively, "the Parties") having stipulated

24  that this Court has jurisdiction over them and this matter and that this Modified Final Judgment

25  Pursuant to Stipulation ("Modified Judgment") may be signed without the taking of proof,

26  without trial or adjudication of any issue of fact or law herein, and without the Parties'

27  stipulation constituting evidence of an admission by Defendant of any liability or wrongdoing;

28            IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1

**JURISDICTION**

1.    This action is brought under California law and this Court has jurisdiction of its subject matter and the Parties.

2.    Consistent with the Stipulation to Modify Final Judgment, this Modified Judgment resolves the investigation by the Plaintiff against the Defendant, relating to price scanning discrepancies and violations of the Stipulated Final Judgment originally entered by this Court on November 24, 2008 ("Original Judgment"), and is conclusive with respect to those matters set forth in this Modified Judgment regarding price scanning discrepancies which occurred in the State of California before the date of entry of this Modified Judgment.

**INJUNCTION**

3.    The provisions of this injunction are applicable to Defendant, Wal-Mart doing business as Wal-Mart Discount Stores and Supercenters ("Wal-Mart Stores") in California, and to its officers, directors, employees, agents and representatives who have responsibility for the Wal-Mart Stores in California, when acting within the course and scope of their agency and employment, and to the successors and assignees of Wal-Mart, and to all natural persons, partnerships, corporations, and other entities acting for, under, by, through, on behalf of, or in concert with Wal-Mart, who have responsibility for the Wal-Mart Stores in California, with actual or constructive notice of this Judgment. All obligations imposed upon Defendant by the terms of this Modified Judgment are ordered pursuant to Business and Professions Code sections 17203 and 17535.

4.    Wal-Mart and all persons and entities set forth in Paragraph 3 above are hereby permanently enjoined and restrained, pursuant to Business and Professions Code sections 17203 and 17535, from:

      A.    Making or causing to be made to the public any statement representing a price for an item offered for sale and charging a greater price at the time the item is purchased in violation of the California Business and Professions Code sections 17200 and 17500;

1    B.    At the time of sale of a commodity, charging an amount which is greater

2  than the price which is then advertised, posted, marked, displayed or quoted for that

3  commodity, in violation of Business and Professions Code section 12024.2(a)(1); and

4    C.    At the time of sale of a commodity, charging an amount greater than the

5  lowest price posted on the commodity itself or on a shelf tag that corresponds to the

6  commodity, notwithstanding any limitation of the time period for which the posted price

7  is to be in effect, in violation of Business and Professions Code section 12024.2(a).

8    5.    Wal-Mart, and all persons and entities set forth in Paragraph 3 above, are ordered

9  for a period of four (4) years from the date of entry of the Original Judgment to initiate and

10  enforce in all existing Wal-Mart Stores in California, and in every future Wal-Mart Store in

11  California, before opening for business, a program to promote pricing accuracy. Such program

12  shall consist of at least the following:

13    A.    Wal-Mart shall designate a person or persons at its corporate headquarters

14  who, with assistance as needed, will be responsible for receiving and maintaining price

15  audit information, consumer complaints and weights and measures inspection reports

16  from all Wal-Mart Stores in California. Wal-Mart has provided the names of the

17  designated persons and their contact information to Plaintiff. Wal-Mart will provide the

18  name and contact information of any individual who replaces or supplements the

19  individuals currently designated within 30 calendar days of that assignment, by letter to

20  the Consumer Protection Unit of the Office of the Attorney General, 110 West A Street,

21  Suite 1100, San Diego, California 92101.

22    B.    Wal-Mart shall designate an employee or employees in every Wal-Mart

23  Store in California whose responsibilities shall include pricing accuracy. These efforts

24  shall include, among others, department managers who shall scan features on a weekly

25  basis, office associates or asset protection personnel who shall review approximately 250

26  price changes weekly and sales floor assistant managers who shall be responsible for

27  implementation of the above program. Pricing errors discovered during such reviews

28  shall be promptly corrected in the Wal-Mart Store. These employees shall also be

3

responsible for transmitting the information to the person or persons designated pursuant to Paragraph 5A above, at Wal-Mart's corporate headquarters within three hours after learning that a price in the point of sale computer system is different from the currently advertised price for the item in the store or in advertising, if the price discrepancy will or is likely to affect other Wal-Mart Stores in California. Wal-Mart shall ensure that there are backup employees trained to handle the responsibilities for price accuracy. The employees described in this paragraph shall, among them, work a minimum of 40 hours per week on price accuracy duties.

6.    Wal-Mart, and all persons and entities set forth in Paragraph 3 above, are ordered for a period of five (5) years from the date of entry of the Original Judgment to initiate and enforce in all existing Wal-Mart Stores in California, and in every future Wal-Mart Store in California, before opening for business, a program to promote pricing accuracy. Such program shall consist of at least the following:

A.    Whenever any employee of Wal-Mart becomes aware that a customer in a Wal-Mart Store in California has been or is being charged a price for an item which is higher than the lowest price currently listed on the shelf, store sign or advertisement, Wal-Mart shall give the customer a three dollar ($3.00) reduction from the item's lowest posted price or advertised price, or if the item's lowest posted price or advertised price is three dollars ($3.00) or less, the customer shall receive one such item for free. If a customer is purchasing more than one of the same identical item for which a price discrepancy is found, in addition to either deducting $3.00 from the price of one such item, or giving the customer one such item for free, Wal-Mart shall charge that customer the lowest advertised price on all remaining identical items purchased by that same customer in the same purchase transaction and the discrepant price shall be corrected. The cashier shall send a system notification to inform the Wal-Mart employee in charge of implementing price changes in the Wal-Mart Store in California of the price discrepancy promptly. This program shall be referred to as the "$3.00 Off Program." If the merchandise has been inadvertently moved to an incorrect shelf or display location, or

4

1    the price or signage for the item was fraudulently altered, the scanned price for the

2    particular item shall apply.

3         B.    Wal-Mart shall inform customers of the policy set forth in Paragraph 6A

4    above, by posting a sign at every check-out stand in every Wal-Mart Store in California

5    in a location where it is noticeable and easily readable by a customer who is standing in

6    the check-out line.  The signs shall state "If an item scans at a price higher than the shelf

7    or advertised price, WE WILL CORRECT THE ERROR AND DEDUCT $3.00 FROM

8    THE LOWEST ADVERTISED PRICE OF ONE SUCH ITEM.  If the lowest advertised

9    price is $3.000 or less, you will receive the item for free.  You will be charged the lowest

10   advertised price for all additional identical items you are buying at the same time."  Such

11   signs shall be printed in both English and Spanish.  Each sign shall be the size and in the

12   font of the document marked as Exhibit A to this Modified Final Judgment.

13       7.    Nothing in this Injunction shall be a defense to an action by the People for a future

14   violation of the Business and Professions Code.

