**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Christina Rector, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 1:24-cv-00658 (RC) |
| v. | ) | |
| | ) | |
| Walmart Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**WALMART INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE
ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

     A.    Walmart's operations.................................................................................. 2

     B.    Plaintiff's allegations. ................................................................................ 2

     C.    Walmart's electronic platforms. ................................................................ 3

     D.    TOU Agreement and arbitration provision. .............................................. 4

     E.    Plaintiff's use of Walmart's electronic platforms and her agreement to arbitrate... 5

III.    LEGAL STANDARD ......................................................................................... 6

     A.    Enforcement of arbitration provisions. ..................................................... 6

     B.    Dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). .............. 7

IV.    ARGUMENT ...................................................................................................... 8

     A.    The claims asserted in the Complaint must be resolved through arbitration. ......... 8

          1.    A valid and enforceable arbitration agreement exists. ............................... 8

          2.    The enforceable arbitration agreement covers this dispute...................... 10

          3.    Arbitration must proceed on an individual basis. ....................................11

          4.    The Court should dismiss Plaintiff's claims or, in the alternative, issue a stay pending arbitration.................................................................................11

     B.    If the Court elects not to compel arbitration, Plaintiff's claim nevertheless is fatally defective and should be dismissed.............................................................. 12

          1.    Plaintiff lacks Article III standing. ........................................................ 12

          2.    The Complaint should be dismissed under Rule 12(b)(6) because the law does not require pricing perfection. ......................................................... 14

               a.    Laws around the country acknowledge that pricing errors are to be expected. ...................................................................................... 15

               b.    The U.S. Department of Commerce similarly recognizes the inevitability of pricing errors. ....................................................... 16

               c.    In a virtually identical case against Walmart, another federal district court dismissed the plaintiff's allegations, with prejudice. ................................................................................... 16

          3.    The Complaint should be dismissed because it does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled. .................................... 17

V.     CONCLUSION................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelstein v. Walmart Inc.*,
1:23-cv-67 (N.D. Ohio Mar. 30, 2024) ....................................................................9

*Alford v. Dean Witter Reynolds, Inc.*,
975 F.2d 1161 (5th Cir. 1992) ...............................................................................11

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*,
531 F.3d 863 (D.C. Cir. 2008)................................................................................7

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
65 F. Supp. 3d 134 (D.D.C. 2014) .........................................................................10

*Arnold v. Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990) ...............................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................8

*AT & T Techs., Inc. v. Comm'ns Workers of Am.*,
475 U.S. 643 (1986)...............................................................................................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................8

*Burden v. Check Into Cash of Ky., LLC*,
267 F.3d 483 (6th Cir. 2001) .................................................................................11

*Chambers v. U.S. Dep't of Interior*,
568 F.3d 998 (D.C. Cir. 2009)................................................................................7

*Clean Label Project Found. v. Garden of Life, LLC*,
2021 WL 4318099 (D.D.C. 2022) ......................................................................7, 8

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012)..............................................................................................6

*DIRECTV, Inc. v. Imburgia*,
136 S. Ct. 463 (2015).......................................................................................11, 12

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017)................................................................12

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938)...............................................................................8

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015)................................................................8

*Ford v. ChartOne, Inc.*,
    908 A.2d 72 (D.C. 2006).......................................................................14

*Frankeny v. Dist. Hosp. Partners, LP*,
    225 A.3d 999 (D.C. 2020).....................................................................17

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987)................................................................8

*Hoyte v. Yum! Brands, Inc.*,
    489 F. Supp. 2d 24 (D.D.C. 2007) ..........................................................13

*Jackson v. ASA Holdings*,
    751 F. Supp. 2d 91 (D.D.C. 2010) ..........................................................12

*Kahn v. Walmart Inc.*,
    2023 WL 2599858 (N.D. Ill. Mar. 21, 2023) ..................................16, 17

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) .....................................................17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)............................................................................8

*Krukas v. AARP, Inc.*,
    376 F. Supp. 3d 1 (D.D.C. 2019) ...................................................17, 18

*Lee v. Flintkote Co.*,
    593 F.2d 1275 (D.C. Cir. 1979)...............................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................8, 12

*Marmet Health Care Ctr. v. Brown*,
    132 S. Ct. 1201 (2012).........................................................................6

*Masco Corp. v. Zurich Am. Ins. Co.*,
    382 F.3d 624 (6th Cir. 2004) .................................................................10

*Mattiaccio v. DHA Grp., Inc.*,
  474 F. Supp. 3d 231 (D.D.C. 2020) ...................................................12

