# EXHIBIT A

## *Adelstein v. Walmart Inc.*

United States District Court for the Northern District of Ohio, Eastern Division

March 30, 2024, Decided; March 30, 2024, Filed

CASE NO. 1:23-cv-00067

**Reporter**
2024 U.S. Dist. LEXIS 58814 *

KEVIN ADELSTEIN, Plaintiff, v. WALMART INC., d/b/a WALMART, Defendant.

**Prior History:** *Adelstein v. Walmart, Inc., 2023 U.S. Dist. LEXIS 152922, 2023 WL 5607457 (N.D. Ohio, Aug. 30, 2023)*

**Counsel:** [*1] For Kevin Adelstein, on behalf of himself and all those similarly situated, Plaintiff: Jacquelyn S. Frederick, Lawrence R. Bach, Michael L. Berler, Ronald I. Frederick, Frederick & Berler, Cleveland, OH; Laura A. DePledge, DePledge Law Office, Mentor, OH; Scott C.I. Borison, Borison Firm, Casper, WY.

For Walmart Inc., doing business as Walmart, Defendant: Daniel M. Blouin, Frank Battaglia, PRO HAC VICE, Winston & Strawn - Chicago, Chicago, IL; Gregory R. Farkas, James B. Niehaus, Frantz Ward, Cleveland, OH.

**Judges:** BRIDGET MEEHAN BRENNAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BRIDGET MEEHAN BRENNAN

## Opinion

**MEMORANDUM OPINION AND ORDER**

On March 14, 2023, Defendant Walmart, Inc., d/b/a Walmart ("Walmart" or "Defendant"), moved to compel arbitration to resolve claims brought by Plaintiff Kevin Adelstein, and to either stay the case pending arbitration or dismiss the claims. (Doc. No. 14.) This motion to compel is fully briefed. (*See* Doc. Nos. 22, 27.) For the following reasons, the Court GRANTS Defendant's motion to compel arbitration and STAYS the case.

**I. FACTUAL BACKGROUND**

Plaintiff brings claims relating to his experiences purchasing items on Walmart's website, Walmart.com. Walmart is an Arkansas-based corporation [*2] registered to do business in Ohio. (Doc. 1-1 at 21.) It operates both in-person and online storefronts that offer customers a wide variety of products for sale. (*Id.*) Plaintiff is a resident of Cuyahoga County, Ohio, and a personal consumer of Walmart's products. (Doc. 1-1 at 20.)

According to the complaint, on August 8, 2022, Plaintiff viewed multiple products advertised on Walmart.com. (Doc. No. 1-1 at 21.)[1] The website indicated that those products were available for in-store purchase at the Aurora, Ohio Walmart. (*Id.*) Plaintiff alleges that when he visited the Aurora Walmart store and purchased those products, however, Walmart charged him higher prices than the website's listed prices. (*Id.* at 21-22.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

In the memorandum in support of its motion to compel, Defendant Walmart says that seven months earlier, on January 11, 2022, Plaintiff ordered several items on Walmart.com for in-store pickup. (Doc. No. 14-1, ¶¶ 11-13.) As part of the website's check-out process, Plaintiff clicked a blue "Place Order" button to complete the transaction. (*Id.*, ¶ 8.) Above that button was the following language: "By placing this order, you agree to our Privacy Policy and Terms of Use." (*Id.*, ¶ 5.) Walmart [*3] says that when a customer clicks on the hyperlinked underlined words "Privacy Policy" or "Terms of Use," the customer is taken to a separate page containing the named policy. (*Id.*, ¶ 6.)

Attached to Defendant's motion is a copy of the Terms of Use ("TOU") applicable on the relevant dates—specifically, the TOU that was in place on January 11, 2022, and August 8, 2022. (Doc. No.14-2.) In relevant part, the TOU reads:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE WALMART ENTITIES ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

(*Id.* at 211 (emphasis in original).) Section 20 of the TOU, titled "Disputes & Arbitration; Applicable Law," provides:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY [*4] OTHER LEGAL THEROY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.* at 231.) That section of the TOU also provides that "[u]sing or accessing the Walmart Sites constitutes [the user's] acceptance of this Arbitration provision." (*Id.*) The arbitration provision "provides that [the user] and Walmart will waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration provision." (*Id.*)

Section 8(B) of the TOU, titled "Pricing Information; Availability," provides that 'pricing for products may be different on the Walmart Sites or from prices available in Walmart stores or on Walmart Apps." (*Id.* at 219.)

