**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA RECTOR**<br>503 49th St. NE<br>Washington DC, 20019, | Civil Action No. 1:24-cv-00658 (RC) |
| | |
| **LIZETTE MCKINNEY**<br>2412 Franklin Street NE<br>Washington DC, 20018, | Judge Rudolph Contreras<br><br>Magistrate Judge Mae A. D'Agostino |
| | |
| on behalf of themselves and all others<br>similarly situated, | **FIRST AMENDED CLASS ACTION<br>COMPLAINT** |
| Plaintiffs, | |
| v. | |
| **WALMART INC.,**<br>702 Southwest Eighth St.<br>Bentonville, AR, 72716 | |
| Defendant. | |

**INTRODUCTION**

Plaintiffs Christina Rector and Lizette McKinney, by and through undersigned counsel, bring this class action complaint against Defendant Walmart, Inc. ("Walmart"), individually and on behalf of all others similarly situated, for Walmart's practice of, for many items sold at their D.C. stores, advertising a lower shelf-price than what they charge customers at the register. Plaintiffs allege the following upon personal knowledge as to their own acts and experience, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiffs' counsel.

## PARTIES

1.    Plaintiff Christina Rector is an adult resident of Washington, D.C. At various times in the three years prior to the filing-date of this complaint, Ms. Rector shopped at the Walmart stores located at 99 H Street, N.W., 5929 Georgia Avenue, N.W., and 310 Riggs Road, N.E. While shopping at these stores, Ms. Rector purchased items for which the price that Walmart charged at the register was higher than the price displayed on the shelf tag.

2.    Plaintiff Lizette McKinney is an adult resident of Washington, D.C. At various times in the three years prior to the filing-date of this complaint, Ms. McKinney shopped at the Walmart store located at 310 Riggs Road, N.E. While shopping at these stores, Ms. McKinney purchased items for which the price that Walmart charged at the register was higher than the price displayed on the shelf tag.

3.    Defendant Walmart is a Delaware corporation with its principal offices and headquarters located in Bentonville, Arkansas.

4.    Walmart, a mass merchandiser of consumer products, operates over 4,700 stores in the United States, including two stores in the District of Columbia.

## JURISDICTION AND VENUE

5.    The Court has personal jurisdiction over Walmart because Walmart conducts business in the District of Columbia, is registered to do business in the District of Columbia, and the conduct at issue occurred at Walmart stores in the District of Columbia.

6.    Venue is proper in this forum because this Court has personal jurisdiction over Walmart.

## NATURE OF THE ACTION AND BACKGROUND FACTS

7.      Prices charged at Walmart stores in the District of Columbia are not set by the local store management, but instead are set by Walmart's corporate management.

8.      When Walmart's corporate management sets a new price for an item at a D.C. store, it sends that price to the store, and the employees at the store update the price by completing a price change procedure within Walmart's computer system and printing a shelf tag.

9.      When the shelf tag is printed, the price is automatically updated in the store's point-of-sale system ("register").

10.     While printing the shelf tag automatically updates the price that customers are charged at the register, to change the price displayed on the shelf, employees must manually affix the new shelf tag to the shelf.

11.     To avoid a discrepancy between the price displayed on the shelf and the price charged at the register, employees must immediately affix the new shelf tag to the shelf upon printing it.

12.     But employees frequently print a new shelf tag and never affix it to the shelf. When employees fail to affix the new shelf tag to the shelf, the printing of the shelf tag causes the register price to be automatically updated with the new, higher price, while the old, lower price continues to be displayed on the shelf.

13.     The failure to timely implement price changes sent by Walmart corporate management may result in disciplinary action. Therefore, Walmart employees are incentivized to print shelf tags as quickly as possible, thereby updating the register price, even if they do not have time to affix those tags to the shelves.

14.     As a result of Walmart's failure to update the shelf tag price, when customers at Walmart's D.C. locations select an item to purchase, the price that Walmart charges them at the register is frequently higher than the price on the shelf tag viewed by customers when selecting an item.

### FACTS REGARDING PLAINTIFF CHRISTINE RECTOR'S PURCHASES

15.     In approximately June of 2022, Plaintiff Christine Rector entered the Walmart store located at 99 H St. NW, Washington to purchase laundry detergent for personal, household, or family purposes.

16.     While in the store, Plaintiff Rector saw a shelf tag stating that Tide detergent was being offered at a price of $9.99.

