IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Christina Rector,<br><br>           Plaintiff,<br><br>    v.<br><br>Walmart Inc.,<br><br>           Defendant. | Civil Action No.: 1:24-cv-00658 (RC) |

**WALMART INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 3

    A. Walmart's operations. ......................................................................................... 3

    B. Plaintiffs' allegations. ......................................................................................... 3

        1. Plaintiff Rector's Purchases ................................................................... 3

        2. Plaintiff McKinney's Purchases ............................................................. 4

        3. Other Alleged Transactions ................................................................... 4

III. LEGAL STANDARD...................................................................................................... 4

IV. ARGUMENT .................................................................................................................. 5

    A. Plaintiffs lack Article III standing........................................................................ 5

    B. The FAC should be dismissed under Rule 12(b)(6) because the law does not require pricing perfection............................................................................. 8

        1. Laws around the country acknowledge that pricing errors are to be expected. ............................................................................................... 8

        2. The U.S. Department of Commerce similarly recognizes the inevitability of pricing errors. ................................................................ 9

        3. In a virtually identical case against Walmart, another federal district court dismissed the plaintiff's allegations, with prejudice....................... 10

    C. The FAC should be dismissed because it does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled. ................................................................ 11

V. CONCLUSION............................................................................................................... 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................................................5

*Clean Label Project Found. v. Garden of Life, LLC*,
 2021 WL 4318099 (D.D.C. 2022) ............................................................................................4

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
 878 F.3d 371 (D.C. Cir. 2017) ..................................................................................................6

*Food & Water Watch, Inc. v. Vilsack*,
 808 F.3d 905 (D.C. Cir. 2015) ..................................................................................................5

*Ford v. ChartOne, Inc.*,
 908 A.2d 72 (D.C. 2006) ..........................................................................................................7

*Frankeny v. Dist. Hosp. Partners, LP*,
 225 A.3d 999 (D.C. 2020) ......................................................................................................11

*Haase v. Sessions*,
 835 F.2d 902 (D.C. Cir. 1987) ..................................................................................................5

*Hoyte v. Yum! Brands, Inc.*,
 489 F. Supp. 2d 24 (D.D.C. 2007) ........................................................................................6, 7

*Jackson v. ASA Holdings*,
 751 F. Supp. 2d 91 (D.D.C. 2010) ............................................................................................6

*Kahn v. Walmart Inc.*,
 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023)..........................................................................10

*Killeen v. McDonald's Corp.*,
 317 F. Supp. 3d 1012 (N.D. Ill. 2018) ....................................................................................10

*Krukas v. AARP, Inc.*,
 376 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................................11

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)...............................................................................................................5, 6

*Mattiaccio v. DHA Grp., Inc.*,
    474 F. Supp. 3d 231 (D.D.C. 2020) ............................................................................... 6

*Mazanderan v. Indep. Taxi Owners' Ass'n*,
    700 F. Supp. 588 (D.D.C. 1988) .................................................................................... 8

*Osbourne v. Cap. City Mortg. Corp.*,
    667 A.2d 1321 (D.C. 1995) ........................................................................................... 6

*Pearson v. Chung*,
    961 A.2d 1067 (D.C. 2008) ......................................................................................... 11

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*,
    7 F. Supp. 3d 1 (D.D.C. 2013) ....................................................................................... 5

*Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) .............................................................................9, 10

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2013) ............................................................................................. 11

*Shaw v. Marriott Int'l, Inc.*,
    605 F.3d 1039 (D.C. Cir. 2010) ..................................................................................... 7

*Silvious v. Snapple Beverage Corp.*,
    793 F. Supp. 2d 414 (D.D.C. 2011) ............................................................................... 7

*Spokeo Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016) ..................................................... 4, 6

*Stone v. Landis Constr. Co.*,
    120 A.3d 1287 (D.C. 2015) ......................................................................................... 11

**Statutes**

D.C. Code § 28-3901(a)(2)(B)(i) ............................................................................................. 7

D.C. Code § 28-3904 ............................................................................................................... 6

Fla. Stat. § 531.44 ................................................................................................................... 9

Mich. Comp. Law § 445.319 .................................................................................................. 8

