**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Christina Rector, on behalf of herself and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>Walmart Inc.,<br><br>　　　　　Defendant. | Civil Action No.: 1:24-cv-00658 (RC)<br><br>JUDGE RUDOLPH CONTRERAS<br><br>MAGISTRATE JUDGE MAE A. D'AGOSTINO |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

At the heart of this litigation is the principle that consumers shopping in a self-service store expect to pay the shelf price for an item. Not only do consumers expect to pay the shelf price, but, for at least the past 50 years, courts have prohibited self-service stores from charging a higher price than the shelf price. Courts have routinely held that the shelf price is an offer to sell at that price, and that offer is accepted no later than when the consumer presents the item for purchase at the register. To the extent that legislatures and attorneys general have addressed the issue, they have agreed with the courts that self-service stores cannot charge a price higher than the shelf price. And self-service stores, including Walmart, Target, and Walgreens have been fined millions of dollars for not honoring shelf prices.

Plaintiffs' claims arose because the Defendant, Walmart Inc. ("Defendant"), charges prices that are higher than its shelf prices. These overcharges (the difference between the price charged at the register and the shelf price) are not a mistake. When Plaintiffs were overcharged, they informed Defendant's employees that the price they were being charged at the register was higher

1

than the shelf price. But Defendant expressly refused to honor its shelf prices and insisted that Plaintiffs pay the overcharge.

In that context, Plaintiffs have adequately alleged that Defendant engaged in unfair and deceptive trade practices in violation of the D.C. Consumer Protection Procedures Act ("CPPA") D.C. Code § 28-3901, *et seq.*, by misrepresenting a material fact—price—that has a tendency to mislead; by failing to state a material fact—that Defendant would not honor the shelf price at the register—when such failure tends to mislead; and by offering goods without the intent to sell them as offered, i.e., at the shelf price.

When charging a higher price at the register, Defendant did not inform Plaintiffs that the register price was higher than the shelf price. The opposite is true. Plaintiffs informed Defendant that the register price was higher than the shelf price. So, Defendant never actually disclosed the overcharges. Instead, it improperly charged a price higher than the shelf price, collected overcharges, and remained silent about the fact that it was charging the customer a price higher than the shelf price. Defendant's admission after the fact that it is charging a different price at the register, once a customer notices that the register price is higher than the shelf price, does not somehow mitigate Defendant's deceptive conduct.

**FACTS**

Plaintiff Christina Rector, while shopping at Walmart, saw Tide laundry detergent offered for sale at $9.99. First Amended Complaint ("FAC") at ¶ 16, ECF No. 20. Ms. Rector accepted that offer and presented the item at the register for purchase. Id. at ¶¶ 17-18. Walmart charged Ms. Rector $11.99 for the detergent. Id. at ¶ 18. Ms. Rector informed the cashier that Defendant was overcharging her. Id. at ¶ 22. But Defendant refused to honor the shelf price, and insisted that Ms.

2

Rector pay $11.99. *Ibid*. Walmart refused to honor its shelf price on other shopping trips by Ms. Rector, and refused to give her a refund for the overcharge. *Id.* at ¶¶ 30 and 39.

Plaintiff Lizette McKinney, while shopping at Walmart, saw chitterlings offered for sale at $9.99. *Id.* at ¶ 53. Ms. McKinney accepted that offer and presented the chitterlings at the register for purchase. *Id.* at ¶¶ 55-56. Walmart charged Ms. McKinney $18.99 for the chitterlings. *Id.* at ¶ 56. Ms. McKinney informed the cashier that Defendant was overcharging her, but Defendant refused to honor the shelf price, and insisted that Ms. McKinney pay $18.99. *Id.* at ¶ 60.

