UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHRISTINA RECTOR, | : | | |
| | : | | |
| LIZETTE MCKINNEY, | : | | |
| | : | | |
| on behalf of themselves and all others similarly situated, | : | Civil Action No.: | 24-658 (RC) |
| | : | | |
| Plaintiffs, | : | Re Document Nos.: | 16, 22 |
| | : | | |
| v. | : | | |
| | : | | |
| WALMART INC., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## I.  INTRODUCTION

Christina Rector ("Plaintiff Rector") and Lizette McKinney ("Plaintiff McKinney") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file a class action suit against Walmart Inc. ("Walmart" or "Defendant").  Plaintiffs allege that many items sold at its stores are advertised at a lower shelf-price than what they charge customers at the register; and because Plaintiffs and others similarly situated make their shopping decisions based on the shelf prices, Walmart misleads Plaintiffs and other consumers.  Defendant initially moved to compel arbitration of Plaintiffs' original Complaint based on their inclusion of purchases made on Walmart's online platforms, which Plaintiffs responded to by filing an Amended Complaint.  Defendant subsequently moved to dismiss, arguing that Plaintiffs lack standing in

this action and that Plaintiffs failed to state a cause of action. For the foregoing reasons, Defendant's motion to dismiss is denied and its motion to compel arbitration is denied as moot.[1]

## II.  FACTUAL BACKGROUND

Plaintiffs, in their original Complaint, filed a putative class action against Defendant alleging that "Walmart charged [Plaintiff Rector and others similarly situated] more for two items at the checkout counter than the prices reflected on the store shelf." Def.'s Mot. Compel, ECF No. 16 at 1. In response, Defendant filed a motion to compel arbitration, arguing that the claims asserted in the Complaint must be resolved through arbitration because an enforceable arbitration agreement covers this dispute, and an arbitration must proceed on an individual basis. In the alternative, Defendant contends that Plaintiffs' claims should be dismissed because they lack Article III standing, they fail to state a cause of action because the law does not require pricing perfection, and "the Complaint does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled." *Id*. at i. Plaintiffs responded to Defendant's motion to compel arbitration with an Amended Complaint. *See generally* Am. Compl., ECF No. 20.

The Amended Complaint alleges that, in June 2022, Plaintiff Rector visited a Walmart Store in Washington, D.C to purchase laundry detergent. Am. Compl. ¶ 15. She claims that on

---

[1] In response to Plaintiffs' original Complaint, Defendant moved to compel arbitration or, in the alternative, to dismiss. *See* Def.'s Mot. Compel. In that motion, Walmart sought a Court order requiring the "parties to arbitrate their dispute on an individual basis." *Id*. at 18. Walmart's argument was premised on an "arbitration agreement contained in the TOU ['Terms of Use'] Agreement" applicable to the "use of and reliance upon Walmart's electronic platforms in connection with the transactions in dispute in this case." *Id*. at 6. However, Plaintiffs' Amended Complaint removes any reference to the "use of the Walmart App in connection with many of the challenged purchases." *See* Def.'s Mot. Dismiss ("Def.'s MTD"), ECF No. 22 at 2 n.1. Therefore, Defendant's motion to compel arbitration is denied as moot in light of the filing of the Amended Complaint.

the shelf, the laundry detergent was advertised as being sold for $9.99; but at the register, Plaintiff Rector was charged $11.99. *Id*. ¶¶ 16–19. Plaintiff Rector notified a cashier of the discrepancy, but the cashier told her that she would still have to pay the higher price. *Id*. ¶ 22. Plaintiff Rector paid the higher price because she did not have time to shop at another store. *Id*. Between December 2022 and January 2023, Plaintiff Rector visited another Walmart store in Washington, D.C. to purchase laundry detergent and experienced the same circumstances with the same figures. *Id*. ¶¶ 23–30. This time, she instead decided to not purchase the laundry detergent after the cashier confirmed that she would have to pay the higher price. *Id*. Lastly, in September 2022, Plaintiff Rector entered a separate Walmart store in Washington, D.C. to purchase toilet paper. *Id*. ¶¶ 33–37. She saw that the shelf price of the toilet paper was $7.99, but she was charged $9.99 at the register. *Id*. When she asked the cashier for a refund, she was again told that she had to pay the higher price. *Id*. ¶ 39. In these transactions, Plaintiff Rector did not use Walmart's mobile app or any of Walmart's online services. *Id*. ¶ 41. She alleges that "Walmart advertised said items at a price at which it had no intent to sell them" and it "concealed the price it planned on charging at the register and instead represented that the items were being offered for sale at the shelf tag price." *Id*. ¶¶ 43–44.