<strong>MONETARY RELIEF</strong>

16       8.    Pursuant to Business and Professions Code sections 17206 and 17536, Wal-Mart

17   shall on the date of the filing of this Modified Judgment, pay to Plaintiff one million seven

18   hundred fifty-four thousand four hundred sixty-five dollars ($1,754,465) in the form of three

19   separate checks as follows:  (1) a first check in the amount of four hundred thirty-four thousand

20   eight hundred twenty-one dollars ($434,821) payable the *"California Attorney General's*

21   *Office;"* (2) a second check in the amount of six hundred fifty-nine thousand eight hundred

22   twenty-two dollars ($659,822) payable to  the *"San Diego District Attorney's Office,;"* and (3) a

23   third check in the amount of six hundred fifty-nine thousand eight hundred twenty-two dollars

24   ($659,822) payable to the *"San Diego City Attorney's Office."*

25       9.    Wal-Mart shall on the date of the filing of this Modified Judgment, pay to Plaintiff

26   costs totaling two hundred forty-five thousand five hundred thirty-five dollars ($245,535), in the

27   form of  thirteen (13) separate checks payable as follows:

28   California Attorney General                                              $ 225,000

5

Modified Final Judgment Pursuant to Stipulation

| | |
|---|---|
| Calif. Dept. of Agriculture &Measurement Standards | $ 7,403 |
| Alameda Weights and Measures | $  308 |
| Fresno Dept. of Agriculture | $  512 |
| Kings County Agriculture & Measurement Standards | $   67 |
| Los Angeles County Agricultural Commissioner/Weights & Measures | $ 1,406 |
| Riverside County Weights & Measures | $ 5,296 |
| San Bernardino County Agriculture/Weights & Measures | $ 1,965 |
| San Diego County Agriculture, Weights & Measures | $  354 |
| San Joaquin County Weights & Measures | $  552 |
| Santa Clara County Weights & Measures | $ 2,192 |
| Shasta County Agriculture/Weights & Measures | $  278 |
| Sonoma Weights and Measures | $  202 |

10.     Wal-Mart shall, pursuant to Business and Professions Code sections 17203 and 17535, pay *cy pres* restitution in the sum of one hundred thousand dollars ($100,000) in the form of one check payable to the *"California Dept. of Food & Agriculture, Division of Measurement Standards"* to be used exclusively for its weights and measures package and price enforcement activities.

11.     All checks shall be delivered to the attention of Deputy District Attorney Gina Darvas, at the San Diego District Attorney's Office, 330 West Broadway, Suite 750, San Diego, California  92101.

12.     In the event of default by Wal-Mart as to any amount due pursuant to Paragraphs 8, 9 and 10, the whole amount shall be deemed immediately due and payable to the County of San Diego, the City of San Diego, and the State of California, and Plaintiff shall be entitled to pursue any and all remedies provided by law for the enforcement of this Modified Judgment. Further, any amount in default shall bear interest at the prevailing legal rate from the date of default until paid.

## RETENTION OF JURISDICTION

13.     Jurisdiction is retained for the purpose of enabling any party to this Modified Judgment to apply to the Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of this Modified Judgment, for the

6

1  | modification of any of its injunctive provisions, and for the enforcement of and/or punishment
2  | of violations of this Judgment.

3  |     14.    This Modified Judgment, the Stipulation for Modification of Judgment, and the
4  | Exhibits to each, represent the full and complete terms of the settlement entered into by the
5  | parties hereto. In any subsequent action undertaken by the People or Wal-Mart, no prior versions
6  | of any of its terms, that were not entered by the Court in this Modified Judgment, may be
7  | introduced for any purpose whatsoever. Defendant having complied with all of the monetary
8  | terms of the November 2008 Original Judgment, the terms of this Modified Judgment shall
9  | supersede all of the terms of the Original Judgment.

10 |     15.    This Modified Judgment may be modified only by order of this Court.

11 |     16.    The clerk is directed to immediately enter this Modified Judgment.

12 | IT IS SO ORDERED.

13 | Dated: _3-21-12_

As Civil Supervising Judge

JUDGE OF THE SUPERIOR COURT
**JEFFREY B. BARTON**

7

Modified Final Judgment Pursuant to Stipulation

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. | ) | |
| Attorney General Chris Koster, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV21688 |
| | ) | Division: 12 |
| WALGREEN CO., | ) | |
| An Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

NOW, on this 17th day of June, 2016, the Court enters the following Findings of Fact, Conclusions of Law and Judgment on the above captioned matter.

### I. Findings of Fact
#### A. Procedural History

1.    Plaintiff, State of Missouri, by and through the Office of the Attorney General for the State of Missouri ("Missouri") filed its lawsuit on August 27, 2013, alleging Defendant Walgreen Co. ("Walgreen") violated § 407.020.

2.    Missouri and Walgreen resolved the case with a Consent Judgment and Permanent Injunction ("Consent Judgment") which was

1

signed by the Court on June 4, 2014. The Consent Judgment enjoined various acts, including:

  a. Paragraph 21.B.i: "making or causing to be made any false or misleading statement to the public with respect to the period of time when an item is available at a reduced price, except during the grace periods described in Paragraphs 21.B.ii and iii below" and

  b. Paragraph 21.B.ii: "failing to remove from a store, within 12 hours of the time the offer expires, any Advertisement which displays an offer for a limited time period."

3.    On September 22, 2015, Missouri filed a Motion for Order to Show Cause and for Judgment of Civil Contempt and for Civil Penalties (hereinafter the "Motion") in which Missouri alleged that from July to October 2015, its investigators identified over 1600 tags that were displayed in Walgreen stores more than twelve (12) hours past the date listed on the tag.

4.    The Court held an evidentiary hearing on December 16, 2015, at which Missouri and Walgreen presented evidence. The hearing was continued to January 4, 2016, for additional evidence. At the end of the hearing on January 4, 2016, the Court kept the record open for additional evidence, which was not available at the time of the hearing. This data,

marked as Exhibits 159 and 160 respectively, (the "supplemental Crossmark data") was submitted to the Court on April 29, 2016. Missouri and Walgreen submitted additional suggestions on the supplemental Crossmark data on May 2, 2016, and May 12, 2016, respectively. Final oral arguments were held on May 10, 2016.

### B. Facts Adduced by the Court

The Court finds the following facts by a preponderance of the evidence:

1.    Missouri inspectors documented 1,623 sales tags in 62 Missouri Walgreen stores between July 2015 and October 2015 that were displayed more than 12 hours after the date printed on the tag.

2.    Walgreen admitted that each of the tags documented by Missouri inspectors fell into one of 11 categories.[1] All 1,623 documented tags displayed dates on the bottom of the tag in black ink.  Many tags also included the words "Good" or "Good Thru" before the date.

3.    Per Missouri's evidence and Walgreen's admissions, the offers advertised on weekly and monthly ad tags as well as rewards tags generally expire on the date printed on the bottom of the tag.

---

[1] According to Walgreen, the 11 categories of tags are [1] in-store promotion, [2] seasonal in-store promotion, [3] hot buy, [4] was/now, [5] corporate clearance, [6] corporate last chance, [7] weekly ad, [8] monthly ad, [9] rewards, [10] coupon, and [11] miscellaneous. *See* Walgreen Exhibit 523.

3

4.    Missouri inspectors documented 309 tags, composed of 110 weekly ad tags, 53 monthly ad tags, and 146 rewards tags, displayed more than 12 hours after the tags' offers expired in select Missouri Walgreen stores. Exhibit 523.

5.    Walgreen offered evidence that the remaining 1,314 tags Missouri documented do not expire at the dates printed at the bottom of the tag.[2]

6.    Missouri also introduced data from Crossmark audits, which are conducted pursuant to Paragraph 23 of the Consent Judgment. Crossmark is the independent auditor that is required to audit no less than 25% of all Walgreen stores in Missouri each quarter to evaluate pricing accuracy. While the audits do not review sale tags for expiration dates (or other violations of Paragraph 21 of the Consent Judgment), if an item in the sample group scans at the register at a higher price than listed on the sale tag and that tag is expired, the auditor will record it as a type 1 error.  Type 1 errors are when the "scan price is higher than posted price-expired sale tag."  Pursuant to Paragraph 23.A.i. of the Consent Judgment, the audits are to be conducted in

---

[2] According to Walgreen, for 507 tags (categories 4 through 7), the price never expires. For 704 of these tags (categories 8 and 9), the price expires six months after the last "good through" or "good" date. For the remaining 40 tags (categories 10 and 11), the price does not expire on the listed date. See Walgreen Exhibit 523.

accordance with the National Conference of Weights and Measures Standards for pricing verifications. According to these standards, and the terms of the Consent Judgment, Walgreen must maintain a 98% compliance rate for pricing accuracy. The results of these audits were provided to Walgreen at the end of each quarter following entry of the Consent Judgment in June 2014.

7.    The Court reviewed all audits performed by Crossmark from the inception of the Consent Judgment through and including Calendar Year 2016, Quarter 1 data.