*Maynez v. Walmart Inc.*,
  No. 20-cv-0023, 2020 WL 4882414 (C.D. Cal. Aug. 14, 2020)...............................10

*Mazanderan v. Indep. Taxi Owners' Ass'n*,
  700 F. Supp. 588 (D.D.C. 1988) ....................................................14

*Nelson v. Insignia/Esg, Inc.*,
  215 F. Supp. 2d 143 (D.D.C. 2002) ..................................................8

*Nur v. K.F.C., USA, Inc.*,
  142 F. Supp. 2d 48 (D.D.C. 2001) ..................................................10

*Osbourne v. Cap. City Mortg. Corp.*,
  667 A.2d 1321 (D.C. 1995).........................................................12

*Osvatics v. Lyft, Inc.*,
  535 F. Supp. 3d 1 (D.D.C. 2021) ...................................................9

*Pearson v. Chung*,
  961 A.2d 1067 (D.C. 2008).........................................................17

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*,
  7 F. Supp. 3d 1 (D.D.C. 2013) ....................................................12

*Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ..................................................16

*Saucier v. Countrywide Home Loans*,
  64 A.3d 428 (D.C. 2013)..........................................................18

*Selden v. Airbnb, Inc.*,
  No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016), *aff'd*, 4
  F.4th 148 (D.C. Cir. 2021) ......................................................7, 9

*Shaw v. Marriott Int'l, Inc.*,
  605 F.3d 1039 (D.C. Cir. 2010)....................................................14

*Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*,
  767 F. Supp. 2d 161 (D.D.C. 2011) ................................................8

*Silvious v. Snapple Beverage Corp.*,
  793 F. Supp. 2d 414 (D.D.C. 2011) ................................................13

*Spokeo Inc. v. Robins*,
  578 U.S. 330 (2016), *as revised* (May 24, 2016)................................7, 12

*Stone v. Landis Constr. Co.*,
    120 A.3d 1287 (D.C. 2015).................................................................................18

*Watson v. Gold N Diamonds, Inc.*,
    736 F. Supp. 2d 266 (D.D.C. 2010) ..................................................................7

*Wolff v. Westwood Mgmt., LLC*,
    558 F.3d 517 (D.C. Cir. 2009)..........................................................................7

**Statutes**

9 U.S.C. § 2 ..................................................................................................................6

9 U.S.C. § 3 ..............................................................................................................6, 11

9 U.S.C. § 4 ..................................................................................................................6

D.C. Code § 28-3901(a)(2)(B)(i) ...............................................................................14

D.C. Consumer Protection Procedures Act ........................................................... *passim*

Federal Arbitration Act ...............................................................................................6

Fla. Stat. § 531.44 ...............................................................................................15, 16

Mich. Comp. Laws § 445.319 ....................................................................................15

Miss. Code § 75-27-51 ...............................................................................................15

Okla. Stat. § 2-14-38 .................................................................................................15

R.C.S.A. § 21a-79-7...................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................7, 8

Fed. R. Civ. P. 12(b)(6) ...............................................................................................8

U.S. Const. art. III ................................................................................1, 12, 13, 14

## I.    INTRODUCTION

Plaintiff, Christina Rector ("Plaintiff"), filed this putative class action against Defendant, Walmart Inc. ("Walmart" or "Defendant"), alleging that Walmart charged her more for two items at the checkout counter than the prices reflected on the store shelf ("Shelf Pricing"). Importantly, Plaintiff admits that Walmart informed her of the higher prices *before* she finalized her purchases. Plaintiff also admits that she voluntarily elected to complete the transactions having full knowledge of the amount she would be charged for the items. These undisputed facts alone require dismissal of Plaintiff's claim.

To prevail on the asserted claim, Plaintiff must show that Walmart made a material misrepresentation or otherwise failed to make a material disclosure. Plaintiff must next establish that the alleged misrepresentation or omission would mislead "a reasonable consumer." But the undisputed facts clearly show that Walmart did not deceive Plaintiff. To the contrary, Plaintiff admits that Walmart told her the correct price for the items *before* she purchased them.

Walmart has not engaged in any deceptive or fraudulent act. Instead, the facts alleged in the Complaint at most reflect the real-world reality that it is virtually impossible for a retailer to match Shelf Pricing and scanned pricing 100% of the time for the hundreds of thousands of items on store shelves. But neither the law nor industry standards require perfection; any contrary position would in effect hold retailers strictly liable any time a Shelf Price fails to match a purchase price, no matter the reason. Here, Plaintiff fails to allege any facts that would create an inference that the alleged overcharges were anything other than what they were—mere mistakes.