Further, the TOU provides that it is "effective unless and until terminated by either [the user] or Walmart." (*Id.* at 232.) The user "may terminate [*5] these Terms of Use at any time, provided that [the user] discontinue any further use of the Walmart Sites." (*Id.*)

## II. PROCEDURAL BACKGROUND

On August 19, 2022, Plaintiff sued Walmart in his individual capacity in Bedford Municipal Court, Cuyahoga County. (Doc. 1-1 at 97.) Plaintiff alleged violations of Ohio's Consumer Safety and Protection Act and fraud. (*Id.* at 99-104.) When Walmart answered the original complaint, it did not raise the TOU or arbitration as an affirmative defense. (*Id.* at 68-82.) Nor did Walmart raise arbitration in its partial motion to dismiss, filed contemporaneously with its answer to the original complaint. (*Id.* at 57-66.)

On December 19, 2022, Plaintiff filed his first amended complaint, along with a motion to transfer the case to the Court of Common Pleas. (Doc. No. 1-1 at 17.) In his First Amended Complaint, Plaintiff asserted the same counts as in his original complaint, on behalf of the following two classes:

"**CSPA Sale at Over Advertised Price**": All customers who, within two (2) years prior to the date of filing of the original complaint (August 19, 2022) to the date this case is certified, purchased a product in Ohio from Walmart, and were charged a price [*6] greater than the price advertised on Walmart.com.

"**Fraud Sale at Over Advertised Price**": All customers who, within four (4) years prior to the date of filing of the original complaint (August 19, 2022) to the date this case is certified, purchased a product in Ohio from Walmart, and were charged a price greater than the price advertised on Walmart.com.

(*Id.* at 24.)

On January 1, 2023, Walmart removed the matter to federal court, asserting this Court's jurisdiction based on the *Class Action Fairness Act*. (Doc. No. 1 at 3.) On January 1, 2023, Plaintiff moved to remand the action back to state court. (Doc. 8.) Defendant asked for an extension to file its answer until the Court ruled on Plaintiff's motion to remand; the Court granted the extension. (Doc. Nos. 10, 11.)

Meanwhile, on March 15, 2023, Defendant filed the instant motion to compel arbitration.[2] (Doc. No. 14.) Plaintiff asked the Court to stay briefing on the motion to compel until after ruling on his motion to remand. (Doc. No. 15.) The Court did so (Doc No. 16), and on August 30, 2023, denied the motion to remand (Doc. No. 17.)

Plaintiff filed his opposition to Defendant's motion to compel (Doc. 22), and Defendant replied (Doc. [*7] No. 27).

## III. LEGAL STANDARD

Under the *Federal Arbitration Act*, courts considering a motion to compel arbitration engage in a limited, two-step review. *Bratt Enters., Inc. v. Noble Int'l Ltd., 338 F.3d 609, 612 (6th Cir. 2003)* (citation omitted). In step one, the courts must decide whether there is a valid contract contract to arbitrate between the parties. *Id.* (citation omitted).[3] For step two, the courts must determine the parties' dispute falls within the arbitration agreement's scope before it compels arbitration. *Bratt Enters., 338 F.3d at 612*.

There is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)*; see also *Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005)*. Where, as in the instant action, the arbitration clause is broad, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 577 (6th Cir. 2003)* (quoting *AT&T Techs., Inc. v. Comms. Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)*).

Motions to compel arbitration are treated like motions for summary judgment. *Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002)*. Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on

---

[2] Walmart initially filed a Memorandum in support of its motion to compel, sans motion. (Doc. No. 15.) The Court granted Walmart's unopposed motion to file a cover motion to compel and backdate it to the memorandum filing. (Dkt., Oct. 19, 2023.)