17.     Plaintiff Rector agreed to purchase Tide Detergent at that price by placing the item in her cart.

18.     At the register, Plaintiff Rector was charged $11.99.

19.     Plaintiff Rector was charged more than the price on the shelf tag.

20.     By means of its shelf tag, Walmart offered detergent at a price of $9.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

21.     Walmart did not disclose that its shelf tag price for detergent was different from its register price.

22.     When Plaintiff Rector noticed the discrepancy and informed the cashier, the cashier told her she would still have to pay the higher register price. Because she was already at the register and needed laundry detergent, Plaintiff Rector paid the higher price.  She did not have time to re-do her shopping at another store.

23.     Plaintiff Rector shopped for the same bottle of Tide laundry detergent, sometime between December 2022 and January 2023, at Walmart's Georgia Avenue location.

24.     The shelf tag stated that the detergent was being offered at a price of $9.99.

25.     Plaintiff Rector agreed to purchase the detergent at that price by placing the item in her cart.

26.     At the register, Plaintiff Rector was charged $11.99.

27.     Plaintiff Rector was charged more than the advertised price on the shelf tag.

28.     By means of its shelf tag, Walmart advertised detergent as being offered at a price of $9.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

29.     Walmart did not disclose that its shelf tag price for detergent was different from its register price.

30.     When Plaintiff Rector noticed the discrepancy and informed the cashier, she was again told that she would have to pay the register price. This time, rather than pay the higher price again, Plaintiff Rector left the detergent there.

31.     Due to Walmart's practice of charging more for products at the register than the price on its shelf tags, Rector was forced to spend time and resources traveling to another store to purchase detergent.

32.     In approximately September of 2022, Plaintiff Christine Rector entered the Walmart store located at 310 Riggs Rd. N.E., Washington to purchase toilet paper for personal, household, or family purposes.

33.     While in the store, Plaintiff Rector saw a shelf tag stating that Charmin toilet paper was being offered at a price of $7.99.

34.     Plaintiff Rector agreed to purchase the toilet paper at that price by placing the item in her cart.

35.     At the register, Plaintiff Rector was charged $9.99.

36.     Plaintiff Rector was charged more than the advertised price on the shelf tag.

37.     By means of its shelf tag, Walmart advertised Charmin toilet paper as being offered at a price of $7.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

38.     Walmart did not disclose to Plaintiff Rector that its shelf tag price for Charmin toilet paper was different from its register price.

39.     When Plaintiff Rector noticed the discrepancy and requested a refund, she was again told that she would have to pay the higher price. Because she was already at the register and needed toilet paper, Plaintiff Rector paid the higher price. She did not have time to re-do her shopping at another store.

40.     Due to Walmart's practice of charging more for products at the register than the price on its shelf tags, Plaintiff Rector was forced to spend more money on the above items than she expected to

41.     Plaintiff Rector did not use Walmart's mobile app or any of Walmart's online services during any of these above-described shopping experiences.

42.     As to each of the above-described items purchased by Plaintiff Rector, Walmart misrepresented the price.

43.     As to each of the above-described items purchased by Plaintiff Rector, Walmart concealed the price it planned on charging at the register and instead represented that the items were being offered for sale at the shelf tag price.

44.     As to each of the above-described items purchased by Plaintiff Rector, Walmart advertised said items at a price at which it had no intent to sell them.

45.     Price is important to Plaintiff Rector and other consumers in making shopping decisions.

46.     As to each of the above-described items, Plaintiff Rector reasonably expected to pay the shelf price.

47.     As a consumer, Plaintiff Rector has come to understand that the shelf price is the actual, correct price of the item.

48.     Plaintiff Rector makes her shopping decisions based on the shelf price, not undisclosed prices.

49.     When Plaintiff Rector brought the above-described items to the register, she was agreeing to pay the shelf tag price, not an undisclosed price.

50.     Walmart's practice of listing a shelf price for items and then charging a higher price at the register has a tendency to mislead Plaintiff Rector and other consumers.

51.     As a result of Walmart charging Plaintiff Rector a higher price than the shelf price for the above-described purchases, Plaintiff Rector was overcharged for these purchases.

**FACTS REGARDING LIZETTE MCKKINNEY'S PURCHASES**

52.     On or around November 6, 2023, Plaintiff Lizette McKinney entered the Walmart store located at 310 Riggs Rd. NE, Washington to purchase chitterlings for personal, household, or family purposes.

53.     While in the store, Plaintiff McKinney saw a shelf tag stating that Queenella chitterlings were being offered at a price of $9.99.