Mich. Comp. Law § 445.322 .................................................................................................. 8

Mich. Comp. Law § 445.324 .................................................................................................. 8

Miss. Code § 75-27-51 ............................................................................................................ 9

Okla. Stat. § 2-14-38 ............................................................................................................9

R.C.S.A. § 21a-79-7 .............................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..................................................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................................................5, 8

Handbook 130, Examination Procedure for Price Verification ........................................9

https://www.fdacs.gov/Consumer-Resources/Consumer-Rights-and-
    Responsibilities/Weights ...............................................................................................9

I.      INTRODUCTION

Plaintiffs, Christina Rector and Lizette McKinney, filed this putative class action against Defendant, Walmart Inc. ("Walmart"), alleging that Walmart charged them more for three items at the checkout counter than the prices reflected on the store shelf ("Shelf Pricing"). Importantly, Plaintiffs admit that Walmart informed them of the higher prices *before* they finalized their purchases. Plaintiffs also admit they voluntarily elected to complete the transactions having full knowledge of the amount they would be charged for the items. These undisputed facts alone require dismissal of Plaintiffs' claim, and because the First Amended Complaint ("FAC") is Plaintiffs' second bite at the apple that fares no better than the first, dismissal is warranted with prejudice.

To prevail on their claim, Plaintiffs must show that Walmart made a material misrepresentation or otherwise failed to make a material disclosure. Plaintiffs also must establish that the alleged misrepresentation or omission would mislead "a reasonable consumer." But the undisputed facts clearly show that Walmart did not deceive Plaintiffs. To the contrary, Plaintiffs admit that Walmart told them the correct price for the items *before* they purchased them.

Relatedly, Walmart has not engaged in a deceptive or fraudulent act. Instead, the facts presented here reflect the real-world reality that it is virtually impossible for a retailer to match Shelf Pricing and scanned pricing 100% of the time for the hundreds of thousands of items on store shelves. Importantly, neither the law nor industry standards require pricing perfection; any contrary position would in effect hold retailers strictly liable any time a Shelf Price fails to match a purchase price, no matter the reason. Here, Plaintiffs fail to allege any facts that would create an inference that the alleged overcharges were anything other than what they were—mere mistakes.

1

Moreover, given the fact that Plaintiffs knowingly and voluntarily paid the amounts charged, they were not damaged and therefore cannot establish Article III standing to pursue the asserted claim.

Finally, references in the FAC to purchases purportedly made by an investigator hired by Plaintiffs' counsel do not cure the deficiencies in Plaintiffs' case. To the contrary, these allegations present additional reasons why this case cannot proceed, let alone on a class-wide basis. For example, the investigator's experience highlights that shoppers have access to up-to-date price information through multiple sources before they finalize purchase decisions. To the extent the investigator, or any member of the putative class used the Walmart App or the company website in connection with their purchase decisions, disputes regarding such purchases cannot be resolved in this forum.[1] Instead, consistent with the parties' agreement, any such dispute must be resolved through binding arbitration on an individual, non-class-wide basis. As discussed below, references in the FAC to purchases made by the investigator miss the mark for the additional reason that the investigator is not a consumer under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"). Accordingly, his experience at Walmart is not germane under the DCCPPA because the purchases were not made for a consumer's personal use.

---

[1] In the original Complaint, Plaintiff Rector referenced use of the Walmart App in connection with many of the challenged purchases. Based on these allegations Walmart moved to compel arbitration. Apparently recognizing the import of these factual allegations, the FAC no longer contains reference to use of the Walmart App. Although Plaintiffs may have staved off the viability of a motion to compel arbitration of their individual claims at this juncture, the allegations in the original Complaint highlight one of many reasons why this case cannot proceed as a class action, even if it were to proceed beyond the initial pleading stage.

## II.     FACTUAL BACKGROUND

### A.     Walmart's operations.

Walmart is a multinational retail corporation that sells products through its brick-and-mortar retail stores, its website Walmart.com, and the Walmart App. At any given time, Walmart has hundreds of thousands of items on its shelves.

### B.     Plaintiffs' allegations.

Plaintiffs' FAC centers on alleged purchases by two named plaintiffs: Christina Rector and Lizette McKinney.