The discrepancy between the shelf prices at which Defendant offers to sell items, and the register prices that Defendant actually charges for items, is built into its store operations. *Id.* at ¶¶ 7-14. Defendant's prices are set by corporate management, and Defendant is responsible for updating those prices in its stores. *Id.* at ¶ 8. The register price is immediately electronically updated when Defendant prints a new shelf tag for an item. *Id.* at ¶¶ 9-10. But simply printing the shelf tag does not ensure that the tag is posted on the shelf. *Id.* at ¶ 10. Instead, employees must manually affix the updated shelf tag to the shelf. *Ibid.* But employees frequently print a shelf tag and never post it on the shelf. *Id.* at ¶ 12. So, Defendant has created a method for updating prices that ensures that there will frequently be differences between the shelf price of an item and the price charged at the register. *Id.* at ¶ 14.

## LAW AND ARGUMENT

I. **Plaintiffs have Article III standing.**

   A. **Plaintiffs have adequately alleged a concrete and particularized invasion of a legally protected interest, i.e., that Defendant overcharged them.**

Plaintiffs have alleged an injury in fact – that they should have been charged the shelf prices for their items, but instead were charged a higher price at the register. These facts are sufficient to confer Article III standing because Plaintiffs have suffered a harm that "has traditionally been

3

regarded as providing a basis for a lawsuit in English or American courts." See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016) (noting that an intangible harm constitutes injury in fact if it has a close relationship to a claim traditionally brought in American courts). Here, Plaintiffs were overcharged. Under the common law, the shelf price of an item in a self-service store is an offer capable of acceptance. That offer is accepted no later than when the customer presents the item for payment. Consequently, if, at the register, a self-service store charges a higher price than the shelf price, that results in an overcharge. When Defendant charged more than the shelf price for items, it overcharged its customers, including Plaintiffs. That overcharge is an injury recognized at common law, and is the type of concrete and particularized invasion of a legally protected interest that supports standing. *Spokeo*, 578 U.S. at 339.

### B.  A price tag in a self-service store constitutes an offer.

Defendant made offers by placing a specific price on every item in its stores. The offers were unambiguous: the exact items for sale at the shelf price were physically present on the shelf, and Plaintiffs selected specific items for purchase. A shelf price creates an offer by Defendant to sell the item associated with that shelf price at the shelf price. Plaintiffs accepted Defendant's offers by selecting items, placing them in their shopping carts, and transporting the items to the register. Defendant then refused to sell the items at the agreed upon prices (the shelf price), instead charging a higher price. Defendant's breach created an overcharge, because it resulted in Plaintiffs paying more than the agreed price.

A "price tag is … evidence of a retailer's offer to sell the item for a specified price[.]" See *People v. Portillo,* 91 Cal.App.5th 577, 592 (2023); *Norris v. State,* 475 S.W.2d 553, 556 (Tenn. Crim. App. 1971) (quoting *Lauder v. State,* 233 Md. 142 (1963)) (a "'a price tag is a written representation of the price at which the owner offers to sell the article in question'"). In the context

4

of a self-service store, the "merchant's act of stocking [the] self-service displays with goods … makes an offer to the shopper to enter a contract for their sale." See *Barker v. Allied Supermarket,* 596 P.2d 870, 1979 OK 79, ¶ 8. For example, a "retailer's act of placing bottles on the shelf with the price stamped upon them manifested an intent to offer them for sale, the terms of the offer being that it would pass title to the customer when they were presented at the check-out counter and paid for." *Fender v. Colonial Stores, Inc.,* 138 Ga.App. 31, 33 (1976); see also *Singletary v. United States*, 519 A.2d 701 (D.C. 1987) (presence of a price tag is evidence an item is being "offered for sale").

### C. Plaintiffs accepted Defendant's offers to sell items at the shelf price no later than when they presented those items at the register.