In November 2023, Plaintiff McKinney entered a Walmart store in Washington, D.C. to purchase chitterlings. *Id*. ¶ 52. On the shelf, Plaintiff McKinney claims that the chitterlings were being offered for $9.99 per bag, but she was charged $18.99 per bag at the register. *Id*. ¶¶ 53–57. She informed the cashier of the discrepancy, and the cashier told her she would still have to pay the register price. *Id*. ¶ 60. Although she had to leave two bags behind, Plaintiff McKinney paid the higher price because she needed chitterlings for her Thanksgiving dinner

preparations. *Id*. For these transactions, Plaintiff McKinney also alleges that she did not use Walmart's mobile app or any of Walmart's online services. *Id*. ¶ 62.

For approximately one year, Plaintiffs' counsel conducted an investigation of two Walmart stores[2] that were identified in the Amended Complaint. *Id*. ¶ 73. The investigation, which was conducted by private investigator Scott Kucik, revealed that for over 500 items, "the register price was higher than the shelf tag price." *Id*. ¶ 76.[3] Plaintiffs' Amended Complaint includes twelve examples of instances where investigator Kucik's investigation revealed that Walmart's register price for an item was higher than that on the shelf tag for the item. *Id*. ¶¶ 78–89. Plaintiffs argue that "Walmart did not disclose to shoppers that its shelf tag prices may be different from the prices charged at the register." *Id*. ¶ 90. Plaintiffs further argue that "Walmart's view that it can change the price at the register is inconsistent with contract law, consumer protection law, and decades of [the] consumer in-store shopping experience" because "[t]he shelf price is an invitation for the consumer to accept the price and present the item for purchase at the register." *Id*. ¶¶ 93, 94. Plaintiffs' claims are premised on alleged violations of the District of Columbia's Consumer Protection Procedures Act ("DCCPPA"). *Id*. ¶¶ 122–141. Defendant moves to dismiss this action, raising similar arguments from its motion to compel

---

[2] Plaintiffs make allegations relating to three Walmart stores in Washington, D.C. but the third store is not included in Plaintiffs' counsel's investigation because it closed on approximately March 31, 2023. Am. Compl. ¶ 73 no. 1. Although counsel asserts that an initial investigation uncovered mispricing at that store as well, an extensive investigation was not completed. *Id*.

[3] The Amended Complaint also references shelf prices for items that were allegedly different from the prices referenced on the Walmart App or at the register, and none of these allegations appear to involve Plaintiffs. Am. Compl. ¶¶ 73–89. Instead, these allegations appear to be linked to transactions made by private investigator Scott Kucik and not by a consumer for personal use. *Id*. The Court will not address investigator Kucik's allegations, as they concern evidentiary issues that are more appropriately resolved through other motions, such as motions *in limine*.

arbitration. Walmart argues that Plaintiffs lack Article III standing, the law does not require pricing perfection, and the Amended Complaint "does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled." *See* Def.'s MTD at i. Defendant's motion to dismiss is now ripe for decision, and the Court will consider each of Defendant's arguments.

### III. LEGAL STANDARD

#### 1. Federal Rule of Civil Procedure 12(b)(1)

"The D.C. Circuit has instructed that a motion to dismiss for lack of standing constitutes a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure because 'the defect of standing is a defect in subject matter jurisdiction.'" *Sweigert v. Perez,* 334 F. Supp. 3d 36, 40 (D.D.C 2018) (quoting *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915–16 (D.C. Cir. 2003)); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see generally Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475–76, (1982). "Accordingly, a lack of standing denotes a lack of subject matter jurisdiction, which would support dismissal pursuant to Rule 12(b)(1)." *Sweigert*, 334 F. Supp. 3d at 40. Moreover, "Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction." *Id.*; Fed. R. Civ. P. 12(b)(1).

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Because of this presumption, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). For a federal court,

subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *See Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Zaidan v. Trump*, 317 F. Supp. 3d 8, 16 (D.D.C. 2018) (citing *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).  However, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint; nor must the Court accept plaintiffs' legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  A court also has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion.  *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012).

2. Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard and analyzes whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering a 12(b)(6) motion, a court takes the complaint's factual allegations to be true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are thus insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

### A.  Article III Standing – Injury In-Fact

Walmart first argues that Plaintiffs' action should be dismissed because they have not satisfied the Article III standing requirements since "[they] do not allege they suffered any concrete harm from Walmart's alleged practices." Def.'s MTD at 6. Due to Plaintiffs' admissions in their Complaint, Defendant claims that they are unable to establish a "concrete and demonstrable injury" under Article III. *Id*. at 7 (citation omitted). Accordingly, Defendant argues that Plaintiffs were not damaged because they "decided what items to purchase and voluntarily paid the amount charged at checkout for those items" "[w]ith full knowledge of the amount they would be charged." Def.'s Reply to Pls.' Opp'n to Def.'s Mot. Dismiss, ECF No. 26, ("Def.'s Reply") at 1. In response, Plaintiffs argue that they have satisfied their burden because their injury in fact is "that they should have been charged the shelf prices for their items, but instead were charged a higher price at the register." Pls.' Opp'n to Def.'s Mot. Dismiss, ECF No. 24 ("Pls.' Opp'n") at 3.

To establish the existence of a case or controversy, "the plaintiff 'must clearly . . . allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also Arpaio v. Obama*, 797 F.3d 11 , 19 (2015) ("The plaintiff bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "To establish standing, a plaintiff must show (1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief it seeks." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). "The absence of any one of these three elements defeats standing." *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010). Additionally, the plaintiff's alleged "injury in fact" must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth*, 528 U.S. at 180. In other words, the asserted injury must be specific to the plaintiff, such that the plaintiff has "a personal stake in the outcome of the controversy." *Warth*, 422 U.S. at 498; *see also Lujan*, 504 U.S. at 560 n.1 (noting that a defendant's alleged conduct must affect the plaintiff in a "personal and individual way").

At issue is whether Plaintiffs have sufficiently articulated that they suffered a "concrete and particularized" injury. *See, e.g.*, *Friends of the Earth*, 528 U.S. at 180. Plaintiffs allege that their "concrete and particularized invasion of a legally protected interest" was that "Defendant overcharged them." Pls.' Opp'n at 3. They further argue that when "Defendant charged more

than the shelf price for items, it overcharged its customers, including Plaintiffs;" and overcharging "is the type of concrete and particularized invasion of a legally protected interest that supports standing." *Id.* at 4. The accuracy of shelf pricing is not an issue that has been widely litigated in the D.C. Circuit. However, the Seventh Circuit has dealt with this very issue in *Kahn v. Walmart*, which this Court will consider in its analysis. *See Kahn v. Walmart, Inc.*, No. 1:22-cv-04177, 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023) ("*Kahn* District Court"); *see also Kahn v. Walmart, Inc.*, 107 F.4th 585 (7th Cir. 2024) ("*Kahn* Circuit Court").

In the *Kahn* actions, Kahn, an Ohio resident, visited a Walmart store in Illinois where he noticed that six of the fifteen items he purchased were charged at higher prices than the advertised shelf prices. *See generally* Compl., *Kahn*, 2023 WL 2599858; Compl., *Kahn*, 107 F.4th at 594. Kahn's counsel allegedly investigated and found that similar pricing discrepancies, leading to overcharges, had occurred at Walmart stores across the country, even after Walmart had been fined for similar practices in 2022. *See generally* Compl., *Kahn*, 2023 WL 2599858. The district court ruled in favor of Walmart and granted its motion to dismiss. *Id.* It found that Kahn failed to sufficiently allege the necessary elements for his claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), and unjust enrichment, and concluded that any attempt to amend would be futile. *Id.* On appeal, the Seventh Circuit reversed the district court's dismissal of Kahn's claims, holding that he had sufficiently alleged that Walmart intended for consumers to rely on inaccurate shelf prices, and that Walmart's practices were deceptive, despite the company's previous fines. *See generally Kahn*, 107 F.4th 585. Additionally, the court allowed Kahn's class claims to proceed and gave him the opportunity to amend his complaint regarding future harm under the UDTPA. *Id.*

9

In the Seventh Circuit, a "substantial" injury, as defined by that Circuit, closely aligns with what the D.C. Circuit refers to as a "concrete and particularized" injury. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (holding that courts consider the following three factors when determining whether a practice is unfair under the Illinois Consumer Fraud and Deceptive Business Practices Act: "1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers."). "Substantial" injury must "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citation omitted). In the D.C. Circuit, for an injury to be "particularized," it must affect "the plaintiff in a personal and individual manner." *Electronic Privacy Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 10 (D.D.C. 2014). For an injury to be "concrete," a plaintiff must be injured "personally and distinctly." *Id*. The Court finds that the definitions of injury in each jurisdiction are sufficiently similar to justify relying on the Seventh Circuit's analysis of "substantial" injury to inform the determination of "concrete and particularized" injury in this action.