8.    All seven of the quarterly audits documented type 1 errors, identifying items with expired sale tags that scanned for a higher price than the posted price. Despite this, according to the independent audit data introduced in evidence, since the Consent Judgment was entered, Walgreen has maintained a compliance rate above 99.5%.

9.    Walgreen admitted awareness, mainly from reviewing the quarterly Crossmark audits starting in October 2014, that not all sale tags were being removed within 12 hours of their offer expiring and that expired sale tags were resulting in overcharges.

10.    As of November 2015, over a year after the entry of the Consent Judgment, some Missouri Walgreen store managers were still unaware of the Consent Judgment and Walgreen's obligation as a result.

5

11.     Walgreen, through the testimony of its corporate compliance officer, Kim Dascoli, (hereinafter Dascoli), admitted that after the entry of the Consent Judgment and the results of the ongoing Audits, no new policy was implemented for the removal of expired tags.

12.     Walgreen store manager Jacob King (King) testified that Walgreen could ensure all tags were removed when they expired by devoting an additional 1 to 2 hours per week to removing expired tags.

13.     King further testified that the price on a weekly ad tag or monthly ad tag, with hard expiration dates, will not ring up as the price on the tag, after that effective expiration date.

14.     King also testified that leaving tags up longer improves financial performance of Walgreen by driving sales of the ad items.

15.     The Court finds that the offers contained in the 309 tags, composed of 110 weekly ad tags, 53 monthly ad tags, and 146 rewards tags, were expired in violation of the Consent Judgment

## II. Conclusions of Law

### A. Contempt

1.     It is well settled under Missouri law that a party whose violation of a judgment is not intentional and contumacious cannot be held in civil contempt. *See Ream-Nelson v. Nelson*, 333 S.W.3d 22, 29 (Mo. Ct. App. W.D.

2010) (contemnor's conduct was not willful or intentional where business difficulties and financial problems prevented him from satisfying his obligations). Absent a finding of willful and contumacious conduct, a judgment of civil contempt is improper. *See id.*; *In re Brown*, 12 S.W.3d 398, 400-01 (Mo. Ct. App. E.D. 2000); *Townsend v. Townsend*, 713 S.W.2d 302, 303 (Mo. Ct. App. E.D. 1986).

2.    According to the independent audits, for the life of the Consent Judgment, Walgreen's rate of compliance was above 99.5%. Additionally, there was evidence of best practices and policies regarding ad tags to demonstrate Walgreen's effort to comply with the Consent Judgment. While, as described in greater detail below, the Court finds Walgreen violated the Consent Judgment pursuant to § 407.100, there is insufficient evidence for the requisite finding of intentional and contumacious conduct.

3.    With regard to the display of the 309 tags in the weekly ad, monthly ad, or rewards tag category, alleged by Missouri to have been expired in violation of Paragraph 21.B.ii of the Consent Judgment, the Court finds such tags were not displayed in an intentional or contumacious manner; as such, the Court does not find Walgreen in contempt.

4.    Missouri also requested a prospective penalty for violation of Paragraph 21.B.ii of the Consent Judgment. The Court finds such prospective penalty to be improper and declines to grant such relief.

### B.    Violations of Mo. Rev. Stat. § 407.110

1.    Missouri and Walgreen resolved the initial lawsuit in this action by signing a Consent Judgment pursuant to § 407.100, which in turn was entered by this Court. "Violation of any such consent judgment or consent injunction shall be treated as a violation under section 407.110." § 407.100.8.

    a.    Section 407.110 provides:

> Any person who violates the terms of an injunction, an order to make restitution, or any other judgment or order issued under section 407.100 <u>shall</u> forfeit and pay to the state a civil penalty of not more than five thousand dollars per violation. (Emphasis added).

2.    Evidence adduced at the hearing revealed that weekly and monthly ad tags as well as reward tags expire. Additionally there is a date printed on the bottom of the tag which states, "Good Thru." Thus, these tags displayed an offer for a limited time period per Paragraph 21.B.ii. The time and date stamps on Missouri's photographs of these 309 tags were admitted as true and accurate without objection. Each of these 309 tags were displayed more than 12 hours after the date on the tag.  Therefore, Walgreen failed to remove these 309 tags within 12 hours of the expiration of the offer. It is uncontested that the definition

of "Advertisement" in Paragraph 13 of the Consent Judgment includes these tags. These 309 tags are violations of Paragraph 21.B.ii of the Consent Judgment.

3.    Even though no party offered evidence of the scanned prices or rewards points of these 309 tags, the evidence is unnecessary to a determination they were expired. Walgreen admitted these 309 tags do in fact expire. Therefore, they violate Paragraph 21.B.ii of the Consent Judgment.

4.    Even if the item would have scanned as the price reflected on the tag, the tags still violate Paragraph 21.B.i of the Consent Judgment because the date listed on the tag would then be a false or misleading statement with respect to the period of time when the item was available at a reduced price.

5.    Dascoli testified that the "Good Thru" date listed on the bottom of the tag was meant to be a communication within the company, not to the customer. The Court does not find this explanation to be compelling. Information contained on a tag on the store shelf should be information upon which a consumer can reasonably rely.

6.     This Court concludes, by a preponderance of the evidence, that Walgreen violated Paragraphs 21.B.i and 21.B.ii of the Consent Judgment. Thus, the Court finds Walgreen violated Mo. Rev. Stat. § 407.110.

7.     The evidence and arguments support an assessment of $1,000 per each of the 309 violations of § 407.110 for a total of $309,000 in civil penalties.

WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that a final judgment in this matter is entered in favor of Plaintiff State of Missouri and against Defendant Walgreen Co.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff's request for a finding of Contempt, including a prospective penalty for violations, is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Walgreen Co. violated § 407.110 by violating Paragraphs 21.B.i and 21.B.ii of the Consent Judgment and this Court's order on 309 occasions.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Walgreen Co. is liable for and shall pay or cause payment to be made in the amount of one thousand dollars ($1,000.00) per violation, for a

total of three hundred nine thousand dollars ($309,000.00) in civil penalties pursuant to § 407.110. Such civil penalties shall be payable pursuant to § 407.140 to State of Missouri for distribution to the Jackson County schools as required by Article 9, section 7 of the Missouri Constitution.  Payment shall be made within 30 days of the entry of this judgment.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Walgreen Co. shall make all payments by check, money order, or similar instrument, and send to the following address:

> Office of the Missouri Attorney General
> Financial Services Division
> Attn: Collections Specialist
> P.O. Box 899
> Jefferson City, MO 65102

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that each party shall bear their own costs.

**SO ORDERED.**

| | |
|---|---|
| _____17-Jun-2016_____ | _____ |
| Date | Judge Jennifer Phillips |
| | Division 12 |

Respectfully Submitted,
CHRIS KOSTER
Attorney General

*/s/ Cheryl Ann Schuetze*
CHERYL ANN SCHUETZE
Assistant Attorney General
Missouri Bar No. 53736
P.O. Box 899
Jefferson City, MO 65102
Phone 573-751-3321
Fax 573-751-2041


*/s/ Joseph Schlotzhauer*
JOSEPH SCHLOTZHAUER, #62138
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
(314) 340-6816
Fax: (314) 340-7957
joseph.schlotzhauer@ago.mo.gov
ATTORNEYS FOR PLAINTIFF

12

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via e-mail, this 7th

day of June, 2016, to:


    Steven Aaron
    Patrick McInerney
    Samantha Wenger
    Dentons US LLP
    4520 Main Street, Suite 1100
    Kansas City, Missouri 64112
    PH (816) 460-2400
    FAX (816) 531-7545
    Steven.arron@dentons.com
    Patrick.macinerney@dentons.com
    Samantha.wenger@dentons.com

    *Attorneys for Defendant*


                        */s/ Cheryl Ann Schuetze*
                        CHERYL ANN SCHUETZE
                        Assistant Attorney General