Moreover, given the fact that Plaintiff knowingly and voluntarily paid the amounts charged, she was not damaged and therefore cannot establish Article III standing to pursue the asserted claim.

References in the Complaint to purchases purportedly made by an investigator hired by Plaintiff's counsel do not cure the deficiencies in Plaintiff's case. To the contrary, these allegations present additional reasons why this case cannot proceed, let alone on a class-wide basis. First, as discussed below, the investigator is not a consumer under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"). Accordingly, his experience at Walmart is not germane under the DCCPPA because the purchases were not made for a consumer's personal use. Second, even if the investigator was a consumer, his experience further highlights that consumers have access to up-to-date price information through multiple sources before they finalize purchase decisions. Finally, to the extent Plaintiff, the investigator, or any member of the putative class used the Walmart App or the company website in connection with their purchase decisions, disputes regarding such purchases cannot be resolved in this forum. Instead, consistent with the parties' agreement, any such dispute should be resolved through binding arbitration on an individual, non-class-wide basis.

## II.      FACTUAL BACKGROUND

### A.      Walmart's operations.

Walmart is a multinational retail corporation that advertises and sells products through its brick-and-mortar retail stores, its website Walmart.com, and the Walmart App. At any given time, Walmart has hundreds of thousands of items on its shelves.

### B.      Plaintiff's allegations.

Although she fails to identify specific dates, in the Complaint Plaintiff references three occasions on which she visited a Walmart store. First, at some point in June 2022, Plaintiff allegedly visited a Walmart located at 99 H St. NW, Washington. Although she fails to provide a picture or any other evidence, Plaintiff allegedly noticed a Shelf Price for Tide laundry detergent referencing $9.99. (Compl. ¶ 46.) She took the item to the register and was informed that the price

for the item in fact was $11.99. (*Id.* ¶ 48.) Aware of the price discrepancy, Plaintiff nevertheless voluntarily elected to purchase the item. (*Id.*)

Plaintiff allegedly shopped for the same bottle of Tide laundry detergent, sometime between December 2022 and January 2023, at Walmart's Georgia Avenue location. (*Id.*) Like her first transaction, Plaintiff learned of an alleged price discrepancy for the item before completing her purchase transaction. After being informed that the price of the item was $11.99, not $9.99, Plaintiff elected not to buy the product. (*Id.* ¶ 55.)

Plaintiff allegedly purchased a package of Charmin toilet paper in September 2022 at the Riggs Road Walmart. (*Id.* ¶ 57.) Although she once again fails to provide a picture or any other evidence, Plaintiff allegedly noticed a Shelf Price for the toilet paper referencing $7.99. (*Id.* ¶ 58.) She took the item to the register and was informed that the price for the item in fact was $9.99. (*Id.* ¶ 63.) Aware of the price discrepancy, Plaintiff nevertheless once again voluntarily elected to purchase the item. (*Id.*)

The Complaint includes additional references to instances in which the Shelf Price for items allegedly was different from the price referenced on the Walmart App or otherwise charged at the register. (*See generally id.* ¶¶ 9–29.) Importantly, none of these allegations appear to involve Plaintiff's transactions. Although Plaintiff does not expressly say so, these transactions appear to have been made by a private investigator hired by Plaintiff's counsel. Plaintiff does not allege that any of the referenced items were purchased by a consumer for personal use.

### C.   Walmart's electronic platforms.

Customers who purchase items through Walmart.com or the Walmart App must complete a standard checkout process to complete the transaction ("Check-Out Process"). (Declaration of Anil Kumar Garikepati ("Garikepati Decl.") ¶¶ 2–5.) On the final page of the Check-Out Process,

the consumer must click a blue "Place Order" button to complete the transaction. (*Id.* ¶ 8.) A customer cannot finalize an order through Walmart.com without clicking this button. (*Id.*)

> **D.      TOU Agreement and arbitration provision.**

On the final page of the Check-Out Process, the customer is explicitly instructed to "Review" the information on the page, which includes the following language: "By placing this order, you agree to our Privacy Policy and Terms of Use" ("Acknowledgment Language"). (*Id.* ¶ 5.) This language appears immediately above the "Place Order" button, as shown in the screenshot below:



(*Id.* ¶ 8.) When a customer clicks on the underlined words "Privacy Policy" or "Terms of Use" (which are hyperlinks within the Acknowledgment Language), the customer is taken to Walmart's Privacy Policy or TOU Agreement, respectively. (*Id.* ¶ 6.) The first page of the TOU Agreement informs the customer in capital letters that it contains a mandatory-arbitration provision:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE WALMART ENTITIES ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