[3] In deciding whether the parties agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)*. Thus, the Court must apply the choice-of-law rules of the forum state, Ohio. See *Wallace v. Red Bull Distrib. Co., 958 F. Supp. 2d 811, 818 (N.D. Ohio 2013)*. The TOU states that it is "governed by and construed under the laws of the United States (excluding federal arbitration law) and the State of California, without regard to conflicts of law principles." (Doc. No. 14-2 at 232.) However, the Court need not resolve choice-of-law issues at this stage, because the "threshold matter before the Court is one of simple contract construction, the Court need not resolve the choice of law issue." *Meldrum v. Dillard's, Inc., No. 5:21-CV-01673, 2022 U.S. Dist. LEXIS 72742, 2022 WL 117043, at *2 (N.D. Ohio Apr. 20, 2022)*.

the party opposing arbitration to show that the agreement [*8] is not enforceable." *Townsend v. Stand Up Management, No. 1:18CV2884, 2019 U.S. Dist. LEXIS 133635, 2019 WL 3729266, at *2 (N.D Ohio Aug. 8, 2022)* (citing *Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)*). To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth, 288 F.3d at 889*.

## IV. DISCUSSION

Walmart moves to compel arbitration on the grounds that Plaintiff agreed to submit any claims relating to Walmart.com to binding, individual arbitration under the TOU's terms. Plaintiff objects and argues that (1) Walmart failed to establish that the TOU is an enforceable arbitration agreement between the parties; (2) Plaintiff brings claims relating to his in-store August 8, 2022, purchase that are outside of the TOU's scope; and (3) Walmart waived its right to arbitrate.

### A. Enforceability of Arbitration Agreement

Plaintiff argues that the January TOU is unenforceable as an arbitration agreement because it did not give constructive notice. (Doc. No. 22 at 310.) Plaintiff says the presentation of the TOU's terms to a user is unreasonable since the link to the TOU is not conspicuous as such. (*Id.* at 211-12.)

"Courts find 'clickwrap' agreements"[4] - such as the one at issue here—"enforceable 'where the existence of the terms was reasonably communicated to the user.'" *Rosskamm v. Amazon.com, Inc., 637 F. Supp. 3d 500, 510 (N.D. Ohio 2022)* (quoting *Meyer v. Uber Techs., Inc., 868 F.3d 66, 76 (2d Cir. 2017)*). And Courts have repeatedly [*9] found arbitration agreements with comparable characteristics to Defendant's TOU to be reasonably communicated. *Id.* (gathering cases); *see, e.g., Maynez v. Walmart, Inc., No. 20-cv-0023, 479 F. Supp. 3d 890, 2020 WL 4882414 (C.D. Cal. Aug. 14, 2020)* (finding same language and structure of Defendant's TOU to be valid and enforceable); *Crawford, 2014 U.S. Dist. LEXIS 156658, 2014 WL 6606563, at *3* (upholding agreement where plaintiff had to click a "Place Order" button with a sentence immediately above containing hyperlinked Terms and Conditions).

Here, the text notifying a customer of the TOU reads: "By placing this order, you agree to our Privacy Policy and Terms of Use." (Doc. No. 14 at 196; Doc. No. 22 at 298.) The underlined text refereeing the TOU is linked in grey directly above the "Place Order" button that a customer must use to make a Walmart.com purchase.[5] Walmart's TOU was directly accessible beneath the "Place Order" button, underlined indicating a hyperlink, with clear visual presentation. So, the Court finds that the TOU was reasonably communicated to Plaintiff via his January 2022 purchase. There is therefore a valid and enforceable arbitration agreement between the parties. *Cf. Carey v. Uber Techs., Inc., No. 1:16-cv-1058, 2017 U.S. Dist. LEXIS 44340, 2017 WL 1133936, at *4 (N.D. Ohio May 17, 2017)* ("[C]ourts in both Ohio and California have found that clicking through relevant screens . . . is an acceptable method