54.     Based on that price, Plaintiff McKinney selected three bags of chitterlings to purchase for her Thanksgiving holiday needs.

55.     Plaintiff McKinney agreed to purchase the chitterlings at that price by placing the item in her cart.

56.     At the register, Plaintiff McKinney was charged $18.99.

57.     Plaintiff McKinney was charged more than the price on the shelf tag.

58.     By means of its shelf tag, Walmart offered chitterlings at a price of $9.99 when Walmart had no intention of selling the product at that price and did not sell the product at that price.

59.     Walmart did not disclose that its shelf tag price for chitterlings was different from its register price.

60.     When Plaintiff McKinney noticed the discrepancy and informed the cashier, the cashier told her she would still have to pay the higher register price. Because she was already at the register and needed chitterlings for her Thanksgivings preparations, Plaintiff McKinney paid the higher price. Also, because of the higher price and lack of funds on her food benefits card, Plaintiff McKinney had to leave two of the bags at the store.

61.     Due to Walmart's practice of charging more for products at the register than the price on its shelf tags, Plaintiff McKinney was forced to spend more money on the chitterlings than she expected to, and had to leave two bags of chitterlings at the store.

62.     Plaintiff McKinney did not use Walmart's mobile app or any of Walmart's online services during any of these above-described shopping experiences, and to her recollection, has never even downloaded any Walmart app or purchased anything from Walmart's website.

63.     As to each of the above-described items purchased by Plaintiff McKinney, Walmart misrepresented the price.

64.     As to each of the above-described items purchased by Plaintiff McKinney, Walmart concealed the price it planned on charging at the register and instead represented that the items were being offered for sale at the shelf tag price.

65.     As to each of the above-described items purchased by Plaintiff McKinney, Walmart advertised said items at a price at which it had no intent to sell them.

66.     Price is important to Plaintiff McKinney and other consumers in making shopping decisions.

67.     As to each of the above-described items, Plaintiff McKinney reasonably expected to pay the shelf price.

68.     As a consumer, Plaintiff McKinney has to come to understand that the shelf price is the actual, correct price of the item.

69.     Plaintiff McKinney makes her shopping decisions based on the shelf price, not undisclosed prices.

70.     When Plaintiff McKinney brought the above-described items to the register, she was agreeing to pay the shelf tag price, not an undisclosed price.

71.     Walmart's practice of listing a shelf price for items and then charging a higher price at the register has a tendency to mislead Plaintiff Rector and other consumers.

72.     As a result of Walmart charging Plaintiff McKinney a higher price than the shelf price for the above-described purchases, Plaintiff McKinney was overcharged for these purchases.

**INVESTIGATION INTO WALMART'S SHELF PRICES**

73.     For over a year, Plaintiffs' counsel has conducted an investigation of Walmart's two D.C. locations: 310 Riggs Road, N.E. (Walmart Supercenter #3035) and 5929 Georgia Avenue, N.W. (Walmart Supercenter #5968).[1]

74.     The investigation was conducted by Scott Kucik, an experienced private investigator in the D.C. area.

75.     The named Plaintiffs did not participate in Kucik's investigation in any way.

76.     To date, the investigation has uncovered over 500 items where the register price was higher than the shelf tag price throughout Walmart's D.C. locations. Walmart continued charging the higher price at the register for many of these items for months.

77.     The following are examples of items for which Walmart charged more at the register than the price represented on the shelf tag.

78.     On August 24, 2022, at Walmart's Riggs Road location, the shelf tag price for an Anker 25c Wi-fi Connected vacuum was $129.00, but Walmart charged $149.00 at the register. This price discrepancy continued through at least September 6, 2022.On August 24, 2022, at Walmart's Riggs Road location, the shelf tag price for a Farberware Cordless 2 speed immersion blender was $39.88, but Walmart charged $47.97 at the register. This price discrepancy continued through at least September 6, 2022.

---

[1] A third Walmart store, located at 99 H St. NW, Washington (the "H Street" location), closed on approximately March 31, 2023. An initial investigation of the H Street location undertaken by Plaintiffs' counsel prior to its closing uncovered mispricing at that location as well. However, an extensive investigation of that store could not be completed.

79.     On June 17, 2022, at Walmart's Riggs Road location, the shelf tag price for a bottle of Arbor Mist Mango Strawberry Wine was $7.48, but Walmart charged $9.48 at the register. This price discrepancy continued through at least March 26, 2023.