#### 1.     Plaintiff Rector's Purchases

Although Plaintiff Rector fails to identify specific dates, the FAC references three occasions on which she visited a Walmart store. First, at some point in June 2022, Plaintiff allegedly visited a Walmart located at 99 H St. NW, Washington. (FAC ¶ 15.) Although she fails to provide a picture or any other evidence, Plaintiff allegedly noticed a Shelf Price for Tide laundry detergent referencing $9.99. (*Id.* ¶ 16.) She took the item to the register and was informed that the price for the item in fact was $11.99. (*Id.* ¶ 18.) Aware of the price that would be charged, Plaintiff nevertheless voluntarily elected to purchase the item. (*Id.* ¶ 22.)

Plaintiff Rector allegedly shopped for the same bottle of Tide laundry detergent, sometime between December 2022 and January 2023, at Walmart's Georgia Avenue location. (*Id.* ¶ 23.) Like her first transaction, before completing the sale Walmart informed Plaintiff that the price of the item was $11.99, not $9.99 as referenced on the shelf. Aware of the price that would be charged, Plaintiff elected not to buy the product. (*Id.* ¶ 30.)

Plaintiff also allegedly purchased a package of Charmin toilet paper in September 2022 at the Riggs Road Walmart. (*Id.* ¶ 32.) Although she once again fails to provide any evidence, Plaintiff allegedly noticed a Shelf Price for the toilet paper referencing $7.99. (*Id.* ¶ 33.) She took

3

the item to the register and was informed that the price for the item in fact was $9.99. (*Id.* ¶ 35.) Aware of the price that would be charged, Plaintiff nevertheless once again voluntarily elected to purchase the item. (*Id.* ¶ 39.)

### 2. Plaintiff McKinney's Purchases

Unlike Plaintiff Rector—who fails to identify the dates of her transactions—Plaintiff McKinney provides some additional details, alleging that "[o]n or around November 6, 2023" she purchased chitterlings at the Riggs Road Walmart. (*Id.* ¶ 52.) McKinney allegedly noticed a Shelf Price of $9.99 for the chitterlings. When McKinney went to the checkout Walmart personnel informed her that the price of the item was $18.99. (*Id.* ¶¶ 53, 56, 60.) Like Rector, McKinney voluntarily made an informed purchase decision and bought the chitterlings. (*Id.* at ¶ 60.)

### 3. Other Alleged Transactions

The FAC includes references to Shelf Price for items that allegedly were different from the prices referenced on the Walmart App or otherwise charged at the register. (See generally *id.* ¶¶ 73–89.) Importantly, none of these allegations appear to involve Plaintiffs' transactions. These transactions instead appear to have been made by a private investigator hired by Plaintiffs' counsel. Plaintiffs do not allege that any of the referenced items were purchased by a consumer for personal use.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1) for lack of standing, a plaintiff must present sufficient facts that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); Fed. R. Civ. P. 12(b)(1). "[T]he plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction." *Clean Label Project Found. v. Garden of*

4

*Life, LLC*, 2021 WL 4318099, at *6 (D.D.C. 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Furthermore, "because subject matter jurisdiction focuses on the court's power to even hear the claim, a court is to apply closer scrutiny when resolving a Rule 12(b)(1) motion compared to a Rule 12(b)(6) motion for failure to state a claim." *Id.* (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). The Court may look "beyond the pleadings" to determine whether Plaintiffs have standing to be before this Court. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

Alternatively, a motion to dismiss under Rule 12(b)(6) should be granted unless the complaint contains sufficient factual matter to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face if there is sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the harm alleged. *Id.* If a complaint pleads facts that merely create the possibility that the defendant is liable, but do not make it plausible that the defendant is liable, then dismissal of the claim is warranted. *Id.* In other words, the factual allegations in the complaint must be enough to support a right to relief that is more than just speculative. *Twombly*, 550 U.S. at 555. A complaint that merely recites the elements of a cause of action and gives conclusory statements cannot alone meet this standard. *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Plaintiffs lack Article III standing.