An offer may be accepted by conduct, including "acts that clearly manifest a present intention to accept the offer." 77 C.J.S. Sales § 55; Restatement (Second) of Contracts §19, cmt. a (1981) ("Words are not the only medium of expression. Conduct may often convey as clearly as words … an assent to a proposed promise."). In the context of a self-service store, "reasonable men could conclude that the [consumer's] act of taking physical possession of the goods with the intent to pay for them constituted a reasonable mode of acceptance; that by taking physical possession and delivering to the checkout counter the [consumer] promised to pay for them at the stated price and this promise is sufficient consideration to support a contract[.]" See *Fender,* 138 Ga.App. at 34; *Barker,* 1979 OK 79 at ¶ 6 ("Plaintiff contends that taking possession of goods from a self-service display coupled with the intent to pay for them is sufficient to create a … 'contract for their sale' …. We agree[.]"); *Gillespie v. Great Atlantic & Pacific Tea Co.,* 14 N.C. App. 1, 5-6 (1972) (The sale of bottled drinks in a self-service store was consummated when the consumer took possession of the bottled drinks: "The presence of the drinks on the shelves in defendant's self-service store constituted an offer for sale and delivery at a stated price. If plaintiff took the

5

drinks into his possession with the intention of paying for them at the cashier's counter, there was no further act of delivery necessary on the part of the seller."); *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.,* 273 Md. 592, 606 (1975) (collecting cases holding that "in the context of a self-service supermarket, a contract for sale may arise before payment is actually made for the goods"). Addressing a purchase of Coca Cola at a self-service store, a court held that acceptance of the store's offer to sell Coca Cola at a price stamped on the bottle could be communicated by either (a) "physical delivery [of the goods] to the check-out counter, or (b) "by taking physical possession of the goods by their removal from the shelf." See *Sheeskin v. Giant Food, Inc.,* 20 Md.App. 611, 625 (1974). Here, Plaintiffs accepted Defendant's offer to sell items at the shelf price when they placed the items in their shopping carts, or when they delivered them to the register. FAC at ¶¶ 17-18, 25-26, 34-35, 55-56.

To the extent Defendant may argue its price tags were merely ads, those ads still constituted offers. See *Lefkowitz v. Great Minneapolis Surplus Store, Inc.,* 251 Minn. 188, syllabus at paragraph 1 (1957) ("Where one offers for sale by newspaper advertisement a certain article of definite value at a quoted price, which offer is clear, definite, and explicit and leaves nothing open for negotiation, it constitutes an offer, acceptance of which may complete the contract."); *Kearney v. Equilon Enterprises, LLC,* 65 F. Supp.3d 1033, 1038 (D. Ore. 2014) (same); *Ransom v. Spacc,* 60 N.Y.S.3d 630, 633 (2017) (an ad constitutes an offer "where the advertisement clearly communicates an offer that is definite, explicit and leaves nothing open for negotiation"); *Nguyen v. Barnes & Noble, Inc.,* No. SACV 12-812-JLS (RNBx), 2015 WL 12766130, *4 (C.D. Cal. June 16, 2015) (because an ad was "'clear definite, and explicit' as to all essential terms—namely, the item to be sold, the price, and the manner of acceptance—it 'left nothing open for negotiation' and therefore constituted an offer [the plaintiff] could accept"); *Maurice Elec. Supply Co. v. Anderson*

*Safeway Guard Rail Corp.*, 632 F. Supp. 1082 (D.D.C. 1986) (a price quote constitutes an offer where terms are "definite and certain," and made "under circumstances evidencing the express or implied intent of the offeror that its acceptance shall constitute a binding contract."). Here, no ambiguity exists as to the terms on which Walmart's offers to sell the items in its stores. The items to be sold are displayed in the store on shelves; each item on a shelf has a price; customers must remove the items that they wish to purchase from the shelf and place them in their carts; and, customers accept the offers either by placing the items in their shopping carts, or presenting the items at the register.