Regarding Kahn's allegations that Walmart's inaccurate shelf prices create an unfair environment in which consumers are often unwittingly subjected to higher prices at checkout due to the layout and design of Walmart's stores, the *Kahn* Circuit Court found that "Walmart's pricing practices carry the potential to cause substantial injury to consumers by causing small harms to large numbers of them." *Kahn*, 107 F.4th at 603. Furthermore, in response to Kahn's claims that Walmart profits by the hundreds of millions of dollars through the accumulation of these minor overcharges, the *Kahn* Circuit Court had "no trouble seeing how Kahn plausibly

alleges facts showing that Walmart's inaccurate shelf prices and the resulting overcharges constitute an unfair practice." *Id*. This Court agrees.

In this action, Defendant contends that Plaintiffs lack Article III standing, arguing that they have not suffered a concrete injury. *See* Def.'s MTD 3–6. However, the Court finds that Plaintiffs have met their burden at this stage by alleging that the overcharges imposed by Defendant's alleged inaccurate shelf prices constitute a "concrete and particularized" injury. Informing customers of the "correct" price at checkout does not cure the problem. Regardless of whether the consumer identifies the price discrepancy before or after completing the transaction, higher register prices constitute a form of "bait-and-switch" deception, resulting in harm that consumers cannot avoid. *Kahn*, 107 F.4th at 600–601 (holding that bait-and-switch pricing schemes harm consumers by forcing them to spend more time searching for full pricing information or make uninformed decisions, leading to higher prices and reduced-price sensitivity, which makes such practices deceptive even if the total cost is disclosed later).

Finally, the Seventh Circuit noted that "[e]ven if consumers do notice a price discrepancy on a point-of-sale display or on a receipt, they must then raise the issue to the store's attention to resolve it. It is reasonable to infer that many consumers in that situation would be concerned about holding up the six shoppers in line behind them, reluctant to trouble a busy store manager over a few pennies per item, or unable to spare the time to track that manager down." *Id*. at 600. Defendant's argument essentially demands that consumers check prices twice—once on the shelf and again at checkout. The Court finds that it is unreasonable to require customers to exercise such diligence while shopping. Courts have held that such "bait-and-switch" pricing is a deceptive practice, *see id*. at 601, and this Court agrees. As such, because Plaintiffs have

sufficiently alleged an injury in fact to satisfy Article III standing requirements, Defendant's motion to dismiss is denied.

### B. Accuracy of Shelf Pricing

As an alternate basis for dismissing this action, Walmart argues that accepting Plaintiffs' allegations would essentially mandate that Walmart and other retailers who do business in the District of Columbia would "be held strictly liable [for] any pricing inaccuracies." Def.'s MTD at 8. While Plaintiffs do not directly address this issue, they contend that "[f]or at least 50 years, as a matter of law, the shelf price at a self-service store has been the correct price" and "Defendant [is] obligated to sell them those items at the shelf price [] when [Plaintiffs] presented the items that they selected at the register" because "Plaintiffs saw the correct prices on the shelf." Pls.' Opp'n at 9. Based on this, Plaintiffs claim that Walmart disregarded their statements of the correct prices to Walmart's cashiers, choosing instead to charge Plaintiffs a higher, undisclosed price at the register. *Id*.

By relying on the *Kahn* District Court opinion, Defendant argues that the mere difference between shelf prices and checkout prices is not enough to support a claim. Def.'s MTD at 10; *see also Kahn*, 2023 WL 2699858 at *1. Walmart also highlights that Plaintiffs were informed of the correct price before completing their transactions, which allowed them to make informed decisions, and thus, they failed to show any deception or grounds for a viable claim. Def.'s MTD at 10; *Kahn*, 2023 WL 2699858 at *3. However, the *Kahn* Circuit Court rejects this theory by finding that "[i]t is neither 'unreasonable' nor 'fanciful' for consumers to believe that Walmart will sell them its merchandise at the prices advertised on its shelves." *Kahn* 107 F.4th at 598; *see also Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). Because Plaintiffs allege that they relied on the shelf prices in making their shopping decisions, they have

"adequately pled that Walmart's price discrepancies constitute a deceptive act or practice even where the consumer discovers the price discrepancy *before* completing the transaction." *Kahn* 107 F.4th at 598–599.