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

| | |
|---|---|
| CHRISTINA RECTOR | Case Number: 2024-CAB-000434 |
| Plaintiff(s) | |
| vs | Date: 1/23/2024 |
| WALMART, INC. | ☐ One of the defendants is being sued in their official capacity. |
| Defendant(s) | |

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Drew LaFramboise | ☑ Attorney for Plaintiff |
| Firm Name: | ☐ Self (Pro Se) |
| Joseph Greenwald & Laake, P.A. | ☐ Other: _____ |
| Telephone No.: DC Bar No.: | |
| (301) 220-2200    1018140 | |

TYPE OF CASE: ☐ Non-Jury   ☑ 6 Person Jury   ☐ 12 Person Jury

Demand: $_____   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge:_____   Calendar #:_____

Case No.:_____   Judge:_____   Calendar #:_____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**CONTRACT**

☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**

☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**

☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**

☐ Condo/Homeowner Assn. Foreclosure   ☐ Ejectment   ☐ Other
☐ Declaratory Judgment   ☐ Eminent Domain   ☐ Quiet Title
☐ Drug Related Nuisance Abatement   ☐ Interpleader   ☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**

☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**

☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**

☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

| CIVIL ASSET FORFEITURE | TORT |
|---|---|
| ☐ Currency | ☐ Abuse of Process |
| ☐ Other | ☐ Assault/Battery |
| ☐ Real Property | ☐ Conversion |
| ☐ Vehicle | ☐ False Arrest/Malicious Prosecution |
| **NAME CHANGE/VITAL RECORD AMENDMENT** | ☐ Libel/Slander/Defamation |
| ☐ Birth Certificate Amendment | ☐ Personal Injury |
| ☐ Death Certificate Amendment | ☐ Toxic Mass |
| ☐ Gender Amendment | ☐ Wrongful Death (Non-Medical Malpractice) |
| ☐ Name Change | |

| GENERAL CIVIL | | STATUTORY CLAIM |
|---|---|---|
| ☐ Accounting | ☐ Product Liability | ☐ Anti – SLAPP |
| ☐ Deceit (Misrepresentation) | ☐ Request for Liquidation | ☑ Consumer Protection Act |
| ☐ Fraud | ☐ Writ of Replevin | ☐ Exploitation of Vulnerable Adult |
| ☐ Invasion of Privacy | ☐ Wrongful Eviction | ☐ Freedom of Information Act (FOIA) |
| ☐ Lead Paint | **CIVIL I/COMPLEX CIVIL** | ☐ Other |
| ☐ Legal Malpractice | ☐ Asbestos | **TAX SALE FORECLOSURE** |
| ☐ Motion/Application Regarding Arbitration Award | **MORTGAGE FORECLOSURE** | ☐ Tax Sale Annual |
| | ☐ Non-Residential | ☐ Tax Sale Bid Off |
| ☐ Other - General Civil | ☐ Residential | |

**VEHICLE**
☐ Personal Injury          ☐ **TRAFFIC ADJUDICATION APPEAL**
☐ Property Damage          ☐ **REQUEST FOR FOREIGN JUDGMENT**

Drew LaFramboise
Digitally signed by Drew LaFramboise
Date: 2024.01.23 14:36:07 -05'00'

1/23/2024

Filer/Attorney's Signature                    Date

CV-496/February 2023

No Fee GC § 6103

FILED

FEB - 9 2015

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF MARIN

THE PEOPLE OF THE STATE OF CALIFORNIA,

            Plaintiff,

        v.

TARGET CORPORATION, a Minnesota corporation,

            Defendant.

Case No. CIV 1 5 0 0 4 7 4

FINAL JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO STIPULATION

Plaintiff, the People of the State of California ("the People"), appearing through its attorneys, Edward S. Berberian, Marin County District Attorney, by Andres H. Perez, Deputy District Attorney; Mark A. Peterson, Contra Costa County District Attorney, by Gary E. Koeppel, Supervising Deputy District Attorney; Lisa A. Smittcamp, Fresno County District Attorney, by Edward T. Browne, Deputy District Attorney; Jeffrey S. Rosell, Santa Cruz County District Attorney, by William Atkinson, Assistant District Attorney; Jill R. Ravitch, Sonoma County District Attorney, by Matthew T. Cheever, Deputy District Attorney; and Jan I. Goldsmith, San Diego City Attorney, by Kathryn L. Turner, Chief Deputy City Attorney and Kristine A. Lorenz, Deputy City Attorney; and Defendant Target Corporation, by and through its attorneys, Morrison Foerster, by David F. McDowell; and

///

///

1

PEOPLE V. TARGET CORP. - FINAL JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO STIPULATION

COPY

Plaintiff and Defendant having stipulated and consented to the entry of this Final

Judgment and Permanent Injunction ("Judgment") prior to the taking of any proof, and without

trial or adjudication of any issue of fact or law herein; and

The Court having considered the pleadings;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## JURISDICTION

1. This action is brought under California law and this Court has jurisdiction of its subject

matter and parties.

## DISCLAIMER OF ADMISSIONS

2. The provisions of this Judgment are entered as a result of the stipulation of the parties,

without admission or denial by Defendant regarding any factual or legal allegation in the

Complaint.

## APPLICABILITY

3. The provisions of this Judgment are applicable to Defendant Target Corporation, a

Minnesota corporation, and to its officers, directors, employees, agents, servants and

representatives acting within the course and scope of their agency and employment, and to

successors and assignees of Defendant, and to all persons, partnerships, corporations, and other

entities acting for, through, on behalf of or in concert with Defendant with actual or constructive

notice of this Judgment (hereinafter collectively referred to as "TARGET").  Unless otherwise

stated, all obligations imposed upon TARGET by the terms of this Judgment are ordered pursuant

to Business and Professions Code section 17203 and 17535.

## DEFINITIONS

4.     For the purposes of this Judgment, the following definitions shall apply:

A.     "**Advertised Price**" means a price that is posted or displayed on the

commodity itself or on a shelf tag that corresponds to that commodity; or the price for a

commodity that is otherwise advertised, posted, marked, displayed, or quoted including, but not

limited to, in a flyer, newspaper, magazine, direct mail publication, or electronically (e.g. on or

via the internet or on a Target non-checkout location POS).  Unless otherwise prohibited by

2

laws[1], nothing herein will be construed to mean that a consumer will be eligible for an Advertised

Price if he or she fails to qualify under the applicable terms disclosed in conjunction with the

Advertised Price, so long as said terms are clearly and conspicuously disclosed.

      B.    **"Point of Sale System"** ("POS") means any computer or electronic system

used by a retail establishment such as, but not limited to, Universal Product Code scanners, price

lookup codes, or an electronic price lookup system as a means for determining the price of the

item being purchased by a consumer.

      C.    **"POS Price"** means the price of an item displayed to a consumer when the

item is scanned at a POS.

      D.    **"Pricing Discrepancy"** means a variance between: 1) the lowest

Advertised Price; and 2) the checkout location POS Price. For purposes of this Judgment, a

Pricing Discrepancy shall include, but not be limited to, all instances in which a checkout location

POS Price override is instituted or performed. For purposes of this Final Judgment, a Pricing

Discrepancy shall not include (1) situations where the variance between an Advertised Price and

the POS Price is consistent with a clear and conspicuous price correction notice placed on the

rack or shelf at each location the product is displayed and on the advertising board at the front of

each store notifying customers of an incorrect Advertised Price; (2) any variance between an

Advertised Price and the POS Price when merchandise has been correctly stocked but

inadvertently moved, transferred or transported to the wrong rack, shelf, display, or fixture by a

customer; or (3) any variance which results in a consumer being charged a price lower than the

lowest Advertised Price. Target shall bear the burden of proof in establishing any exception

under this subsection, when the alleged Pricing Discrepancy is brought to its attention within

fourteen (14) days of the date on which the alleged Pricing Discrepancy occurred.

      E.    **"Report of Pricing Discrepancy"** means a report of a Pricing Discrepancy

by any customer, any employee or agent of a government agency, or any employee of Target.