(*Id.* Ex. 1, at 1.) Section 20 of the TOU Agreement then provides, in relevant part, as follows:

EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.* § 20.) The arbitration agreement also states that "[u]sing or accessing the Walmart Sites," including Walmart.com and the Walmart App, "constitutes [the customer's] acceptance of th[e] Arbitration provision." (*Id.*) Once accepted, the TOU Agreement, including the binding arbitration agreement, remains "effective unless and until terminated by either [Plaintiff] or Walmart." (*Id.* § 21.)

    **E.**    **Plaintiff's use of Walmart's electronic platforms and her agreement to arbitrate.**

Plaintiff has repeatedly used Walmart's electronic platforms, both before and after the transactions identified in the Complaint.[1] Specifically, between May 2022 and November 2023, Plaintiff made four purchases through Walmart's website. (Garikepati Decl. ¶¶ 9–11.) In doing so, as discussed above, Plaintiff affirmatively agreed to the TOU Agreement, including the arbitration provision contained therein. (*Id.*) Her continued use of Walmart's electronic platforms further supports the conclusion that Plaintiff "accept[ed] . . . th[e] Arbitration provision" of the TOU. (*Id.* Ex. 1 § 20.)

---

[1] As referenced above, the investigator hired by Plaintiff's counsel also repeatedly used a Walmart electronic platform in connection with the transactions identified in the Complaint.

In her Complaint Plaintiff repeatedly alleges use of and reliance upon Walmart's electronic platforms in connection with the transactions in dispute in this case. (*See, e.g.*, Compl. ¶¶ 12, 14–25.) Accordingly, as discussed in greater detail below, the pending dispute between the parties must be resolved on an individual basis through arbitration.

On April 11, 2024, counsel for Walmart advised Plaintiff's counsel that Plaintiff is bound by the arbitration agreement contained in the TOU Agreement. (Battaglia Decl. ¶ 2.) Accordingly, defense counsel requested that Plaintiff voluntarily dismiss the pending case and, instead, resolve the parties' dispute through arbitration. Plaintiff's counsel, on behalf of their client, refused to do so. (*Id.*)

## III.    LEGAL STANDARD

### A.    Enforcement of arbitration provisions.

The Federal Arbitration Act ("FAA") provides that a written arbitration provision included in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a court must, upon motion by a party, stay or dismiss any proceeding and compel arbitration if an issue in controversy is covered by a valid arbitration agreement. *See* 9 U.S.C. §§ 3, 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration . . . § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement[.]' ").

Federal law strongly favors the arbitration of disputes and requires that courts rigorously enforce arbitration agreements. *See, e.g.*, *Marmet Health Care Ctr. v. Brown*, 132 S. Ct. 1201, 1203 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *Concepcion*, 131 S. Ct. at 1745. Courts have a narrow role in determining whether the parties are bound by arbitration, and thus consider two straightforward questions in determining arbitrability: (1) whether the parties

have agreed to arbitrate and (2) whether the claims in the suit fall under the arbitration agreement. *Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266, 269 (D.D.C. 2010). In determining whether these requirements have been met, the Court "appl[ies] ordinary state law contract principles." *Id.* "The D.C. Circuit has held that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *3 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) (quoting *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009)).

In considering a motion to compel arbitration, the court may consider both the pleadings and additional evidence submitted by the parties. *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (noting that a motion to compel arbitration is properly resolved under the summary judgment standard); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1000 (D.C. Cir. 2009) (holding that the court may consider evidence outside the complaint). Courts in this circuit have held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009).

**B.   Dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).**

If the Court determines the pending dispute is not subject to arbitration, it must then assess whether the Complaint nevertheless should be dismissed. To survive a motion to dismiss under Rule 12(b)(1) for lack of standing, a plaintiff must present sufficient facts that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); Fed. R. Civ. P. 12(b)(1). "[T]he plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction." *Clean Label Project Found. v. Garden of Life, LLC*, 2021 WL 4318099, at *6 (D.D.C. 2022) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Furthermore, "because subject matter jurisdiction focuses on the court's power to even hear the claim, a court is to apply closer scrutiny when resolving a Rule 12(b)(1) motion compared to a Rule 12(b)(6) motion for failure to state a claim." *Id.* (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). The Court may look "beyond the pleadings" to determine whether Plaintiff has standing to be before this Court. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

Alternatively, a motion to dismiss under Rule 12(b)(6) should be granted unless the complaint contains sufficient factual matter to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face if there is sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the harm alleged. *Id.* If a complaint pleads facts that merely create the possibility that the defendant is liable, but do not make it plausible that the defendant is liable, then dismissal of the claim is warranted. *Id.* In other words, the factual allegations in the complaint must be enough to support a right to relief that is more than just speculative. *Twombly*, 550 U.S. at 555. A complaint that merely recites the elements of a cause of action and gives conclusory statements cannot alone meet this standard. *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. The claims asserted in the Complaint must be resolved through arbitration.