---

[4] "A 'clickwrap agreement requires users to expressly manifest assent to the terms by, for example, clicking an "I accept" button." *Crawford v. Beachbody, LLC, No.14cv1583, 2014 U.S. Dist. LEXIS 156658, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014)*. "It 'presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon." *Id.* (quoting *Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 22 n.4 (2d Cir. 2002)*). "The product cannot be obtained or used unless and until the icon is clicked." *Id.*

[5] Plaintiff presents an image of Walmart.com as a purported example of the TOU's presentation at checkout. (Doc. No. 22 at 298.) However, that checkout website is dated March 22, 2023. (*Id.*) Even if that were an accurate depiction of the January 2022 checkout webpage, the Court finds that that March 3, 2023, configuration of the TOU hyperlink also would provide a reasonably prudent user with notice of the TOU.

to manifest assent to [*10] the terms of an agreement even where disputed terms are contained in a hyperlink." (quotation and citation omitted)).[6]

### B. Scope of Arbitration Agreement

Next, Plaintiff argues that because his claims pertain to his August 8, 2022, *in-store* purchase, the TOU, which deals only with claims arising from Walmart.com, his claims are therefore outside of the TOU's scope. (Doc. No. 22 at 304, 307-10.)

The arbitration provision in the TOU covers "ALL DISPUTES ARISING OUT OF . . . THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN [the user] AND WALMART." (Doc. No. 14-2 at 231 (emphasis original).) While this language could be clearer, looking at the contract as a whole, the Court finds that Plaintiff's claims relating to his August 8, 2022, purchases fall within its scope. *See Wilkerson v. Am. Fam. Ins. Co., 997 F.3d 666, 668 (6th Cir. 2021)* (*citing Dominish v. Nationwide Ins. Co., 129 Ohio St. 3d 466, 2011- Ohio 4102, 953 N.E.2d 820, 822 (Ohio 2011)*) (Ohio courts look to contract as a whole when interpreting ambiguous terms); *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 77 Cal. Rptr. 2d 107, 959 P.2d 265, 272-73 (Cal. 1998)* (California courts do the same). The TOU includes a clause that provides that "[p]ricing for products may be different on the Walmart Sites or from prices available in Walmart stores or Walmart Apps." (Doc. 14-2 at 219.)

Plaintiff's claims arise directly out of this clause and are thus within the TOU's [*11] purview. In general, Plaintiff's claims directly relate to alleged misrepresentations on Walmart.com, and the discrepancies between the website's listed prices and those for in-store purchases identified by Plaintiff in August 2022. (*See, e.g.*, Doc. 1-1, ¶¶ 11-14, 16-17, 24-25, 28, 30.) Plaintiff does not allege that by August 2022, he had opted out of the TOU he had previously entered in January 2022. *See* Doc. 14-2 at 219 ("These Terms of Use are effective unless and until terminated by either you or Walmart."). Indeed, Plaintiff would have had to cease using Walmart.com to opt out of the TOU; his claims necessarily require his use of Walmart.com in August 2022. And Plaintiff's claims are of the kind explicitly covered by the TOU: "BASED IN . . . STATUE [and] FRAUD." (Doc. No. 14-2 at 231; Doc. No. 1-1 at 28-35.)

Plaintiff argues that his claims should be construed as based exclusively on in-store transactions and that the TOU does not clearly cover in-store transactions. (Doc. 22 at 307.) Even if the Court accepted this construction, the TOU's language is broad, extending to "ALL DISPUTES ARISING OUT OF . . . ANY ASPECT OF THE RELATIONSHIOP BETWEEN [Plaintiff] and Walmart." (Doc. [*12] No. 14-2 at 231.) Resolving all doubts about the scope of arbitrable issues in favor of arbitration, the Court finds that Plaintiff's claims fall within this language and are covered by the TOU. *Javitch v. First Union Sec., Inc., 315 F.3d 619, 625 (6th Cir. 2003)* (citing *Moses H. Cone Mem' Hosp., 460 U.S. at 24-25*); *see Maynez, 479 F. Supp. 3d at 898*.

### C. Waiver

Lastly, Plaintiff argues that Walmart waived its right to arbitrate due to Walmart's extensive engagement in this litigation before it invoked the arbitration agreement. (Doc. No. 22 at 305.)