80.     On November 6, 2022, at Walmart's Georgia Avenue location, the shelf tag price for an Oster DiamondForce 12-inch x 16-inch nonstick electric skillet was $41.00, but Walmart charged $49.96 at the register. The price discrepancy continued through at least January 30, 2023.

81.     On June 6, 2022, at Walmart's Riggs Road location, the shelf tag price for a KitchenAid 2-speed hand blender was $39.92, but Walmart charged $44.98 at the register. The price discrepancy continued (and in fact the register price increased to $52.00 with no correction to the shelf tag), through at least September 6, 2022.

82.     On November 22, 2022, at Walmart's Georgia Avenue location, the shelf tag price for Hefty Steelsak large trash bags was $12.58, but Walmart charged $14.48 at the register. The price discrepancy continued through at least March 15, 2023.

83.     On November 4, 2023, at Walmart's Georgia Avenue location, the shelf tag for a Mainstays 20-inch griddle was $19.98, but Walmart charged $24.98 at the register.

84.     On November 5, 2023, at Walmart's Georgia Avenue location, the shelf tag for a Klean Strip gallon container of paint remover was $39.96, but Walmart charged $49.98 at the register.

85.     On November 5, 2023, at Walmart's Georgia Avenue location, the shelf tag for a Klean Strip one-quart spray bottle of paint remover was $11.84, but Walmart charged $17.97 at the register.

86.     On November 5, 2023, at Walmart's Georgia Avenue location, the shelf tag for a 32 oz. container of Drydax spackle was $7.12, but Walmart charged $8.97 at the register.

87.     On November 25, 2023, at Walmart's Riggs Road location, the shelf tag for a Rowenta clothing iron was $59.00, but Walmart charged $66.00 at the register.

88.     On November 25, 2023, at Walmart's Riggs Road location, the shelf tag for a bottle of La Marca Prosecco wine was $13.98, but Walmart charged $14.98 at the register.

89.     On November 25, 2023, at Walmart's Riggs Road location, the shelf tag for a baseball bat grip was $6.48, but Walmart charged $8.98 at the register.

**WALMART'S SHELF PRICES ARE MISLEADING TO CONSUMERS**

90.     At all relevant times, Walmart did not disclose to shoppers that its shelf tag prices may be different from the prices charged at the register.

91.     Consumers expect that the shelf tag prices displayed in stores are the correct prices for the items.

92.     When consumers bring an item to the register for purchase, they expect to pay the shelf-price for the item.

93.     Walmart's view that it can change the price at the register is inconsistent with contract law, consumer protection law, and decades of consumer in-store shopping experience.

94.     A shelf price is not an invitation for the consumer and Walmart to haggle over the price at the register. The opposite is true. The shelf price is an invitation for the consumer to accept the price and present the item for purchase at the register.

95.     This consumer expectation is reflected in vigorous enforcement actions and hefty penalties when state governments become aware of misleading pricing practices such as those alleged in this Complaint.

96.     Many jurisdictions check to make sure that stores are charging the shelf price.

97.     Attorneys General in several jurisdictions have sought and recovered fines and penalties from stores that have presented misleading price information on shelf tags.

98.     Regarding a $500,000 settlement with Walgreens in 2016 for this practice, then New York AG Eric Schneiderman stated "when consumers purchase products at retail stores in New York, they should be able to rely on the prices displayed in advertisements and on shelf tags and not have to worry about being overcharged when they get to the register." https://www.nydailynews.com/news/politics/walgreens-duane-reade-overcharged-customers-probe-article-1.2609183 (last visited Aug. 24, 2023).

99.     The District of Columbia AG Brian Schwalb recently posted that consumers "have a right to clear information about prices for retail items before they make a purchase" and that "[b]usinesses must make the prices for retail items accurate and easy to understand…consumers should be treated fairly and equally and should not be surprised or taken advantage of at the checkout counter." See https://oag.dc.gov/release/attorney-general-schwalb-issues-consumer-alert-0. (last visited May 16, 2024).

100.    In *State of Missouri v. Walgreen Co.,* No. 1316-CV-21688 (Mo. Cir. Ct. June 17, 2016) (attached as Exhibit. A), the trial court imposed fines of $1,000 per violation on Walgreens for violating a consent judgment requiring Walgreens to timely update its shelf tag prices. The court stated that "[i]nformation contained on a tag on the store shelf should be information upon which a consumer can reasonably rely." *Id.* at pg. 9.