"Standing is a threshold jurisdictional question" that "the Court must address . . . before moving on to the merits of the case." *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 7 F. Supp. 3d 1, 7 (D.D.C. 2013). To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

5

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61; *see also Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017). Intangible injuries can sometimes be "concrete," but that does not mean "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Mattiaccio v. DHA Grp., Inc.*, 474 F. Supp. 3d 231, 238 (D.D.C. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

"Although the DCCPPA provides that misrepresentation is an unlawful trade practice 'whether or not any consumer is in fact misled, deceived or damaged thereby,' D.C. Code § 28-3904, District of Columbia courts have explained that in order to have standing to sue in court for a violation of the DCCPPA (as opposed to seeking administrative remedies), a plaintiff must establish that she has suffered damage as a result of the unlawful trade practice." *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 99 (D.D.C. 2010) (quoting *Osbourne v. Cap. City Mortg. Corp.*, 667 A.2d 1321, 1329–30 (D.C. 1995)); *see also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28–29 (D.D.C. 2007) (dismissing DCCPPA claim for lack of standing because plaintiffs failed to allege a plausible injury).

Plaintiffs do not allege they suffered any concrete harm from Walmart's alleged practices. As discussed above, Plaintiffs allege Walmart overcharged them in connection with three completed transactions. (FAC ¶¶ 15–22, 32–39, 52–60.) Regardless of Plaintiffs' claims of alleged inaccurate pricing, Plaintiffs admit they were aware of the price that would be charged for the item ***before*** completing each purchase. (*Id.* ¶¶ 22 (Rector "noticed the discrepancy and informed the cashier, the cashier told her she would still have to pay the higher register price"), 39 (Rector

"noticed the discrepancy and requested a refund," and the cashier "told [her] that she would have to pay the higher price."), 60 (McKinney "noticed the discrepancy and informed the cashier" who informed "her she would still have to pay the higher register price.").) In one instance Rector learned the correct price *before* completing her transaction and made an informed decision *not to purchase* the product. (*Id.* ¶ 30.) Given these undisputed facts, Plaintiffs cannot establish a "concrete and demonstrable injury" under Article III. *See Hoyte*, 489 F. Supp. 2d at 28 (dismissing DCCPPA representative action because the named plaintiff had not suffered an injury-in-fact and holding that, although the DCCPPA's broadly worded introductory language "might suggest that a plaintiff could pursue a claim under DCCPPA without an actual or threatened injury, the cases hold otherwise"); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (collecting cases for the proposition that "a lawsuit under the DCCPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself").

Apparently attempting to fill this void, in the FAC Plaintiffs reference alleged purchases made by an investigator hired by Plaintiffs' counsel for purposes of this litigation. (FAC ¶¶ 73–89.) Plaintiffs' hired investigator, however, is not a "consumer" under the DCCPPA. D.C. Code § 28-3901(a)(2)(B)(i) ("consumer," in this context, refers to things a person would purchase, lease, receive, or use "for personal, household, or family purposes"); *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006). Here, the central question is whether Plaintiffs' hired investigator was acting as a consumer in his interactions with Walmart. The answer is clearly no. Plaintiffs admit the investigator made these purchases at the direction of counsel, which means they were not done for "personal, household, or family purposes." D.C. Code § 28-3901(a)(2)(B)(i); *see Ford*, 908 A.2d at 81 (dismissing DCCPPA claims premised on attorney's purchase of office supplies); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (holding an employer's payment for its

7

employee's hotel stay is not actionable under the DCCPPA, especially when that purchase is for a business purpose); *Mazanderan v. Indep. Taxi Owners' Ass'n*, 700 F. Supp. 588, 591 (D.D.C. 1988) (holding a cab driver's purchase of gasoline was not covered by the DCCPPA because it was made "in connection with his role as an independent businessman," and not primarily for personal use). Accordingly, the transactions involving the investigator are irrelevant for purposes of establishing Article III standing.[2]

### B. The FAC should be dismissed under Rule 12(b)(6) because the law does not require pricing perfection.

Plaintiffs' position, if accepted, essentially would mandate that Walmart—and, presumably, all other retailers who do business in the District of Columbia—be held strictly liable any pricing inaccuracies. Contrary to Plaintiffs' position, however, pricing perfection is not required in the District of Columbia, nor is it reasonably expected in any state.