### D. Defendant overcharged Plaintiffs by refusing to honor its offers after Plaintiffs accepted them.

Defendant breached its agreements with Plaintiffs by refusing to sell Plaintiffs the items they presented at the register at the prices for which Walmart offered the items: "When performance of a duty under a contract is due any non-performance is a breach." Restatement (Second) of Contracts § 235(2) (1981). Plaintiffs accepted Defendant's offers to sell specific items at specific prices by presenting those items at the check-out. Defendant breached those agreements by refusing to sell the items at the offered price, and, instead, selling them at a higher price. Plaintiffs' injury is the overcharge, namely the difference between the shelf price at which Walmart offered to sell the items and Plaintiffs agreed to purchase them, and the higher prices that Walmart charged Plaintiffs.

### E. The non-breaching party can perform and sue for damages.

"After a party materially breaches a contract, the non-breaching party has a choice: either terminate the contract, or insist on continued performance and sue for damages caused by the breach." See *Balmoral Racing Club, Inc. v. Churchill Downs, Inc.,* 953 F. Supp.2d 885, 902 (N.D. Ill. 2013); *City of New York v. New York Pizzeria Delicatessen, Inc.,* No. 05 CV2754 (KMK), 2006

WL 2850237, *7 (S.D.N.Y. Sept. 29, 2006); *Surgical Laser Technologies, Inc. v. Heraeus Lasersonics, Inc.,* No. 90-7965, 1995 WL 7035, *4 (E.D. Pa. Feb. 15, 1995) (the "non-breaching party may choose to continue performance of the contract … remaining bound by those terms"). Here, Defendant breached, Plaintiff performed, and, under the common law, Plaintiff is permitted to sue for damages caused by the breach, i.e., the overcharges. Those overcharges are a concrete and particularized invasion of a legally protected interest that support standing.

### F. Defendant's argument that the register price is the "correct" price is legally baseless.

Defendant knows that overcharges provide a basis for standing, so Defendant posits that it charged Plaintiffs the "correct" price at the register. Defendant's Brief, p. 7 ("Rector learned the correct price *before* completing her transaction"). Defendant's position that a price disclosed at the register that is higher than the shelf price is the "correct" price has no foundation in law.

Courts, legislatures, regulatory agencies, and attorneys general have uniformly taken the position that the only price at which a self-service store can sell an item is the shelf price. FAC at ¶ 98 (AG Eric Schneiderman stating that consumers should be able to rely on shelf tag prices); FAC at ¶ 100 (a court imposed fines of $1,000 per violation on Walgreens for failing to timely update its shelf tag prices); FAC at ¶ 101 (Walmart was ordered to pay $3 million for failing to ensure its shelf tag prices were accurate); FAC at ¶ 102 (Target was order to pay $3.3 million in penalties for charging more than the shelf tag price). The state statutes cited by Defendant are no different. Those regulations make unlawful, and impose penalties, when a retailer charges more than the shelf price. Defendant's Brief, p. 8-9.

This is not Walmart's first rodeo on the issue of overcharges arising from charging more than the shelf price at the register. In March 2012, Wal-Mart agreed to pay $2.1 million to the State of California for "representing a price for an item offered for sale and charging a greater price at

8

the time the item is purchased" and for "charging an amount greater than the lowest price posted … on a shelf tag[.]" *People v. Wal-Mart, Inc.,* Case No. 37-2008-00096757-CU-BT-CTL, Modified Final Judgment Pursuant to Stipulation, ¶ 4(A) and (B) (attached to FAC as Ex. B). Defendant does not explain why, after those fines were imposed, it believes that it is permitted to charge a price higher than the shelf price.

For at least 50 years, as a matter of law, the shelf price at a self-service store has been the correct price. Therefore, Plaintiffs saw the correct prices on the shelf and when they presented the items that they selected at the register, Defendant was obligated to sell them those items at the shelf price. Plaintiffs told Walmart the shelf prices of the items. But Walmart disregarded that information and *chose* to overcharge Plaintiffs.