But Defendant argues that, although D.C. law does not specifically address the accuracy of shelf pricing, other jurisdictions and the U.S. Department of Commerce acknowledge that pricing errors are inevitable. Def.'s MTD at 8–10. Although Defendant argues that D.C. law does not mandate pricing perfection, *see id*. at 8, Plaintiffs are not asserting a claim based on the requirement of perfect pricing. Rather, Plaintiffs allege a consistent pattern of inaccurate shelf pricing, which has allegedly resulted in harm to Plaintiffs and others similarly situated. *See generally* Am. Compl. Whether the alleged pricing errors are an occasional anomaly not constituting pricing perfection or a more widespread pattern that economically benefits Walmart significantly is a merits question to resolve at a later stage of the proceedings. Therefore, regarding the accuracy of shelf pricing, Plaintiffs' allegations are sufficient to withstand the motion to dismiss.

### C.  DCCPPA – Deceptive Act

Walmart's final argument for dismissing the Amended Complaint is that "it does not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled." Def.'s MTD at 11. Defendant further asserts that "Plaintiff should thus be required to allege more than the mere fact of a price discrepancy to state a claim," as "[a] price discrepancy, standing alone, evidences no more than a mere error." *Id*. In response, Plaintiffs argue that intentionality is not required by the DCCPPA and that they have adequately alleged a violation of the statute by asserting that Defendant engaged in deceptive

acts, specifically by "misrepresent[ing] a material fact that has a tendency to mislead (placing shelf prices on items that differ from the prices charged at the register)." Pls.' Opp'n at 10,14.

Under the DCCPPA, it is illegal "for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code § 28-3904. "A claim . . . under the CPPA is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010) (citing *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008)). However, if "[a]ll statements that [plaintiff] points to as misleading are in fact either accurate, not misleading to a reasonable consumer, or mere puffery," there is no actionable conduct under the CPPA. *Id.* at 29. A consumer bringing a claim under the CPPA "need not allege or prove intentional misrepresentation to prevail on a claimed violation," but the consumer "must allege a material fact which has a tendency to mislead." *Grayson v. AT & T Corp.*, 15 A.3d 219, 251 (D.C. 2011).

The Court finds that Plaintiffs have sufficiently alleged that Defendant violated the DCCPPA by alleging that Walmart's placement of shelf prices on items that differed from and were lower than the higher prices charged at the register had a tendency to mislead consumers. Plaintiffs adequately allege that they relied on the shelf prices in making their shopping decisions, and "a reasonable person 'would attach importance to [the] existence or nonexistence [of the shelf prices] in determining his or her choice of action in the transaction. . . .'" *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (citations omitted). Because Defendant did not disclose to Plaintiffs in advance that the register price was higher than the shelf price, its approach to its inconsistent pricing requires that Plaintiffs must remember the shelf prices and compare them to the register prices at checkout. As the Seventh Circuit

articulates, "[r]easonable consumer behavior does not require shoppers to audit their transactions and to overcome those additional hurdles just to ensure that they receive merchandise at the advertised shelf prices." *Kahn*, 107 F.4th at 600.  As such, Plaintiffs have plausibly alleged that Walmart intended for them and other customers to rely on its misleading shelf prices.

Defendant contends that this case is distinguishable from the *Kahn* Circuit Court opinion because that case involved the interpretation of the ICFA and not the DCCPPA, and that the central issue in *Kahn* was whether providing a receipt showing the amount charged was sufficient to shield the defendant from liability under Illinois law.  *See* Def.'s Reply at 5.  The Court disagrees.  While the receipt issue was a relevant consideration in *Kahn*, it is not the focus in this action: the primary issue in both cases is whether the defendant's conduct can be classified as a deceptive or unfair practice that causes harm to consumers.  In *Kahn*, the court evaluated whether Walmart's actions could constitute deceptive or unfair practices under the ICFA, and here, the same issue arises under the DCCPPA.  Given that Plaintiffs have sufficiently alleged how Walmart's unfair and deceptive practices resulted in consumer harm, the Court concludes that Plaintiffs have adequately stated a claim under the DCCPPA.  Whether Plaintiffs can prove their case is another matter to be addressed later in this proceeding.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED** and Defendant's motion to compel arbitration is **DENIED** as moot.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 3, 2025                                                                     RUDOLPH CONTRERAS
                                                                                                          United States District Judge