---

[1] E.g., see Business and Professions Code section 12024.2(a)(2).

F.      **"Weights and Measures Official"** shall mean any representative of the State of California Division of Measurement Standards, Department of Food and Agriculture, or any representative of a County Sealer or Director of a County Department of Agriculture, or any representative of the California Attorney General, a district attorney, or a city attorney.

## INJUNCTION

5.      Pursuant to Business and Professions Code sections 17203 and 17535, TARGET is permanently enjoined and restrained from directly or indirectly engaging in any of the following acts or practices:

A.      Violating Business and Professions Code section 12023 by selling any commodity according to gross weight or measure;

B.      Violating Business and Professions Code section 12024 by selling a commodity in less quantity than it is represented to be, in violation of Business and Professions Code Section 12024.

C.      Violating Business and Professions Code section 12024.2(a)(1) by charging at the time of sale of a commodity, a value which is more than the lowest advertised, posted or quoted price for the commodity, in violation of Business & Professions Code section 12024.2;

D.      Violating Business and Professions Code section 12024.2(a)(2) by charging an amount greater than the lowest price posted on the commodity itself or on a shelf tag that corresponds to the commodity, notwithstanding any limitation of the time period for which the posted price is in effect;

E.      Violating Business and Professions Code section 17200 by engaging in unfair competition as that term is defined therein; and

F.      Violating Business and Professions Code section 17500 by, with the intent directly or indirectly to dispose of real or personal property or to perform services or to induce any member of the public to enter into an obligation relating to such property or services, making or causing to be made any representation concerning that property or those services, or concerning any

4

circumstance or matter of fact connected with the proposed performance thereof, which is untrue or misleading, and which is known to be, or which by the exercise of reasonable care should be known to be, untrue or misleading (as used herein, the term "misleading" includes statements which although true, are either actually misleading, or which have a capacity, likelihood or tendency to deceive or confuse the person to whom they are directed).

6.      Pursuant to Business and Professions Code sections 17203 and 17535, TARGET shall, for the next seven (7) years, administer and enforce in every existing store operated by TARGET in California, and in every new store operated by TARGET in California during the seven (7) year period after the date of entry of this Judgment, a Compliance Program to correct: inaccurate or expired shelf prices, incorrect in-store advertised prices, inaccurate scanner prices, inaccurate tare weights, and inaccurate package weights. The Compliance Program shall include the following:

A.      **POLICIES AND PROCEDURES.** TARGET shall promptly implement written pricing accuracy policies and procedures ("Policies and Procedures") that incorporate the provisions of this Judgment. The Policies and Procedures shall be maintained in a Pricing Compliance Binder ("PCB") in each Target store in California ("Store PCB") and at Target Corporate Headquarters ("Corporate PCB"). The PCBs may be maintained in either hardcopy or electronic format. Target is not obliged to maintain PCBs, either Store PCB or Corporate PCB for any time period prior to this Final Judgment

B.      **SIGNATURE AND ACKNOWLEDGMENT.** All TARGET pricing personnel (as designated herein) shall be required to read the Policies and Procedures and sign an acknowledgment that they have read them and understand them. TARGET shall confirm its compliance with this provision by providing a sworn declaration to said effect, executed by an executive charged with responsibility for pricing programs to Gary E. Koeppel, Contra Costa County District Attorney's Office, 900 Ward Street, Fourth Floor, Martinez, CA 94553, by certified mail no later than one hundred and twenty days from the entry of this Final Judgment.

C.      **CORPORATE PRICING PERSONNEL.** TARGET shall appoint one person at the corporate level who shall be designated the Pricing Compliance Officer (hereinafter

"PCO") who shall be charged with overseeing, with respect to all stores in California: (a) the maintaining of pricing accuracy in the POS, (b) price changes, (c) prompt reporting, investigation, and resolution of Pricing Discrepancies in the POS and in stores, including pricing errors arising from inadequate tare weight deductions and inaccurate labeling weights on commodities; (d) that each store maintains all records required by this Judgment in their Store PCB and forwards them to the PCO for inclusion in the Corporate PCB which shall be maintained by the PCO as required by this Judgment; and (e) compliance with the Policies and Procedures. The PCO may delegate duties to other Target employees at the corporate level, appoint "back-up" PCOs, or retain third-party providers as the PCO deems reasonable and appropriate to assist with the PCO's responsibilities. The PCO shall be the designated corporate contact for inquiries from Weights and Measures Officials regarding TARGET's compliance with the injunctive terms of this Judgment.

     D.    **PRICE ACCURACY TEAM LEADER.** Each Target store in California shall designate for each work shift an employee or employees to act as the Pricing Accuracy Team Leader ("PATL"). The Target store's designated Leader on Duty ("LOD") may serve the function of the PATL.

     (1)    **PATL DUTIES.** The duties of the PATL shall be to ensure their respective Target store's compliance with the Policies and Procedures including, but not limited to, investigating and resolving Pricing Discrepancies reported in the Pricing Discrepancy Report, maintaining pricing accuracy, conducting price audits, promptly correcting price and weight errors, promptly communicating pricing and weight errors to appropriate management personnel, recording the results of price audits, and maintaining the Store PCB.

     (2)    **PRICE AUDITS.** Each PATL shall conduct a minimum of two Price Audits per month of at least one hundred items offered for sale in their store. The Price Audits shall determine whether any Pricing Discrepancies exist with the selected products. The items for the Price Audit shall be selected by the PATL and must include at least fifty items selected by randomized process, taking into consideration the methods set forth in the most

current edition of the National Institute of Standards and Technology Handbook 130—

Examination Procedure for Price Verifications. Audits shall be no less than ten days apart. Each

store shall develop its list of products to audit independent of each other. Pricing Discrepancies

discovered during such audits shall be immediately corrected in the store. If the PATL discovers

two or more Pricing Discrepancies during an audit or the PATL knows or has a reason to believe

that an individual Pricing Discrepancy extends beyond a single store, the PATL shall immediately

report it to the PCO who, at least in the latter instance, shall take appropriate action statewide.

(3)    **WEIGHT AUDITS.** A qualified third party auditor shall conduct a

minimum of one Weight Audit per month of at least twenty different items packaged by

TARGET or packaged by a third party acting on TARGET's behalf and offered for sale in-store.

The purpose of the Weight Audit shall be to ensure that proper tare weight deductions have been

taken, and/or that the labeled weight of items is accurate. Weight inaccuracies or errors

discovered during such audits shall be immediately corrected in the store or at the packaging site,

whichever is applicable. If the qualified third party auditor knows or should know that the weight

inaccuracy or error extends beyond a single store, the qualified third party auditor shall report it to

the PCO to take appropriate action statewide. Target shall maintain Weight Audit records for one

year.

(4)    **END CAP AUDITS.** The PATL shall conduct once a week an

End Cap Audit to determine whether any Pricing Discrepancy exists as to products offered for

sale on end caps. This End Cap Audit shall be in addition to the audits set forth in subparagraph

(2) above. Pricing Discrepancies discovered during End Cap Audits shall be immediately

corrected in-store. If the PATL discovers two or more pricing errors during the End Cap Audit or

the PATL knows or should know that an individual Pricing Discrepancy may extend beyond a

single store, the PATL shall immediately report it to the PCO to take appropriate action statewide.

(5)    **NOTICE OF WEIGHTS AND MEASURES INSPECTIONS.**

The PATL shall forward all reports and notices of inspections conducted by the state or local

department of Weights and Measures to the PCO and shall maintain a copy of each in the Store PCB.

(6)    **EXPIRED PRICE AUDIT.** The PATL in each TARGET store shall designate TARGET personnel to conduct an Expired Price Audit. The Expired Price Audit shall consist of the designated TARGET personnel walking the entire store, searching for and removing all expired price displays (e.g. shelf tags and signs) in every in-store location where TARGET displays or posts a sale price including, but not limited to, all store aisles, end caps, rounders, and self-standing displays. The Expired Price Audit shall occur every week during the period between close of business on Saturday and start of business on Sunday. The personnel designated to perform the Expired Price Audit shall be different then the personnel who, within the normal course of business, change sales prices in-store and the Expired Price Audits shall occur after the normal sales price changes are made during the same period. The Expired Price Audit personnel shall have no other duties while they are performing the expired price audits.