#### 1. A valid and enforceable arbitration agreement exists.

The Court first must determine whether "a valid agreement to arbitrate exists between the parties." *Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*, 767 F. Supp. 2d 161, 167–68 (D.D.C. 2011) (internal citation omitted); *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 149 (D.D.C. 2002). As a federal court sitting in diversity, this Court must apply the choice-of-law rules of its forum. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487, 496 (1941); *Lee v. Flintkote Co.*, 593 F.2d 1275, 1278–79 (D.C. Cir. 1979). Both the D.C. Circuit and this Court have established that contracts can be formed by electronic consent, including via either the scrollwrap or the clickwrap method. *See Selden v. Airbnb*, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148, 156 (D.C. Cir. 2021) (enforcing arbitration provisions in clickwrap terms of service where the "sign-up screen placed [plaintiff] on reasonable notice" that "[b]y signing up, I agree to [defendant's] Terms of Service, Privacy, Policy" because a button on the screen explicitly stated such); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 11 (D.D.C. 2021) (enforcing arbitration provision in Lyft's terms of service and explaining that "it is well established that Lyft's [scrollwrap] method for obtaining drivers' assent to its Terms of Service—presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service . . . constitutes a valid means of offer and acceptance" to form a binding agreement).

Plaintiff cannot genuinely dispute that she agreed to be bound by the TOU Agreement, including its clearly disclosed arbitration agreement. Plaintiff Rector's express consent to Walmart's TOU on at least four separate occasions, both before and after the alleged transactions at issue, created a valid agreement with Walmart. (Garikepati Decl. ¶¶ 9–11.) That agreement was still in effect in June 2022 through January 2023. (*Compare* Compl. ¶¶ 49–61 (Plaintiff's allegations regarding her continued use of the Walmart App), *with* Garikepati Decl. Ex. 1 § 21 (noting an individual may terminate the TOU at any time, "provided that [the individual] discontinue any further use of the Walmart Sites").)

Courts routinely enforce arbitration agreements with language similar to Walmart's—and have indeed enforced Walmart's arbitration agreement in similar cases. *See* Dkt. 28, *Adelstein v. Walmart Inc.*, 1:23-cv-67 (N.D. Ohio Mar. 30, 2024) (granting Walmart's motion to compel

arbitration where plaintiff relied on Walmart's website pricing for in-store purchases) (a slip copy of this opinion is attached as Exhibit A); *see also Maynez v. Walmart Inc.*, No. 20-cv-0023, 2020 WL 4882414 (C.D. Cal. Aug. 14, 2020) (granting motion to compel arbitration for plaintiff's previous acceptance of terms of use).

The result should be no different here. Plaintiff affirmatively approved the TOU Agreement and its arbitration agreement when she purchased items on Walmart.com, and she effectively reaffirmed that consent on eight additional occasions by continuing to make purchases through Walmart.com. Accordingly, Plaintiff cannot genuinely argue that she is not bound by Walmart's TOUs and, in turn, the arbitration provision.

## 2. The enforceable arbitration agreement covers this dispute.

In the next step of the analysis, the Court considers whether the arbitration provision covers the dispute at issue. *Nur v. K.F.C., USA, Inc.*, 142 F. Supp. 2d 48, 51 (D.D.C. 2001). Here the arbitration agreement broadly covers "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." (Garikepati Decl. Ex. 1 § 20.) When an arbitration clause is broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 65 F. Supp. 3d 134, 143 (D.D.C. 2014) ("Thus, '[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" (citing *AT & T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 654 (1986))); *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

Plaintiff's claims unquestionably arise out of or relate to the TOU Agreement and her relationship with Walmart: "Mispriced items were confirmed by comparison of the shelf-tag price

with Walmart's in-store price scanner in their mobile app (which reflects the price at the register); some items were additionally confirmed through actual purchase at the register." (Compl. ¶ 12.) Thus, the crux of Plaintiff's Complaint is necessarily premised on her purported reliance on statements contained on the Walmart App. Accordingly, Plaintiff's claims fall squarely within the parameters of the arbitration agreement.