The Supreme Court recently abrogated the test for whether a party has waived its arbitration rights by participating in litigation. *See Schwebke v. United Wholesale Mortg., Nos. 23-1507/1551, 2024 U.S. App. LEXIS 7210, 2024 WL*

---

[6] Plaintiff suggests that the version of the TOU Walmart attached to its motion to compel is not the version of the TOU that was in effect on Walmart's website on January 11, 2022. (Doc. No. 22 at 296 n.2.) Plaintiff cites to a declaration by Walmart's Director of Engineering, submitted into the record of a different case. (*See* Doc. No. 22-1 at 324, *citing Chaplin v. Walmart Inc.*, 3:23-cv-878, Doc. No. 13 (N.D. Cal Mar. 27, 2023)). Looking at the evidence available to the Court, the Court does not find that Plaintiff's suggestion carries water. *Compare* Doc. No 22-1 at 324 (indicating June 2021 TOU was active through at least December 8, 2021) *with* Doc. 14-2 at 211 (June 3, 2021, TOU alleged active on January 11, 2022). These two documents do not appear to be inconsistent.

1298149, at *2 (6th Cir. 2024) (citing Morgan v. Sundance, 596 U.S. 411, 414, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022)). Before Morgan, the Sixth Circuit held that a party waives an agreement to arbitrate when it both "(1) tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delay[s] its assertion to such an extent that the opposing party incurs actual prejudice." Id. (citing Hurley v. Deutsche Bank Tr. Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010)). At minimum, "Morgan eliminated the prejudice requirement." 2024 U.S. App. LEXIS 7210, [WL] at *3. The Sixth Circuit's first prong, that of actions taken that are "completely inconsistent" with arbitration, appears to have survived Morgan. Id.

The Sixth Circuit weighs a party's actions during litigation as a whole when determining whether those actions are completely inconsistent [*13] with arbitration. See Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 718-20 (6th Cir. 2012) (actions such as "a defendant's failure to raise arbitration as an affirmative defense;" raising a counterclaim; eight months of litigation; and motions involving settlement, scheduling, and discovery requests, taken together, were completely inconsistent).

Here, Walmart's actions are not completely inconsistent with exercising its right to arbitrate. Plaintiff initially filed an individual claim in state court, with an amount in controversy under $15,000. (See Doc. No. 1-1 at 97-105.) Walmart did not include arbitration as an affirmative defense but did file a partial motion to dismiss. (Id. at 57-66.) That motion was mooted by Plaintiff filing his first amended complaint, four weeks later. See Drake v. City of Detroit, 266 F. App'x 444, 448 (6th Cir. 2008) (noting that an amended complaint "supersedes" the prior complaint). It was only after Plaintiff filed his first amended complaint that brought class claims and an amount in controversy over $500,000 that Defendant asserted the arbitration provision. Notably, at that time, the parties had not engaged in discover, nor had there been other significant activity in the case. Even though Walmart did not raise arbitration in its initial answer, the parties have since stayed [*14] the litigation. These proceedings are not completely inconsistent with Walmart asserting its right to arbitrate this matter.

For these reasons, the Court finds that the parties entered into a binding arbitration agreement, Plaintiff's claims are part of that arbitration agreement, and Walmart did not waived its right to arbitration.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Walmart's motion to compel arbitration and STAYS the case pending arbitration in accordance with the terms of the parties' arbitration agreement and the Court's ruling. See Arabian Motors Grp. W.L.L. v. Ford Motor Co., 19 F.4th 938, 941-42 (6th Cir. 2021) (reasoning that in the ordinary course, Section 3 of the Federal Arbitration Act supports district courts staying, rather than dismissing, cases when granting motions to compel arbitration).

The Court must be notified within thirty (30) days of the completion of the arbitration process if there are additional matters to resolve or if the matter is to be dismissed. A failure to comply with this deadline may result in dismissal of this action with prejudice for failure to prosecute.

**IT IS SO ORDERED**.

**Date:** March 30, 2024

/s/ Bridget Meehan Brennan

BRIDGET MEEHAN BRENNAN

UNITED STATES DISTRICT JUDGE

**End of Document**