101.    In *People v. Wal-Mart, Inc.,* No. 37-2008-00096757-CU-BT-CTL (Cal. Sup. Ct. San Diego March 21, 2012) (Modified Final Judgment attached as Exhibit B), Walmart was ordered to pay more than $3 million for violating a consent judgment requiring Walmart to ensure its shelf tag prices were accurate and in accordance with the prices charged to the consumer.

102.    In *People v. Target Corp.,* No. CIV 1500474 (Cal. Sup. Ct. Marin Cty. Feb. 9, 2015) (Final Judgment attached as Exhibit C), Target was ordered to pay $3,352,500 in civil penalties for charging a price at the point-of-sale system that was different from the advertised price. *Id.* at pp. 13-14. Target was also ordered to conduct weekly expired price audits by having personnel walk the entire store to search for and remove expired shelf tags. *Id.* at pg. 8.

**FACTS REGARDING WALMART'S DATA COLLECTION**

103.    Upon information and belief, Walmart collects 2.5 petabytes of data from 1 million customers every hour.

104.    Upon information and belief, one petabyte is equivalent to 20 million filing cabinets of text.

105.    Upon information and belief, the data generated by Walmart every hour is equivalent to 167 times the books in the Library of Congress.

106.    Upon information and belief, Walmart tracks and targets every consumer individually.

107.    Upon information and belief, Walmart has customer data of close to 145 million Americans.

108.    Upon information and belief, Walmart maintains for each customer detailed purchase data for each product purchased, including the universal product code (UPC), the price paid, the date of purchase, and the store at which the product was purchased.

109.    For returns without receipts, Walmart can look up store purchases if the customer presents the debit or credit card used to make the purchase.

110.    For example, in *Farneth v. Walmart Stores, Inc.,* Civil Action-Class Action, No. G.D. 13-11472, Allegheny County, Pennsylvania, Walmart was ordered to produce detailed

information on thousands of transactions where the customer did not pay cash, including the customer's name and address, the date of the transaction, the address of the store, and the amount of the coupon tendered with the transaction.

**CLASS ACTION ALLEGATIONS**

111.    Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated, as members of the following class:

> All persons who, during the time period January 23, 2021 and thereafter, were charged at a Walmart store in Washington, D.C. more for an item than the displayed shelf tag price at the Walmart store located in Washington, D.C.

112.    Excluded from the Class are (i) Walmart's employees; (ii) all persons who make a timely election to be excluded from the Class; and (iii) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

113.    The class contains more than 40 class members.

114.    Through an investigation by counsel, Plaintiffs have identified more than 500 items for which Walmart charged consumers more than the shelf tag price.

115.    Plaintiffs are adequate class representatives. Plaintiffs have hired experienced class counsel to prosecute this claim. Plaintiffs' interest in this litigation is identical to that of the putative class members: the recovery of statutory damages under D.C.'s Consumer Protection Procedures Act ("CPPA").

116.    Plaintiffs' claims and those of the putative class members involve common questions of law, including: (i) Is Walmart a merchant under the CPPA? (ii) Is price a material term in a transaction involving the sale of goods to consumers? (iii) Would a reasonable person, while shopping, attach importance to the shelf tag price? (iv) Did Walmart know or have reason to know

that price was important to Plaintiffs and the putative class members in making purchasing decisions? (v) Did Walmart disclose to Plaintiffs and the putative class members that the price charged at the register would be higher than the shelf tag price? (vi) Are Plaintiffs and the class members entitled to recover statutory damages under the CPPA for Walmart's practice of offering items for sale at the shelf tag price, but charging customers more than the shelf tag price when they presented the items for purchase?

117. Plaintiffs' claims are typical of the putative class members' claims because Plaintiffs and the putative class members were injured through Walmart's uniform misconduct in charging more than the shelf tag price for items. Plaintiffs are pursuing the same claims and legal theories on behalf of themselves and the putative class members, and there are no defenses that would render Plaintiffs atypical.

118. A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages for each putative class member are small compared to the expense that would be required to litigate the claims on an individual basis, and the legal issues are identical for every putative class member.

119. Upon information and belief, no putative class member has filed a separate action against Walmart with respect to its practice of charging a higher price at the register for an item than the price reflected on the shelf tag, indicating that the putative class members have no interest in prosecuting their claims on an individual basis.

120. Given Walmart's uniform conduct, the simple nature of the transaction at issue (the selection and purchase of an item from Walmart), and uniform statutory damages for every putative class member, there should be no difficulties in managing this case as a class action.