#### 1. Laws around the country acknowledge that pricing errors are to be expected.

The District of Columbia does not have statutes or regulations that directly address the accuracy of Shelf Pricing, but many other states do have such laws. Although these laws vary by jurisdiction, they all have one thing in common—each law recognizes that pricing errors are inevitable. For example:

- Michigan law requires consumers to notify sellers within 30 days after their purchase if they were overcharged. The seller has two days to remedy the overcharge. If the overcharge is corrected, the consumer is precluded from bringing a lawsuit. Michigan law also contains express limitations on available remedies. *See* Mich. Comp. Laws § 445.319, .322, .324.

- Connecticut law provides that a consumer who is charged a higher retail price than the Shelf Price is entitled to one free item up to a value of $20. *See* R.C.S.A. § 21a-79-7.

---

[2] Moreover, as explained in greater detail below, Plaintiffs' allegations concerning alleged purchases made by an investigator hired by Plaintiffs' counsel are immaterial to this Court's analysis of an alleged DCCPPA violation. The only purchases this Court should consider are those allegedly made by Plaintiffs.

8

- Mississippi and Oklahoma similarly limit available remedies for pricing errors. *See* Miss. Code § 75-27-51; Okla. Stat. § 2-14-38.

- Florida has adopted a version of the NCWM Handbook standard on price verification. *See* Fla. Stat. § 531.44; *see also infra* Section IV(B)(2) (discussing the Handbook). In addition, the State of Florida's Department of Agriculture and Consumer Services advises in its FAQs that "[i]f a store's scanner reflects a different price than the posted or advertised price, [the consumer] should first bring the discrepancy to the attention of the salesclerk or store management."[3]

These state laws, and others like them, recognize that pricing errors are inevitable. Thus, the fact that an individual consumer may have identified some errors does not provide a sufficient basis upon which to bring a consumer fraud claim, much less a class action seeking millions of dollars for Plaintiffs and their attorneys.

        2.    <u>The U.S. Department of Commerce similarly recognizes the inevitability of pricing errors.</u>

Like many states, the National Institute of Standards and Technology of the U.S. Department of Commerce has addressed the real-world challenges associated with Shelf Pricing. Specifically, in a handbook adopted by the 106th National Conference on Weights and Measures (the "Handbook"), the Department of Commerce acknowledges that 100% pricing accuracy is not reasonably expected in the retail industry.[4] To that end, the Handbook expressly recognizes that "[*r*]*andom pricing errors are to be expected*." (Ex. A at 225) (emphasis added). Notably, the Handbook contains detailed procedures by which state and federal regulators monitor retailer pricing, including sampling methods and sample sizes. (*See id.* at 211–23). The specific nature of these sampling methods effectively guards against inherent problems when an individual only identifies a limited, statistically insignificant number of pricing errors, let alone obvious problems

---

[3] *See* https://www.fdacs.gov/Consumer-Resources/Consumer-Rights-and-Responsibilities/Weights-and-Measures/What-should-I-do-if-an-item-purchased-at-a-store-scans-at-a-different-price-than-the-posted-or-advertised-price.
[4] *See* Handbook 130, § V, Examination Procedure for Price Verification, a copy of which is attached as Ex. A. The Court can take judicial notice of publicly available documents. *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

9

if an individual intentionally attempts to cherry-pick certain items as support for a putative national class action.[5]

### 3. In a virtually identical case against Walmart, another federal district court dismissed the plaintiff's allegations, with prejudice.