**II.     Plaintiffs have adequately alleged a violation of the CPPA.**

Defendant's suggestion that Plaintiffs have failed to sufficiently allege Defendant's unfair and deceptive practices under the CPPA is meritless.  In their FAC, Plaintiffs allege:

- Price is material in the purchase of goods (FAC at ¶ 127);

- Price is an important and material factor for Plaintiffs in making purchasing decisions (FAC at ¶ 129);

- Defendant has reason to know price is important to its customers (FAC at ¶ 130);

- Defendant misrepresented the price that it would charge for certain items (FAC at ¶ 134)

- Defendant's practice of misrepresenting its prices has tendency to mislead (FAC at ¶ 133);

- Defendant failed to state that its shelf prices could be lower than its register prices (FAC at ¶ 136);

- Defendant's failure to state that its shelf prices were not the same as its register prices tends to mislead its customers (FAC at ¶ 135); and

- Defendant offered goods without intending to sell them as offered (FAC at ¶ 139).

9

Given those facts, Plaintiffs have sufficiently alleged that Defendant violated D.C. Code § 28-3904(e) by misrepresenting a material fact that has a tendency to mislead (placing shelf prices on items that differ from the prices charged at the register). FAC at ¶ 133. Plaintiffs have also sufficiently alleged that Defendant violated D.C. Code § 28-3904(f) by failing to state a material fact when such failure tends to mislead (failing to disclose to customers that it does not honor shelf prices at the register). FAC at ¶ 135. And Plaintiffs have sufficiently alleged that Defendant violated D.C. Code § 28-3904(h) by offering goods without the intent to sell them as offered (offering goods with a specific shelf price, but refusing to honor that shelf price at the register). FAC at ¶¶ 139, 140.

Defendant's practice of charging prices at the register that are higher than the shelf price is deceptive under the CPPA. As the Seventh Circuit recently found in *Kahn v. Walmart,* No. 23-1751, 2024 WL 3282097, *6 (7th Cir. July 3, 2024), "it is neither 'unreasonable' nor 'fanciful' for consumers to believe that Walmart will sell them its merchandise at the prices advertised on its shelves." Plaintiffs clearly relied on the shelf prices in making their shopping decisions. FAC ¶¶ 30 (Ms. Rector chose not to purchase Tide laundry detergent when she was told that Defendant would charge her more than the shelf price); FAC ¶¶ 60-61 (Ms. McKinney was only able to purchase one bag of chitterlings instead of three bags when she learned that Defendant would charge her more than the shelf price).

Plaintiffs have also alleged that Defendant has items in its stores marked with a shelf price at which price Defendant has no intention of selling those items.  See FAC at ¶¶ 139, 140.

Finally, Plaintiffs have alleged that before consumers select items from Defendant's shelves for purchase and present those items at the register, Defendant does not disclose that it frequently charges a price at the register that is higher than the shelf price. See FAC at ¶¶ 21, 29, 38, 59, 90.

10

These actions are misleading, deceptive, and constitute colorable violations of D.C. Code § 28-3904.

Under the CPPA, a misrepresentation or omission is material if "a reasonable person 'would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction…'" *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)). While Defendant asserts in conclusory fashion—and without providing any substantive argument—that the FAC "does not contain sufficient facts to establish . . . that a reasonable consumer otherwise would be misled," (Br. at 11), Defendant is flatly wrong. The FAC clearly alleges that consumers "expect a shelf tag price to reflect the current price of an item" (FAC at ¶ 137) and "would find the true cost of items at Walmart stores to be important in making purchasing decisions" (Id. at ¶ 138). While Defendant may not agree with those allegations, at the motion to dismiss stage Plaintiffs have sufficiently alleged the materiality of the Defendant's misrepresentations.

In sum, Plaintiffs have sufficiently alleged that Defendant engaged in deceptive acts and that a reasonable consumer would be misled. Plaintiffs have stated a plausible claim for relief under the CPPA, and Defendant's motion to dismiss should be denied.