E.    **MAINTAINING AUDIT RECORDS IN PCB.** By the end of the business day in which any audit required by this Judgment is conducted, the PATL shall record the results of the audit(s) in the Store PCB, and shall forward the audit record(s) to the PCO for inclusion in the Corporate PCB within thirty days of the audit. The recorded results of each audit shall include the following, if applicable: (1) the date of the audit; (2) the name and title of the PATL conducting the audit; (3) the number of items audited; (4) a list of any Pricing Discrepancies discovered during that audit including the item's SKU number, description, POS Price, lowest advertised and/or shelf price, and date of shelf tag price expiration, if applicable; and (5) a certification that any Pricing Discrepancies were corrected, along with the date and time of the correction.

F.    The audit records shall be maintained in the Store PCB for a period of at least one year from the date of each audit and shall be maintained in either hard copy or electronic format for five years from the date of each audit in the Corporate PCB. The Store PCB and all records required to be maintained therein shall be made immediately available for review and copying upon request to the PATL or store LOD by any Weights and Measure Official.

G.     The Corporate PCB and all records required to be maintained therein shall be provided in at least electronic format within ten (10) business days of the written request of any Weights and Measures Official to the PCO.

H.     **PRICE CHANGE IMPLEMENTATION AND VERIFICATION.** Upon the occurrence of any regular, sale or promotional price change covering one or more products in any Target store in California, the PATL or their qualified designee shall immediately effectuate the price change(s) in-store and as part of that process shall verify that all affected shelf prices and in-store signs are the same as the POS Price. The PATL or his or her qualified designee shall assure that any Pricing Discrepancies are immediately corrected.

I.     **POS PRICING DISCREPANCY CODE.** TARGET shall maintain a POS Pricing Discrepancy Code at or on all check-out stand POS which records and reports all Pricing Discrepancies including, but not limited to, price overrides. Each store shall maintain a daily Pricing Discrepancy Report reflecting all Pricing Discrepancies, if any, recorded and reported by the POS Pricing Discrepancy Code. These Pricing Discrepancies shall be immediately reported to the PATL or their qualified designee. The PATL or their qualified designee shall investigate and resolve the reported Pricing Discrepancy as soon as reasonably practicable and in no event longer than two hours after the report. If the reported Pricing Discrepancy is verified by the PATL, the PATL or their qualified designee shall correct it without delay including, but not limited to, removing and correcting the displayed Advertised Price. If the Pricing Discrepancy is an issue with the POS, the PATL shall immediately contact the PCO who shall take immediate measures to correct the price in the POS. If the PCO cannot immediately correct the price in the POS, the PCO shall order the affected product to be immediately removed from sale until the price can be corrected in the POS. Any corrective action taken in conjunction with the requirements of this provision shall be made part of the daily Pricing Discrepancy Report. If no corrective action is warranted, the PATL or their qualified designee shall indicate with as much specificity as possible in the Pricing Discrepancy Report entry for that reported Pricing Discrepancy, the reason(s) no corrective action was taken. All

Pricing Discrepancy Reports shall be maintained in the Store PCB for a period of at least one year from the date of each Report. All Pricing Discrepancy Reports shall be maintained in either hard copy or electronic format for five years from the date of each audit in the Corporate PCB.

J.     **DUTY TO REPORT PRICING DISCREPANCY.** Any person employed by TARGET who becomes aware of any Target store Pricing Discrepancy or receives a Report of Pricing Discrepancy that is not otherwise recorded and reported by the POS Pricing Discrepancy Code shall immediately notify the PATL of the Target store where the Pricing Discrepancy is discovered. The Pricing Discrepancy shall be made part of the daily Pricing Discrepancy Report including any action taken by the PATL in response as set forth above. If the person has reason to believe the Pricing Discrepancy may extend beyond a single store, the person shall without delay also send a system notification to inform the PCO of the Pricing Discrepancy.

K.     The records of the Compliance Program required by or maintained pursuant to this Judgment shall not be admissible as proof of new violations in any subsequent actions or proceedings against or relating to TARGET by the People; except that such records shall be admissible in subsequent actions or proceedings to establish compliance or non-compliance with the provisions of this Judgment; i.e. injunction violations.

L.     **PRICE ACCURACY PROGRAM.** Whenever an item offered for sale has scanned at the POS at a price that is higher than the lowest of either (a) any valid advertised price; or (b) any price posted on the item itself or on a shelf tag that corresponds to that item notwithstanding any limitation of the time period for which the posted price is in effect, the involved customer shall receive the item(s) at the price the customer believes is the lowest advertised or posted price. If the Target employee handling the transaction does not believe the stated price is accurate or the customer does not recall the exact lowest advertised price, the Target employee or the PATL shall take immediate measures to verify the lowest advertised price and charge the customer that price. This program shall be referred to as the "Pricing Accuracy Program."

(1)    TARGET shall inform customers of the Pricing Accuracy Program by posting a sign in a clear, conspicuous and unobstructed location at every POS location in every Target store in California.  In no event shall the signs be placed lower than forty-eight inches (48") above the floor.  The signs shall be placed on a vertical surface that is a different color than the sign background (e.g. sign with a white background on a red vertical surface).

(2)    The signs shall be no smaller than five inches by eight inches (5" x 8") in size; words shall be in a font size no less than 24-point and against a contrasting background (e.g. black letters on a white background); and shall state:

**"PRICE ACCURACY PROGRAM NOTICE: If an item scans at a price higher than the lowest currently advertised or posted price, please advise your cashier immediately of the correct price and we will charge you the lowest advertised price. "**

(3)    In addition to the signs located at the POS locations, TARGET shall place a sign with the PRICE ACCURACY PROGRAM NOTICE in the entrance area of each California TARGET store.  The sign will be at least two feet by three feet (2' x 3') in size, in a font size no less than 48-point against a contrasting background.  The bottom of the sign should be no lower than thirty-six inches above the floor.  The parties agree that placing this PRICE ACCURACY PROGRAM NOTICE in or adjacent to the "ad board" or equivalent area, in stores without an "ad board," located in the entrance area of a store, meets the requirements of this sign provision.

(4)    TARGET shall not make any statements or take any actions which would directly or indirectly prevent or discourage TARGET's  Pricing Accuracy Program from being followed, complied with, enforced by or adhered to by TARGET employees, nor shall TARGET or TARGET employees make any statements or take any actions that would discourage customers from utilizing this program.

7.     Neither this Injunction, nor any provision hereof, shall be a defense, or be admissible in support of a defense, to an action by the People for any future violation(s) of any consumer protection law including, but not limited to, violations of the Business and Professions Code.

8.     **EMPLOYEE TRAINING**

A.     **Policies and Procedures**.   Upon entry of Final Judgment and in connection with the training set forth below, the PCO shall ensure that all California Target store Managers, PATLs and Cashiers receive, read and understand the Final Judgment or a comprehensive summary which, along with all associated procedures, shall be reasonably accessible to all California TARGET personnel via an online or hard copy format.

B.     **Service of Papers, Distribution and Acknowledgment.**  Within thirty (30) days of the entry of this Final Judgment, TARGET shall provide a copy of this Final Judgment to individuals responsible for the implementation and supervision of pricing policies in California Target Stores.

(1)     TARGET shall require all California Target store Managers, PATLs and Cashiers to read the Final Judgment or a comprehensive summary and acknowledge that they have read and understand it.  Such acknowledgment may be provided in any written form and Target shall keep in both the Store PCB and Corporate PCB records of said acknowledgments for two (2) years from the date of their creation.