### 3.   Arbitration must proceed on an individual basis.

Plaintiff must arbitrate her claims on an individual, not class, basis. The TOU Agreement contains an explicit class waiver: "YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION." The U.S. Supreme Court has held that if an arbitration provision sets forth a waiver of class action arbitration, then the waiver is valid and enforceable. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 466 (2015). Accordingly, this Court should compel individual arbitration of Plaintiff's claims.

### 4.   The Court should dismiss Plaintiff's claims or, in the alternative, issue a stay pending arbitration.

Federal law requires a dismissal or stay of the proceedings until the arbitration process is complete. 9 U.S.C. § 3; *see also Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 488 (6th Cir. 2001) (staying the action pending arbitration); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1270 (6th Cir. 1990) (compelling arbitration and dismissing complaint); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that the "weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). Absent dismissal or, at a minimum, a stay, Walmart will be prejudiced by being

forced to litigate in this forum despite its agreement with Plaintiff to arbitrate, and any continued litigation would improperly invade the province of the arbitrator while arbitration is pending.

**B.      If the Court elects not to compel arbitration, Plaintiff's claim nevertheless is fatally defective and should be dismissed.**

**1.      Plaintiff lacks Article III standing.**

"Standing is a threshold jurisdictional question" that "the Court must address . . . before moving on to the merits of the case." *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 7 F. Supp. 3d 1, 7 (D.D.C. 2013). To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61; *see also Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017). Intangible injuries can sometimes be "concrete," but that does not mean "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Mattiaccio v. DHA Grp., Inc.*, 474 F. Supp. 3d 231, 238 (D.D.C. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

"Although the DCCPPA provides that misrepresentation is an unlawful trade practice 'whether or not any consumer is in fact misled, deceived or damaged thereby,' D.C. Code § 28-3904, District of Columbia courts have explained that in order to have standing to sue in court for a violation of the DCCPPA (as opposed to seeking administrative remedies), a plaintiff must establish that she has suffered damage as a result of the unlawful trade practice." *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 99 (D.D.C. 2010) (quoting *Osbourne v. Cap. City Mortg. Corp.*, 667

A.2d 1321, 1329–30 (D.C. 1995)); *see also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28–29 (D.D.C. 2007) (dismissing DCCPPA claim for lack of standing because plaintiffs failed to allege a plausible injury).

Plaintiff Rector does not allege that she suffered any concrete harm from Walmart's alleged practices. As discussed above, Plaintiff alleges Walmart overcharged her in connection with two completed transactions. (Compl. ¶¶ 49–61.) Regardless of Plaintiff's claims of alleged inaccurate pricing, Plaintiff admits that she was aware of the correct pricing ***before*** completing each purchase. (*Id.* ¶¶ 48 (plaintiff "noticed the discrepancy and informed the cashier, the cashier told her she would still have to pay the higher register price"), 55 ("noticed the discrepancy and informed the cashier," who again told her that "she would have to pay the register price"), 63 (plaintiff "noticed the misprice and requested a refund, [but] she was again told that she would have to pay the higher price").) Relatedly, in one instance Plaintiff learned the correct price ***before*** completing her transaction and made an informed decision ***not to purchase*** the product. (*Id.* ¶ 55.) Given these undisputed facts, Plaintiff cannot establish a "concrete and demonstrable injury" under Article III. *See Hoyte*, 489 F. Supp. 2d at 28 (dismissing DCCPPA representative action because the named plaintiff had not suffered an injury-in-fact and holding that, although the DCCPPA's broadly worded introductory language "might suggest that a plaintiff could pursue a claim under DCCPPA without an actual or threatened injury, the cases hold otherwise"); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (collecting cases for the proposition that "a lawsuit under the DCCPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself").

Apparently attempting to fill this void, the Complaint references alleged purchases made by an investigator hired by Plaintiff's counsel for purposes of this litigation. (Compl. ¶¶ 14–26.)