121.   The concentration of this litigation in this forum is desirable because the activity occurred in the District of Columbia, the claim is governed by District of Columbia law, and the majority of the class members are District of Columbia residents.

## CAUSE OF ACTION

### COUNT I
### Violations of the District of Columbia's Consumer Protection Procedures Act
### DC Code §§ 28-3901, *et seq*.

122.   Plaintiffs re-allege and incorporate herein all the foregoing allegations.

123.   Plaintiffs are, and were at all relevant times, consumers as defined by D.C. Code § 28-3901(a)(2).

124.   Plaintiffs purchased items such as laundry detergent, toilet paper, and chitterlings from Walmart for personal, household, or family purposes.

125.   Walmart is, and was at all relevant times, a merchant, as defined by D.C. Code § 28-3901(a)(3).

126.   Walmart in the ordinary course of business directly sells consumer goods to consumers like Plaintiffs.

127.   Price is a material term in the purchase of goods.

128.   A reasonable person would attach importance to the price of consumer goods while shopping.

129.   Walmart shoppers, including Plaintiffs, find price information important and material in making purchasing decisions.

130.   Walmart knows or has reason to know that its customers, including Plaintiffs, regard or are likely to regard price as important in making purchasing decisions.

131.    Walmart's marketing strategies frequently involve references to lower prices. For example, Walmart offers price "rollbacks" on certain items.[2]

132.    At all relevant times, by mispricing items in their Washington, D.C. stores as described and set forth above, Walmart engaged in unfair and deceptive trade practices proscribed by D.C. Code § 28-3904.

133.    Walmart violated § 28-3904(e) by misrepresenting a material fact which had a tendency to mislead.

134.    The material fact that Walmart misrepresented was the price that Walmart would charge Plaintiffs and the putative class members at the register for the items that they purchased.

135.    Walmart also violated § 28-3904(f) by failing to state a material fact when the failure tends to mislead.

136.    The material fact that Walmart failed to state was that the shelf tag prices of the items in its stores were lower than the prices charged at the register.

137.    Consumers, including Plaintiffs, expect a shelf tag price to reflect the current price of an item.

138.    Consumers, including Plaintiffs, would find the true cost of items at Walmart stores to be important in making purchasing decisions.

139.    Walmart violated § 28-3904(h) by advertising and/or offering goods without the intent to sell them as offered.

---

[2] A price rollback is a temporary price reduction on an item in a Walmart store. https://www.8thandwalton.com/blog/walmart-rollback/#:~:text=What%20Is%20a%20Walmart%20Rollback,%E2%80%9CWas%2FNow%E2%80%9D%20signing. (last visited Oct. 9, 2023).

140.     Walmart advertised and/or offered goods to Plaintiffs and the putative class members with the intent to sell them at higher prices.

141.     Walmart's unfair and deceptive trade practices caused Plaintiffs and the putative class members to suffer damages. For example, Walmart's conduct of overcharging them at the register resulted in Plaintiffs and the putative class members paying more for items than they had agreed to, having to spend additional time and resources shopping elsewhere for items, or being forced to purchase a lesser quantity of the items than they could have based on the price offered by Walmart on the shelf.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the putative class members respectfully request that the Court enter judgment in Plaintiffs' favor and against Walmart as follows:

A.     Entering an Order that this case proceed as a class action, and appointing Plaintiffs and Plaintiffs' counsel as representatives for the class;

B.     Entering an Order enjoining Walmart from continuing its unlawful conduct (§ 28-3905(k)(1)(D));

C.     Awarding statutory and punitive damages in an amount to be determined at trial ((§ 28-3905(k)(1)(A) and (C));

D.     Ordering Walmart to pay the attorney fees of Plaintiffs and the putative class members ((§ 28-3905(k)(1)(B);

E.     Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Respectfully submitted,

*/s/ Nicole T. Fiorelli*_____
Nicole T. Fiorelli, Esq. (admitted pro hac vice)
Shmuel S. Kleinman, Esq. (admitted pro hac vice)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
nfiorelli@dworkenlaw.com
skleinman@dworkenlaw.com

Veronica Nannis, Esq. (# 485151)
Drew LaFramboise, Esq. (# 1018140)
**JOSEPH, GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com

*Attorneys for Plaintiffs Christine Rector, Lizette McKinney, and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2024, a copy of the foregoing First Amended Class Action Complaint was filed electronically with the Clerk of the court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Nicole T. Fiorelli*
Nicole T. Fiorelli, Esq. (admitted pro hac vice)
**DWORKEN & BERNSTEIN CO., LPA**