Consistent with the logic underlying the referenced state laws and the Handbook, the Northern District of Illinois addressed this precise issue in *Kahn v. Walmart Inc.*, 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023). The *Kahn* court rejected the notion that a mere differential between Shelf Prices and the amount charged at checkout was sufficient to state a viable claim. In *Kahn*, the plaintiff alleged that Walmart improperly charged him for several items when the prices scanned at the checkout counter differed from the advertised shelf prices for the purchased items. *Id.* at *1. In granting Walmart's motion to dismiss, the court highlighted that the plaintiff was provided with enough information that would "dispel a tendency to mislead, [and] there [was thus] no possibility for deception." *Id.* at *3 (quoting *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018)). The *Kahn* court heavily relied on the fact that Walmart provided the plaintiff with a receipt with the correct pricing, which dispelled the possibility for deception. *Id.*

Here, although Plaintiffs fail to specifically allege whether they were provided with a receipt,[6] they admit Walmart told them the price that would be charged ***before*** they completed their transactions. Armed with information regarding the price that would be charged, Plaintiffs were able to make informed purchase decisions. Given these facts, Plaintiffs have failed to state a viable claim.

---

[5] "If a store has more overcharges than undercharges . . . , it may indicate that the store is not following good pricing practices, but enough errors must be present in order to make this determination." *Id.* (Ex. A at 225). Plaintiffs' sample set of items purchased from Walmart falls woefully short.
[6] Indeed, Plaintiff Rector cannot even recall the exact date on which she was supposedly overcharged, and Plaintiff McKinney believes her alleged overcharge occurred "on or around" a particular date.

    **C.**    **The FAC should be dismissed because it does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled.**

To state a claim under the DCCPPA, Plaintiffs must establish that Walmart made a material misrepresentation or otherwise failed to make a material disclosure. *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020). "[A] claim of an unfair trade practice [under the DCCPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008); *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 39 (D.D.C. 2019). A misrepresentation or omission is "material" if "a reasonable person 'would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction' or 'the maker of the representation knows or has reason to know' that the recipient likely 'regard[s] the matter as important in determining his or her choice of action.'" *Krukas*, 376 F. Supp. 3d at 39 (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)).

District of Columbia courts have recognized that "consumer protection laws tend to share common principles across the country." *Stone v. Landis Constr. Co.*, 120 A.3d 1287, 1291 & n.9 (D.C. 2015). To that end, the courts have looked to courts' interpretations of other state consumer-protection statutes in construing the DCCPPA. *See Saucier*, 64 A.3d at 444.

Plaintiffs should thus be required to allege more than the mere fact of a price discrepancy to state a claim. A price discrepancy, standing alone, evidences no more than a mere error. If Plaintiffs could state a claim based simply on identifying a price discrepancy without taking into account all the facts a reasonable consumer would rely on in making a purchase—such as a cashier's expressly providing a consumer with the correct pricing for a product before completing a transaction—the DCCPPA effectively would create strict liability for any pricing errors. The law, however, does not hold retailers to such an impossibly high standard.

## V. CONCLUSION

For the foregoing reasons, Walmart respectfully requests that this Court dismiss Plaintiffs' FAC with prejudice.

Dated: June 21, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

*/s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5855
JBrightbill@winston.com

Daniel M. Blouin (admitted pro hac vice)
Frank A. Battaglia (admitted pro hac vice)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
DBlouin@winston.com
FBattaglia@winston.com

*Attorneys for Walmart Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, the foregoing was served by U.S. mail on the following counsel and electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

>Veronica Nannis, Esq. (#485151)
>Drew Laframboise, Esq. (#1018140)
>JOSEPH GREENWALD & LAAKE, P.A.
>6404 Ivy Lane, Suite 400
>Greenbelt, MD 20770-1417
>Ph: (240) 553-1209
>F: (240) 553-1740
>vnannis@jgllaw.com
>dlaframboise@jgllaw.com
>
>Nicole T. Fiorelli, Esq. (*pro hac vice* to be filed)
>Frank A. Bartela, Esq. (*pro hac vice* to be filed)
>Patrick J. Perotti, Esq. (*pro hac vice* to be filed)
>Shmuel S. Kleinman, Esq. (*pro hac vice* to be filed)
>DWORKEN & BERNSTEIN CO., L.P.A.
>60 South Park Place
>Painesville, OH 44077
>(440) 352-3391 II (440) 352-3469 Fax
>nfiorelli@dworkenlaw.com
>fbartela@dworkenlaw.com
>pperotti@dworkenlaw.com
>skleinman@dworkenlaw.com

>>*/s/ Jonathan D. Brightbill*
>>Jonathan D. Brightbill