### III.    Defendant did NOT disclose the overcharges.

The misleading conduct alleged here is the posting of shelf prices that Defendant will not honor. The FAC is rife with allegations that Plaintiffs selected items in the belief that Defendant would charge the shelf price, but Defendant, in fact, charged more. FAC at ¶¶ 22, 30, 39, and 60. And, no doubt, thousands of Defendant's customers (including putative class members) unwittingly paid more than the shelf price because "[c]onsumers expect that the shelf tag prices displayed in stores are the correct prices for the items." FAC at ¶ 91.

11

**Defendant never disclosed to Plaintiffs that the register price was higher than the shelf price** at which Defendant was legally obligated to sell the items. Defendant does not *tell* its customers that its register prices are different from its shelf prices. FAC at ¶ 136 ("The material fact that Walmart failed to state was that the shelf tag prices of the items in its stores were lower than the prices charged at the register."). When Defendant rang up the items for which it was overcharging Plaintiffs, the cashier did not tell Plaintiffs: "Warning, you are being charged more than the shelf price for Tide and chitlins." Instead, *Plaintiffs had to remember* the shelf prices and compare them to the register prices. But for Plaintiffs recalling the shelf prices and watching as their transactions were processed (as opposed to checking their phone, minding their children, looking for their debit card, etc.), they would not have known that Defendant was overcharging them, because **at no time during check-out process did *Defendant* mention the shelf price,** much less affirmatively state that the register price for an item was higher than the shelf price.

As the Seventh Circuit recently observed, "merely providing a receipt is insufficient to dispel the deception created by Walmart's inaccurate shelf prices[.]" *Kahn,* 2024 WL 3282097 at *7. "[O]nly plaintiff's comparison of the prices actually charged at the register against the advertised shelf pricing dispelled the potential deception." *Ibid.* The Seventh Circuit noted that "[u]nder Walmart's approach to these pricing inaccuracies, consumers must keep track of the advertised shelf prices for all the items they intend to purchase …. Next …, consumers would need to compare the scanned prices with the shelf prices for all the items." *Ibid.* The Seventh Circuit reasonably asked: "Who does that?" *Id.* at *8. The *Kahn* court concluded that "[r]easonable consumer behavior does not require shoppers to audit their transactions and to overcome those additional hurdles just to ensure that they receive merchandise at the advertised shelf prices." *Ibid.*

Also, even if Defendant had disclosed that the register price was higher than the shelf price during the check-out process, that after-the-fact disclosure would not have remedied the conduct that misled that Plaintiffs in the first place—posting a shelf price that was lower than the price charged at the register. Consumers make their shopping decisions while standing in front of the shelf, not at the register. When selecting an item for purchase at a self-service store, a consumer must make multiple determinations. Among a consumer's considerations are quality, quantity, necessity, price, availability of the same or a comparable product at a competing store at a better price, the consumer's budget, etc. Assigning the appropriate weight to those factors to arrive at a good decision becomes impossible if a self-service store lies about the price or quantity of an item on the shelf tag.

Defendant essentially argues that it expects its customers to do their shopping twice—once based on shelf prices, and a second time based on register prices. But Defendant never discloses that fact to its customers. Instead, Defendant pretends—until caught by a customer—that the register prices are the same as the shelf prices. That conduct is misleading and it is not remedied by providing customers with receipts that reflect the register prices, but not the shelf prices on which the customers relied in making their purchasing decisions.

The Seventh Circuit further held that it did not matter if customers discovered the price discrepancy before completing the transaction. *Kahn* at *9. The court observed that bait-and-switch pricing schemes lead to injuries that consumers cannot avoid, such as higher search costs, because either the consumer must pay the higher price, or spend additional time to find accurate pricing information. *Ibid.* The Seventh Circuit noted the realities that consumers face when surprised by higher prices at the register: "Even if consumers do notice a price discrepancy on a point-of-sale display or on a receipt, they must then raise the issue to the store's attention to resolve

it. It is reasonable to infer that many consumers in that situation would be concerned about holding up the six shoppers in line behind them, reluctant to trouble a busy store manager over a few pennies per item, or unable to spare the time to track that manager down." *Id.* at *8. Consequently, "even consumers who spot the price discrepancy at checkout are left with little choice but to submit. The alternative is to spend more time and effort in comparison shopping and rectifying any overcharges." *Id.* at *10.