C.     **California Target Store General Manager and PATL Training**.  Within sixty (60) days after entry of this Judgment, TARGET shall ensure that all current California Target store Managers and PATLs undergo comprehensive pricing accuracy training.  Similarly, TARGET shall ensure that all future California Target store General Managers and PATLs undergo comprehensive pricing accuracy training before assuming their regular duties.  TARGET shall keep in both the Store PCB and Corporate PCB legible written or electronic records of such training provided, including attendance records and acknowledgments that each person received such training, for two (2) years from the date of their creation.   The training shall be updated periodically as needed and shall include at least the following topics to improve pricing accuracy:

12

(1)    Pricing accuracy awareness and duties under the Judgment;

(2)    How to ensure correct prices are consistently displayed and charged; and

(3)    How to respond to Pricing Discrepancy issues raised by customers. TARGET shall conduct annual refresher training of no less than two (2) hours regarding the requirements of this Judgment for California Target store Managers and PATLs.

D.    **Store Cashier Training**.  Within one hundred and eighty (180) days after entry of this Final Judgment, TARGET shall ensure that all current California Target store cashiers undergo comprehensive pricing accuracy training.  Similarly, TARGET shall ensure that all California Target store Cashiers hired after the entry of this Judgment undergo pricing accuracy training before assuming their regular duties.  TARGET shall keep in both the Store PCB and Corporate PCB legible written or electronic records of such training provided, including attendance records and acknowledgments that each person received such training, for two (2) years from the date of their creation.   The training shall be updated periodically as needed and shall include at least the following topics to improve pricing accuracy:

(1)    Pricing accuracy awareness and duties under the Final Judgment;

(2)    Proper implementation of the Price Accuracy Program  (as set forth in paragraph 6(L), above), price overrides (as set forth in paragraph 6(I) above), and related POS operations; and

(3)    How to respond to pricing accuracy issues raised by customers.

TARGET shall conduct at least thirty (30) minutes of annual refresher training regarding the relevant provisions of this Final Judgment for California Target store Cashiers.

### MONETARY RELIEF

9.    Pursuant to Business and Professions Code sections 17206 and 17536, Defendant shall, on the date of the filing of this Judgment, pay to the People civil penalties in the amount of

three million three hundred fifty-two thousand five hundred dollars ($3,352,500.00) in the form of six certified checks, each in the amount of five hundred fifty-eight thousand, seven hundred fifty dollars ($558,750.00) payable to the *"Contra Costa District Attorney's Office," "Marin District Attorney's Office," "Santa Cruz District Attorney's Office," "Sonoma District Attorney's Office" "Fresno District Attorney's Office"* and *"San Diego City Treasurer."*

      10.    Pursuant to Business and Professions Code sections 17203 and 17535, Defendant shall, on the date of the filing of this Judgment, pay investigative costs in the amount of three hundred eighty eight thousand, six hundred eighteen dollars ($388,618) in the form of twenty-eight (28) separate certified checks payable as follows:

| | |
|---|---|
| Contra Costa County District Attorney's Office | $ 25,000.00 |
| Marin County District Attorney's Office | $ 25,000.00 |
| Santa Cruz County District Attorney's Office | $ 25,000.00 |
| Sonoma County District Attorney's Office | $ 25,000.00 |
| Fresno County District Attorney's Office | $ 25,000.00 |
| San Diego City Attorney's Office | $ 25,000.00 |
| California Dept. of Measurement Standards | $ 18,753.00 |
| Alameda County Weights and Measures | $ 270.00 |
| Contra Costa County Weights and Measures | $ 3,022.00 |
| El Dorado County Dept. of Agriculture | $ 313.00 |
| Fresno County Dept. of Agriculture | $ 7,950.00 |
| Humboldt County Dept. of Agriculture | $ 588.00 |
| Imperial County Agricultural Commissioner | $ 1,915.00 |
| Los Angeles County Agricultural Commissioner | $ 62,249.00 |
| Marin County Dept. of Weights and Measures | $ 3,344.00 |
| Napa County Weights and Measures | $ 2,066.00 |
| Orange County Agricultural Commissioner | $ 4,032.00 |
| Riverside County Weights and Measures | $ 7,314.00 |
| San Benito County Weights and Measures | $ 1,838.00 |

14

| San Bernardino County Agriculture/Weights & Measures | $ 14,283.00 |
| San Diego County Agriculture, Weights and Measures | $ 6,666.00 |
| San Joaquin County Weights and Measures | $ 4,609.00 |
| Santa Clara County Weights and Measures Division | $ 77,461.00 |
| Santa Cruz County Agricultural Commissioner | $ 590.00 |
| Shasta County Weights and Measures | $ 938.00 |
| Sonoma County Sealer of Weights and Measures | $ 10,276.00 |
| Stanislaus County Weights and Measures | $ 679.00 |
| Ventura County Weights and Measures | $ 9,462.00 |

11.     The parties having stipulated, and the Court hereby finds, that it is impractical and impossible to identify or to provide direct restitution to consumers who may have unknowingly been overcharged by Defendant or misled by Defendant's advertising such that other forms of direct restitution are too impractical, costly, and would far exceed any benefit to individual consumers.  Thus Defendant shall pay, on the date of filing of this Judgment, restitution under the doctrine of *cy pres* pursuant to Business and Professions Code sections 17203 and 17535 by certified check made payable to the Consumer Protection Prosecution Trust Fund established in the case of *People v. ITT Consumer Financial Corporation, et al.* (Alameda County Superior Court Case No. 656038-0, filed on September 21, 1989) in the amount of Two Hundred Thousand Dollars ($200,000).

12.     All checks shall be delivered to Deputy District Attorney Andres H. Perez at the Office of the Marin County District Attorney, Consumer and Environmental Protection Division, 3501 Civic Center Dr., Room 130, San Rafael, California, 94903.

## RETENTION OF JURISDICTION

13.     Jurisdiction is retained for the purpose of enabling any party to this Judgment to apply to the Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of this Judgment, for the modification of any of its injunctive provisions, and for the enforcement of, compliance with, and for the punishment of violations of the Judgment.

14.     The clerk is directed to immediately enter this Judgment.


Dated: _____FEB - 9 2015_____          _____
                                                PAUL M. HAAKENSON
                                            Judge of the Superior Court

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

CHRISTINA RECTOR
_____
                              Plaintiff
                vs.

                                              Case Number    2024-CAB-000434
WALMART, INC.
_____
                              Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Veronica Nannis/Drew LaFramboise
_____                     _Clerk of the Court_
Name of Plaintiff's Attorney

Joseph Greenwald & Laake, P.A.                      By _____
_____
Address                                                  Deputy Clerk
6404 Ivy Ln, Ste 400, Greenbelt, MD 20770
_____

(301) 220-2200
_____                     Date        January 24, 2024
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주실써요        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                    *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____          Por: _____
Dirección                                                                              Subsecretario

_____
                                                                           Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

eFiled
02/23/2024 11:25:55 AM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Christina Rector,       ) | |
|       ) | |
|     Plaintiff,       ) | |
|       ) | Civil Action No.: 2024-CAB-000434 |
|   v.       ) | |
|       ) | |
| Walmart Inc.,       ) | |
|       ) | |
|     Defendant.       ) | |
|       ) | |

**CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S COMPLAINT**
**OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Walmart Inc. ("Walmart"), through undersigned counsel, pursuant to Rule 6(b) of the Superior Court Rules of Civil Procedure ("Super. Ct. Civ. R."), and with the consent of counsel to Plaintiff Christina Rector ("Plaintiff"), hereby moves the Court for a short extension of time in which to answer or otherwise respond to Plaintiff's Complaint ("Motion"), and in support states as follows:

1.     On January 23, 2024, Plaintiff filed the Complaint.

2.     On February 6, 2024, Defendant was served with a copy of the Complaint.

3.     Pursuant to Super. Ct. Civ. R. 12(a), Defendant's deadline to file an answer or otherwise respond is at the earliest February 27, 2024.