Plaintiff's hired investigator, however, is not a "consumer" under the DCCPPA. D.C. Code § 28-3901(a)(2)(B)(i) ("consumer," in this context, refers to things a person would purchase, lease, receive, or use "for personal, household, or family purposes"); *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006). Here, the central question is whether Plaintiff's hired investigator was acting as a consumer in his interactions with Walmart. The answer is clearly no. Plaintiff admits the investigator made these purchases at the direction of counsel, which means they were not done for "personal, household, or family purposes." D.C. Code § 28-3901(a)(2)(B)(i); *see Ford*, 908 A.2d at 81 (dismissing DCCPPA claims premised on attorney's purchase of office supplies); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (holding an employer's payment for its employee's hotel stay is not actionable under the DCCPPA, especially when that purchase is for a business purpose); *Mazanderan v. Indep. Taxi Owners' Ass'n*, 700 F. Supp. 588, 591 (D.D.C. 1988) (holding a cab driver's purchase of gasoline was not covered by the DCCPPA because it was made "in connection with his role as an independent businessman," and not primarily for personal use). Accordingly, the transactions involving the investigator are irrelevant for purposes of establishing Article III standing.[2]

## 2. The Complaint should be dismissed under Rule 12(b)(6) because the law does not require pricing perfection.

Plaintiff's argument requires that Walmart—and, presumably, all other retailers who do business in the District of Columbia—be held strictly liable if the Shelf Pricing does not always match the price charged at the register. Contrary to Plaintiff's position, pricing perfection is not required in the District of Columbia, nor is it reasonably expected in any state.

---

[2] Moreover, as explained in greater detail in Section c below, Plaintiff's allegations concerning alleged purchases made by an investigator hired by Plaintiff's counsel are immaterial to this Court's analysis of an alleged DCCPPA violation. The only purchases this Court should consider are those allegedly made by Plaintiff.

a.      **Laws around the country acknowledge that pricing errors are to be expected.**

The District of Columbia does not have statutes or regulations that directly address the accuracy of Shelf Pricing, but many other states do have such laws. Although these laws vary by jurisdiction, they all have one thing in common—each law recognizes that pricing errors are inevitable. For example:

- Michigan law requires consumers to notify sellers within 30 days after their purchase if they were overcharged. The seller has two days to remedy the overcharge. If the overcharge is corrected, the consumer is precluded from bringing a lawsuit. Michigan law also contains express limitations on available remedies. *See* Mich. Comp. Laws § 445.319, .322, .324.

- Connecticut law provides that a consumer who is charged a higher retail price than the Shelf Price is entitled to one free item up to a value of $20. *See* R.C.S.A. § 21a-79-7.

- Mississippi and Oklahoma similarly limit available remedies for pricing errors. *See* Miss. Code § 75-27-51; Okla. Stat. § 2-14-38.

- Florida has adopted a version of the NCWM Handbook standard on price verification. *See* Fla. Stat. § 531.44; *see also infra* Section 2.b (discussing the Handbook). In addition, the State of Florida's Department of Agriculture and Consumer Services advises in its FAQs that "[i]f a store's scanner reflects a different price than the posted or advertised price, [the consumer] should first bring the discrepancy to the attention of the salesclerk or store management."[3]

These state laws, and others like them, recognize that pricing errors are inevitable. Thus, the fact that an individual consumer may have identified some errors does not provide a sufficient basis upon which to bring a consumer fraud claim, much less a class action seeking millions of dollars for Plaintiff and her attorneys.

---

[3] *See* https://www.fdacs.gov/Consumer-Resources/Consumer-Rights-and-Responsibilities/Weights-and-Measures/What-should-I-do-if-an-item-purchased-at-a-store-scans-at-a-different-price-than-the-posted-or-advertised-price.

       **b.**       **The U.S. Department of Commerce similarly recognizes the inevitability of pricing errors.**

Like many states, the National Institute of Standards and Technology of the U.S. Department of Commerce has addressed the real-world challenges associated with Shelf Pricing. Specifically, in a handbook adopted by the 106th National Conference on Weights and Measures (the "Handbook"), the Department of Commerce acknowledges that 100% pricing accuracy is not reasonably expected in the retail industry.[4] To that end, the Handbook expressly recognizes that "[*r*]*andom pricing errors are to be expected*." *Id.* (Ex. B at 225) (emphasis added). Notably, the Handbook contains detailed procedures by which state and federal regulators monitor retailer pricing, including sampling methods and sample sizes. *See id.* (Ex. B at 211–23). The specific nature of these sampling methods effectively guards against inherent problems when an individual only identifies a limited, statistically insignificant number of pricing errors, let alone obvious problems if an individual intentionally attempts to cherry-pick certain items as support for a putative national class action.[5]

       **c.**       **In a virtually identical case against Walmart, another federal district court dismissed the plaintiff's allegations, with prejudice.**