## IV.     Defendant did not mistakenly overcharge Plaintiffs, and even if they did, the CPPA does not require intentionality.

Defendant insists, contrary to the allegations of the complaint, that its practice of charging shoppers more than the shelf price constituted "mere mistakes." Br. at 1. Defendant further claims it should not be held "strictly liable" for that mistake. Br. at p.1, 8. Defendant's position is factually unsupported, contradicts the well-pled allegations of the FAC, and moreover, does not give them legal cover for their deceptive conduct.

When Plaintiffs told Defendant that it was charging more than the shelf price, Defendant had the opportunity to charge the shelf price, and not impose the improper overcharges – but Defendant *chose* to charge the higher, improper price. FAC at ¶¶ 22, 30, 39, and 60. So, the overcharges were not a "mistake."

Furthermore, even if Defendant were correct in calling the overcharges a mistake, this would not absolve it of liability under the CPPA. The CPPA does not require a showing of intentionality. See *Frankeny*, 225 A.3d 999, 1004 (2020) ("[I]intentionality is not required under D.C. Code § 28-3904(e) and (f).… Instead, a consumer only needs to establish that the merchant made a material misrepresentation under § 28-3904(e), or failed to make a material disclosure under § 28-3904(f)"); *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 & n.20 (D.C. 2008) ("[W]e now hold that [plaintiffs] need not allege or prove

14

intentional misrepresentation…to prevail on a claimed violation of § 28-3904 (e) or (f) of the CPPA."); *Saucier*, 64 A.3d 428, 442 ("[A] plaintiff 'need not allege or prove intentional misrepresentation or [intentional] failure to disclose to prevail on a claimed violation of § 28-3904 (e) or (f) of the CPPA.'") (quoting *Fort Lincoln*).

Defendant's assertion that its pattern of mispricing and overcharging consumers, including the Plaintiffs, was the product of a "mere mistake" is a red herring that is not material to the Court's analysis of Defendant's liability under the CPPA.

**V.     That self-service stores are not permitted to charge more than the shelf price is not unexpected or otherwise unfair to Defendant.**

In arguing that the Courts should excuse their misrepresentations about the prices of its goods, Defendant cites multiple state consumer protection statutes regarding the accuracy of shelf prices. See Br. at 8-9.  Defendant suggests that those laws reflect that pricing inaccuracy should be expected.  But those laws support the opposite conclusion. Each state law cited by Defendant makes clear that it is unlawful for retailers to charge a different price that the advertised shelf price for an item, errors notwithstanding. More importantly, every law cited by Defendant provides for a remedy when a shelf price is not accurate. Thus, to the extent that the state statutes cited by Defendant acknowledge that pricing errors do occur, they also mandate that retailers remedy the inaccuracy. Contrary to the Defendant's baseless suggestion that these state laws "recognize that pricing errors are inevitable" (Br. at 9), the laws instead show that legislatures throughout the country understand the deceptive, unfair, and injurious nature of such conduct.

And specifically in D.C., self-service stores have been expressly instructed by the Attorney General not to charge prices at the register that are different from the shelf price. Defendant cannot claim that it is surprised that shelf tag prices must be correct under D.C. law. District of Columbia AG Brian Schwalb has written that "Businesses must make the prices for retail items accurate and

15

easy to understand" and that consumers "should not be surprised … at the checkout counter." FAC at ¶ 99. Likewise, a Missouri court imposed fines of $1,000 per violation on Walgreens for failing to timely update its shelf tag prices, because the "[i]nformation contained on a tag on the store shelf should be information upon which a consumer can reasonably rely." FAC at ¶ 100. In California, Walmart was ordered to pay more than $3 million because its register prices were different than its shelf tag prices. FAC at ¶101. Also, a court ordered Target to pay more than $3 million in penalties for charging prices at the register that were higher than the shelf tag price. FAC at ¶ 102.