4.     On February 22, 2024, counsel for Walmart and Plaintiff (together, the "Parties") conferred and agreed to allow Defendant an extension of time to answer or otherwise respond to the Complaint.

5.     Pursuant to the Parties' agreement, Defendant hereby requests that its deadline to answer or otherwise respond to the Complaint be extended by fourteen (14) days (i.e., up to and including March 12, 2024).

6.     The extension is appropriate because Defendant recently retained the undersigned counsel, who needs additional time to assess the case and prepare a response to the same.

WHEREFORE, for the foregoing reasons, Defendant Walmart respectfully requests that the Court grant this motion and extend the deadline for Defendant to file an answer or otherwise respond to the Complaint until on or before March 12, 2024.

Dated:  February 23, 2024               Respectfully submitted,

WINSTON & STRAWN LLP


*/s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
JBrightbill@winston.com
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855

Dan Blouin (pro hac vice forthcoming)
DBlouin@winston.com
Frank Battaglia (pro hac vice forthcoming)
FBattaglia@winston.com
35 West Wacker Drive
Chicago, IL 60601-9703
*+1 312-558-5600 Telephone*
*+ 1 312-558-5700 Facsimile*


*Attorneys for Walmart Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2024, true copies of the foregoing Consent Motion to Extend Time to Answer Plaintiff's Complaint or Otherwise Respond to Plaintiff's Complaint and Proposed Order were served by electronic filing through the Court's CaseFileXpress system, to:

Veronica Nannis, Esq.(# 485151)
Drew Laframboise, Esq.(# 1018140)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com

Nicole T. Fiorelli, Esq. (pro hac vice to be filed)
Frank A. Bartela, Esq. (pro hac vice to be filed)
Patrick J. Perotti, Esq. (pro hac vice to be filed)
Shmuel S. Kleinman, Esq. (pro hac vice to be filed)
DWORKEN & BERNSTEIN Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 II (440) 352-3469 Fax
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
pperotti@dworkenlaw.com
skleinman@dworkenlaw.com

                                        /s/ Jonathan D. Brightbill
                                        Jonathan D. Brightbill (D.C. Bar 483956)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Christina Rector, )<br><br>    Plaintiff, )<br><br>v. )<br><br>Walmart Inc., )<br><br>    Defendant. )<br> | Civil Action No.: 2024-CAB-000434 |

**ORDER ON CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S**
**COMPLAINT OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Upon consideration of the Consent Motion to Extend Time to Answer Plaintiff's Complaint or Otherwise Respond to Plaintiff's Complaint ("the Consent Motion") filed by Defendant Walmart Inc. ("Defendant"), it is HEREBY ORDERED that the motion is GRANTED;

IT IS THEREFORE ORDERED that Defendant is granted an extension of the due date for responding to the Complaint. The new due date for Defendant's response is **March 12, 2024**.

IT IS SO ORDERED.


Dated: February ___, 2024

_____
Judge Milton C. Lee

Copies to:

Veronica Nannis, Esq.(# 485151)          Jonathan D. Brightbill (D.C. Bar 483956)
Drew Laframboise, Esq.(# 1018140)        JBrightbill@winston.com
JOSEPH, GREENWALD & LAAKE, P.A.          1901 L Street, N.W.
6404 Ivy Lane, Suite 400                 Washington, D.C. 20036
Greenbelt, MD 20770-1417                 Tel: (202) 282-5855
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com

Nicole T. Fiorelli, Esq.

Frank A. Bartela, Esq.
Patrick J. Perotti, Esq.
Shmuel S. Kleinman, Esq.
DWORKEN & BERNSTEIN Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 II (440) 352-3469 Fax
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
pperotti@dworkenlaw.com
skleinman@dworkenlaw.com

 Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Walmart, Inc.
702 Southwest Eighth St
Bentonville AR  72716

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    Christina Rector v. Walmart, Inc.

**To:**   Walmart, Inc.                              **Case Number:**    2024-CAB-000434

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/03/2024** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb318
   Meeting ID: 129 801 7169
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩውን የጽሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያያችዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Drew Laframboise
Joseph Greenwald and Laake PA
6404 Ivy Lane Suite 400
Greenbelt MD  20770

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    Christina Rector v. Walmart, Inc.

**To:**  Drew Laframboise                **Case Number:**    2024-CAB-000434

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/03/2024** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩ የጽሀፈ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Veronica B Nannis
JOSEPH GREENWALD & LAAKE PA
6404 IVY LANE STE 400
GREENBELT MD  20770

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Christina Rector et al. v. Walmart, Inc.

**To:**  Veronica B Nannis                    **Case Number:**    2024-CAB-000434

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/03/2024** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb318
   Meeting ID: 129 801 7169
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Civil Actions

## Case Summary

### Case No. 2024-CAB-000434

| | | |
|---|---|---|
| **Christina Rector et al. v. Walmart, Inc.** | § | Location: **Civil Actions** |
| | § | Judicial Officer: **Lee, Milton C** |
| | § | Filed on: **01/23/2024** |

---

## Case Information

| | |
|---|---|
| Case Type: | Statutory Claim |
| Subtype: | Consumer Protection Act |
| Case Status: | **01/23/2024  Open** |

---

## Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2024-CAB-000434 |
| Court | Civil Actions |
| Date Assigned | 01/23/2024 |
| Judicial Officer | Lee, Milton C |

---

## Party Information

*Lead Attorneys*

| | | |
|---|---|---|
| **Plaintiff** | **Baker, Audrey** | **Nannis, Veronica B** |
| | 231 Oglethorpe St NE | *Retained* |
| | WASHINGTON, DC 20011 | 301-220-2200(H) |
| | | JOSEPH GREENWALD & LAAKE PA |
| | | 6404 IVY LANE STE 400 |
| | | GREENBELT, MD 20770 |
| | | vnannis@jgllaw.com |
| | **Rector, Christina** | **Laframboise, Drew** |
| | 503 49th St NE | *Retained* |
| | Washington, DC 20019 | 301-220-1214(F) |
| | | 240-553-1174(W) |
| | | Joseph Greenwald and Laake, P.A. |
| | | 6404 Ivy Lane, Suite 400 |
| | | Greenbelt, MD 20770 |
| | | dlaframboise@jgllaw.com |
| **Defendant** | **Walmart, Inc.** | |
| | 702 Southwest Eighth St | |
| | Bentonville, AR 72716 | |

---

## Events and Orders of the Court

01/23/2024
Complaint Filed
    Docketed on:  01/24/2024
    Filed by:  Plaintiff Rector, Christina

01/24/2024
Initial Order [Remote]    (Judicial Officer: Lee, Milton C)

01/25/2024
Notice to Court (Praecipe) to Enter Appearance Filed
    Docketed On:  01/25/2024

Civil Actions

## Case Summary

### Case No. 2024-CAB-000434

Filed By:  Plaintiff Baker, Audrey;
Plaintiff Rector, Christina;
Primary Attorney Laframboise, Drew;
Primary Attorney Nannis, Veronica B

02/12/2024

Affidavit/Declaration of Service of Summons and Complaint
Docketed On:  02/14/2024
Filed By:  Plaintiff Rector, Christina
Served On:  Defendant Walmart, Inc.

02/23/2024

Motion to Extend Filed
*CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S COMPLAINT OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT*
Docketed on:  02/23/2024
Filed by:  Defendant Walmart, Inc.

05/03/2024
**Remote Initial Scheduling Conference**  (9:30 AM)  (Judicial Officer: Lee, Milton C)

## Financial Information

**Defendant**    Walmart, Inc.

| | |
|---|---:|
| Total Financial Assessment | 20.00 |
| Total Payments and Credits | 20.00 |
| **Balance Due as of 03/07/2024** | **0.00** |

**Plaintiff**    Rector, Christina

| | |
|---|---:|
| Total Financial Assessment | 120.00 |
| Total Payments and Credits | 120.00 |
| **Balance Due as of 03/07/2024** | **0.00** |