Consistent with the logic underlying the referenced state laws and the Handbook, the Northern District of Illinois addressed this precise issue in *Kahn v. Walmart Inc.*, 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023). The *Kahn* court rejected the notion that a mere differential between Shelf Prices and the amount charged at checkout was sufficient to state a viable claim. In *Kahn*, the plaintiff alleged that Walmart improperly charged him for several items when the prices

---

[4] *See* Handbook 130, § V, Examination Procedure for Price Verification, a copy of which is attached as Ex. B. The Court can take judicial notice of publicly available documents. *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

[5] "If a store has more overcharges than undercharges . . . , it may indicate that the store is not following good pricing practices, but enough errors must be present in order to make this determination." *Id.* (Ex. B at 225). Plaintiff's sample set of items purchased from Walmart falls woefully short.

scanned at the checkout counter differed from the advertised shelf prices for the purchased items. *Id.* at \*1. In granting Walmart's motion to dismiss, the court highlighted that the plaintiff was provided with enough information that would "dispel a tendency to mislead, [and] there [was thus] no possibility for deception." *Id.* at \*3 (quoting *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018)). The *Kahn* court heavily relied on the fact that Walmart provided the plaintiff with a receipt with the correct pricing, which dispelled the possibility for deception. *Id.*

Here, although Plaintiff Rector fails to specifically allege whether she was provided with a receipt,[6] she admits Walmart provided her with accurate pricing information **before** she completed her transactions. This allowed Plaintiff to make an informed decision whether to complete her transaction despite the item being a higher price than she originally thought. In fact, that is exactly what happened in one of the three transactions Plaintiff identifies in the Complaint. Given these facts, Plaintiff has failed to state a viable claim.

3.   **The Complaint should be dismissed because it does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled.**

To state a claim under the DCCPPA, Plaintiff must establish that Walmart made a material misrepresentation or otherwise failed to make a material disclosure. *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020). "[A] claim of an unfair trade practice [under the DCCPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008); *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 39 (D.D.C. 2019). A misrepresentation or omission is "material" if "a reasonable person 'would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction' or 'the maker of the representation knows or has reason to

---

[6] Indeed, Plaintiff cannot even recall the exact date on which she was supposedly overcharged.

know' that the recipient likely 'regard[s] the matter as important in determining his or her choice of action.'" *Krukas*, 376 F. Supp. 3d at 39 (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)).

District of Columbia courts have recognized that "consumer protection laws tend to share common principles across the country." *Stone v. Landis Constr. Co.*, 120 A.3d 1287, 1291 & n.9 (D.C. 2015). To that end, the courts have looked to courts' interpretations of other state consumer-protection statutes in construing the DCCPPA. *See Saucier*, 64 A.3d at 444.

Plaintiff should thus be required to allege more than the mere fact of a price discrepancy to state a claim. A price discrepancy, standing alone, evidences no more than a mere error. If Plaintiff could state a claim based simply on identifying a price discrepancy without taking into account all the facts a reasonable consumer would rely on in making a purchase—such as a cashier's expressly providing a consumer with the correct pricing for a product before completing a transaction—the DCCPPA effectively would create strict liability for any pricing errors. As discussed above, there do not appear to be laws anywhere in the country that hold retailers to such an impossibly high standard.

## V.   CONCLUSION

For the foregoing reasons, Walmart respectfully requests that this Court order the parties to arbitrate their dispute on an individual basis. Alternatively, the Complaint should be dismissed because Plaintiff lacks standing, and she otherwise has failed to state a viable claim under the DCCPPA.

Dated: April 12, 2024        Respectfully submitted,

WINSTON & STRAWN LLP


*/s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5855
JBrightbill@winston.com

Daniel M. Blouin (admitted pro hac vice)
Frank A. Battaglia (admitted pro hac vice)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
DBlouin@winston.com
FBattaglia@winston.com

*Attorneys for Walmart Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2024, the foregoing was served by U.S. mail on the following counsel and electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

Veronica Nannis, Esq. (#485151)
Drew Laframboise, Esq. (#1018140)
JOSEPH GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com

Nicole T. Fiorelli, Esq. (*pro hac vice* to be filed)
Frank A. Bartela, Esq. (*pro hac vice* to be filed)
Patrick J. Perotti, Esq. (*pro hac vice* to be filed)
Shmuel S. Kleinman, Esq. (*pro hac vice* to be filed)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
(440) 352-3391 II (440) 352-3469 Fax
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
pperotti@dworkenlaw.com
skleinman@dworkenlaw.com

*/s/ Jonathan D. Brightbill*
Jonathan D. Brightbill