In sum, the FAC alleges that self-service stores face significant penalties across the United States for charging a price higher than the shelf price. Defendant cannot claim that it is surprised that shelf tag prices must be correct. Nor is this an unreasonable expectation, as Defendant implies.

Self-service stores provided accurate pricing for decades without the benefit of the technological advances that have greatly simplified inventory management. To the extent that shelf prices are inaccurate, that inaccuracy is the result of a business decision—allowing the register price to be increased before the shelf price.  To avoid overcharges, Defendant could adopt a methodology whereby price increases would always be reflected on the shelf price *before* they were changed at the register. Defendant has made the conscious decision not to do so.

Finally, while Defendant asserts that "pricing perfection" is unfair, this is not a gotcha situation, or a technical violation. Plaintiffs have standing to sue because Defendant collected overcharges from them and local law provides Plaintiffs the right to recover statutory damages, which are designed to deter the exact type of conduct that Defendant has been engaging in. If Defendant smeared grease on the floor and a customer slipped and broke his hip, that subsequent lawsuit would not be dismissed because it required "safety perfection" by Defendant. Instead, the

lawsuit would require Defendant to compensate the victim of Defendant's negligence for the injuries that the negligence caused. Similarly, here, Defendant must compensate Plaintiffs for the injury caused by its statutory violations.

## VI. The *Kahn* decision has been reversed by the Seventh Circuit.

Defendant posits that *Kahn v. Walmart,* an Illinois district court decision regarding Walmart pricing errors in Illinois, supports its position that Plaintiffs have failed to state a claim. The Seventh Circuit reversed the district court on July 3, 2024. *Kahn,* 2024 WL 3282097. As previously noted, that decision supports the conclusion that Defendant is liable for charging consumers more than its shelf prices. Also noteworthy is the fact that during plaintiff's appeal of that decision, the State of Illinois filed an *amicus* brief, calling the district court's decision "antithetical to the purpose of consumer protection statutes."

## VII. Conclusion

Every court, legislature, state regulatory agency, and attorney general to address the issue of mispricing has found that retailers may not charge more than the shelf price, and retailers, including Walmart specifically, have faced heavy penalties for this practice. The CPPA's remedies are intended to protect consumers and deter retailers from engaging in such conduct, including by allowing for class actions where such conduct affects consumers on a wide scale and is suitable for class treatment. Plaintiff has pled sufficient facts to state an injury in fact, and has pled all elements of the CPPA. For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss.

Dated:  July 19, 2024                         Respectfully submitted,

                                              DWORKEN & BERNSTEIN CO., LPA

*/s/ Nicole T. Fiorelli*
Nicole T. Fiorelli, Esq. (admitted pro hac vice)
Shmuel S. Kleinman, Esq. (admitted pro hac vice)
60 S. Park Place
Painesville, OH 44077
Telephone: (440) 352-3391     (440) 352-3469 Fax
Email: nfiorelli@dworkenlaw.com
          skleinman@dworkenlaw.com

Drew LaFramboise, Esq. (#1018140)
Veronica Nannis, Esq. (#485151)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-1417
Telephone: (240) 553-1209    (240) 553-1740 Fax
Email: dlaframboise@jgllaw.com
          vnannis@jgllaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, a copy of the foregoing Consent Motion was filed electronically with the Clerk of the court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Nicole T. Fiorelli*
Nicole T. Fiorelli, Esq. (admitted pro hac vice)
**DWORKEN & BERNSTEIN CO., LPA**
