**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CHRISTINA RECTOR, | : | | |
| | : | | |
| LIZETTE MCKINNEY, | : | | |
| | : | | |
| on behalf of themselves and all others similarly situated, | : : | Civil Action No.: | 24-658 (RC) |
| | : | | |
| Plaintiffs, | : | Re Document No.: | 41 |
| | : | | |
| v. | : | | |
| | : | | |
| WALMART INC., | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING WALMART'S MOTION TO STAY**

**I. INTRODUCTION**

Christina Rector ("Plaintiff Rector") and Lizette McKinney ("Plaintiff McKinney") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file a class action suit against Walmart Inc. ("Walmart" or "Defendant"). Plaintiffs allege that many items sold at Walmart stores are advertised at a lower shelf-price than what they charge customers at the register; and because Plaintiffs and others similarly situated make their shopping decisions based on the shelf prices, Walmart misleads Plaintiffs and other consumers in violation of D.C.'s Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3901 *et seq*. Walmart initially moved to compel arbitration of Plaintiffs' original complaint based on their inclusion of purchases made on Walmart's online platforms. Plaintiffs responded by filing an amended complaint. Walmart subsequently moved to dismiss, arguing that Plaintiffs lacked standing in this action and that Plaintiffs failed to state a cause of action. This Court denied Walmart's

motion to dismiss and its motion to compel arbitration as moot. Walmart now moves to stay the proceedings in this Court under the first-to-file rule. For the foregoing reasons, Walmart's motion to stay is granted.

## II. FACTUAL BACKGROUND

The Court presumes familiarity with the factual and legal background, which was described in detail in the Court's prior memorandum opinion. *See* Mem. Op. Den. Def.'s Mot. Dismiss, ECF No. 37. A brief overview follows.

On January 23, 2024, Plaintiffs filed a putative class action against Walmart alleging that it "charged [Plaintiff Rector and others similarly situated] more for two items at the checkout counter than the prices reflected on the store shelf" in violation of DCCPPA. Def.'s Mem. Supp. Mot. Compel at 1, 132, ECF No. 16-1. In response, Walmart filed a motion to compel arbitration on April 12, 2024. Def.'s Notice of Removal at 1–2, ECF No. 1; Def.'s Mem. Supp. Mot. Compel at 8–12. Walmart argued that the claims asserted in the complaint must be resolved through arbitration because an enforceable arbitration agreement covered this dispute, and an arbitration must proceed on an individual basis. Def.'s Mem. Supp. Mot. Compel at 8–12. Alternatively, Walmart contended that Plaintiffs' claims should be dismissed because they lacked Article III standing and failed to state a cause of action. *Id.* at 12–18. Walmart believed that the law did not require pricing perfection, and "the Complaint did not contain sufficient facts to establish that Walmart engaged in a deceptive act or that a reasonable consumer otherwise would be misled." *Id.* Plaintiffs responded to Walmart's motion to compel arbitration with an amended complaint on May 24, 2024. *See generally* Am. Compl., ECF No. 20.

In the amended complaint, Plaintiff Rector alleges that Walmart charged her more than the shelf price for select products while shopping at three stores in Washington, D.C. throughout

2

2022 and 2023. *Id.* ¶¶ 1, 36, 51. Plaintiff Rector also added Lizette McKinney, who shared a similar experience while shopping at a Walmart store in Washington, D.C. in 2023, as a named plaintiff. *Id.* ¶ 2. Plaintiffs sought to certify the following class: "[a]ll persons who, during the time period January 23, 2021 and thereafter, were charged at a Walmart store in Washington, D.C. more for an item than the displayed shelf tag price at the Walmart store located in Washington, D.C." *Id.* ¶ 111. Walmart moved to dismiss the amended complaint on June 21, 2024, which this Court subsequently denied on March 3, 2025. Def.'s Mot. Dismiss, ECF No. 22; Mem. Op. Den. Def.'s Mot. Dismiss at 1–2. The Court considered *Kahn v. Walmart, Inc.*, when deciding the motion. *See* Mem. Op. Den. Def.'s Mot. Dismiss at 9–10; *see also Kahn v. Walmart, Inc.*, 107 F.4th 585 (7th Cir. 2024) ("*Kahn II*"); *Kahn v. Walmart, Inc.*, No. 22-cv-4177, 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023) ("*Kahn I*").

In the *Kahn* actions, Plaintiff Yoram Kahn, an Ohio resident, visited a Walmart store in Illinois where he noticed that six of the fifteen items he purchased were charged at higher prices than the advertised shelf prices. *See generally* Compl., *Kahn I*, No. 22-cv-4177, ECF No. 1. Kahn brought claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), and for unjust enrichment on August 9, 2022. *See id.* at 18–27. He sought to certify a nationwide class and two multi-state classes. *See id.* ¶¶ 49, 51–52 nn.13–14. For example, the "Multi-State Consumer Protection Class" included "[a]ll persons who purchased merchandise from a Walmart store in the State of Illinois or any other state with similar laws, within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for the merchandise than the advertised shelf-prices" *Id.* ¶ 51. Kahn listed some examples of "state[s] with similar laws"

3

in footnote 13 of his complaint, including the District of Columbia.[1]  *Id.* ¶ 51 n.13 (citing D.C. Code § 28-3901 *et seq.*).  Walmart moved to dismiss for failing to sufficiently state a claim, and the district court granted it on March 21, 2023.  *See* Def.'s Mot. Dismiss, *Kahn I*, No. 22-cv-4177, ECF No. 25; Mem. Op. Granting Def.'s Mot. Dismiss, *Kahn I*, No. 22-cv-4177, ECF No. 37.  The Seventh Circuit reversed the district court's dismissal on July 3, 2024, holding that he had sufficiently alleged that Walmart intended for consumers to rely on inaccurate shelf prices, and that Walmart's practices were deceptive, despite the company's previous fines.  *See Kahn II*, 107 F.4th at 591–92.  The court allowed Kahn's class claims to proceed and gave him the opportunity to amend his complaint regarding future harm under the UDTPA.  *Id.*  Kahn amended his complaint accordingly, and he seeks to certify the same nationwide and two multi-classes as alleged in his original complaint.  *See* Am. Compl. ¶¶ 49, 51–52 nn.13–14, *Kahn I*, No. 22-cv-4177, ECF No. 53.  Discovery in this case is expected to close on December 10, 2025.  *See* Min. Entry, *Kahn I*, No. 22-cv-4177, ECF No. 52.

Considering the Seventh Circuit's revival of *Kahn*, Walmart requests this Court to stay its proceedings under the first-to-file rule.  Def.'s Mot. Stay ("Def.'s Mot.") at 1, ECF No. 41-1.  This comes after a district court in Arkansas stayed a similar putative class action that raised "allegations that Walmart charges customers more at checkout than the prices listed on the shelf."  *Myers v. Walmart, Inc.*, No. 24-cv-5182, 2025 WL 70987, at *1 (W.D. Ark. Jan. 10, 2025).  Walmart argues that Plaintiffs' claims are duplicative of those raised in the ongoing *Kahn*

---

[1] The other proposed multi-state class, the "Multi-State Uniform Deceptive Trade Practices Act ("UDTPA") Class," includes "[a]ll persons who purchased merchandise from a Walmart store in the State of Illinois or any state that has adopted similar UDTPA laws, within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices."  Compl. ¶ 52, *Kahn I*, No. 22-cv-4177.  Kahn listed D.C. Code § 28-3901 *et seq.*, as an example of a state with similar laws in footnote 14 of his complaint, the same statute he referenced in footnote 13.  *See id.* ¶ 52 nn.13–14.

litigation and that the "proposed D.C. class . . . is subsumed within Kahn's proposed Multi-State class." Def.'s Mot. at 2, 4.  This Court has not held an initial scheduling conference, nor have the parties exchanged discovery.  Plaintiffs oppose the motion.  Pl.'s Opp'n Def.'s Mot. Stay ("Pl.'s Opp'n"), ECF No. 44.

### III.  LEGAL STANDARD

In the D.C. Circuit, "[w]here two cases between the same parties on the same cause of action are commenced in two different [f]ederal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (quoting *Speed Prods. Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948) (alteration in original) (internal quotation marks omitted)).  "Though no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts because it preserves the "orderly administration of justice" and prevents "expend[ing unnecessary] judicial resources." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted); *UtahAmerican Energy, Inc. v. Dep't of Lab.*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (internal quotation marks and citations omitted).  "[D]istrict courts have discretion to stay or dismiss a pending suit [under the first-to-file rule]." *Rahman v. Blinken*, No. 23-cv-3235, 2024 WL 4332603, at *9 (D.D.C. Sep. 27, 2024) (citing *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003)).

However, "this [C]ourt has repeatedly held that the rule should not be mechanically applied, but rather that due weight should be given to equitable considerations." *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 63 (D.D.C. 2013).  These equitable considerations include "(1) whether all parties are present in both cases, (2) the

5

location of witnesses, and (3) the stage of the respective proceedings." *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 7 (D.D.C. 2011) (citation omitted).

## IV.  ANALYSIS

As a threshold matter, Plaintiffs argue that the *Kahn* district court lacks personal jurisdiction over their allegations of deceptive pricing practices at D.C. stores; therefore, the first-to-file rule is inapplicable. *See* Pl.'s Opp'n at 3–6.  Walmart contends that the *Kahn* district court, for the purposes of this argument,[2] has specific personal jurisdiction over these claims. *See* Def.'s Reply Pl.'s Opp'n Def.'s Mot. Stay ("Def.'s Reply") at 2–4, ECF No. 47.  Plaintiffs suggest, "[t]he law in the Northern District of Illinois, <u>as established by Walmart last year</u>, is that a federal court may not exercise specific or general personal jurisdiction over Walmart in one jurisdiction, for claims arising under the laws of, and from activities that occurred in, a different jurisdiction."  Pl.'s Opp'n at 3 (emphasis in original).  And because Walmart is raising a contrary argument here, they should be "judicially estopped from arguing that the [*Kahn* district court] has jurisdiction over out-of-state claims." *Id.* at 4.  This Court agrees with Walmart.

The Fifth Amendment's Due Process Clause requires that the defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  That is, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws[,]" "such that [it] should reasonably anticipate being haled into court there." *See Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S.

---

[2] Walmart reserves its right to raise a personal jurisdiction defense at the class certification stage. *See* Def.'s Reply at 3 n.2.

102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court has "recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction permits the forum state to adjudicate any claims brought against the defendant, "even if all the incidents underlying the claim occurred in a different [s]tate," so long as the defendant's contacts with the forum state are "continuous and systematic." *Bristol-Myers Squibb Co.*, 582 U.S. at 262; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Specific jurisdiction, on the other hand, requires that the suit "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 582 U.S. at 262.

In the context of class actions, "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).[3] This rule exists because, "[o]nce certified, the class as a whole is the litigating entity, and its affiliation with a forum depends only on the named plaintiffs." *Id.* at 445 (citation omitted). As the Seventh Circuit correctly explained, a contrary holding would render nationwide class actions "impossible" any

---

[3] In *Bristol-Myers Squibb Co.*, the Supreme Court held that a state may not exercise specific personal jurisdiction over the claims of nonresident parties. *See* 582 U.S. at 268. The Court did not answer "whether, in a Rule 23 class action, each unnamed member of the class must separately establish specific personal jurisdiction over a defendant." *Mussat*, 953 F.3d at 447. *Mussat* involved a nationwide claim under a federal statute, the Telephone Consumer Protection Act, 47 U.S.C. § 227. *See* 953 F.3d at 443. But the Northern District of Illinois, the same forum where the *Kahn* litigation is pending, held that the Seventh Circuit's reasoning in *Mussat* "applies just as well to state law claims." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 860 (N.D. Ill. 2021).

time the defendant is subject to specific jurisdiction because unnamed class members' injuries may not "arise out of or relate to the defendant's contact with the forum." *See Bristol-Myers Squibb Co.*, 582 U.S. at 262; *Mussat*, 953 F.3d at 446.

Whether Plaintiffs can demonstrate that the *Kahn* district court has personal jurisdiction over their D.C. claims is not relevant because Plaintiffs are not named parties in the *Kahn* litigation. *See Mussat*, 953 F.3d at 447 (holding unnamed class members are not required to demonstrate that the court has personal jurisdiction over the defendant); *see also* Am. Compl., *Kahn I*, No. 22-cv-4177. All that matters is whether Kahn can show that the *Kahn* district court has personal jurisdiction over Walmart for the nationwide and two multi-state classes he seeks to certify. *See id.* Walmart argues, and this Court agrees, that the *Kahn* district court may exercise specific personal jurisdiction over Kahn.[4] *See* Def.'s Reply at 3. Kahn's injury, allegedly paying more than the advertised shelf-price for select items, occurred in Illinois, the forum state where *Kahn* is pending. *Id.*

Plaintiffs argue that Walmart prevailed on a contradictory argument in *Thomas v. Walmart*, 720 F. Supp. 3d 650 (N.D. Ill. 2024). *See* Pl.'s Opp'n at 3–4. But their argument is based on a misunderstanding of the facts in *Thomas*. In that case, two Illinois residents and one California resident sued Walmart, on behalf of themselves and all others similarly situated, for alleged violations of state consumer protection statutes, among other things, in the Northern District of Illinois. *See Thomas*, 720 F. Supp. 3d at 655. The California plaintiff brought claims under California's Unfair Competition Law, Bus & Prof. Code §§ 17200 *et seq.*, on behalf of a

---

[4] A federal court may exercise general personal jurisdiction over a corporation if its place of incorporation or principal place of business is located in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Walmart asserts that it "is not subject to general personal jurisdiction in Illinois because it is neither incorporated nor headquartered there." Def.'s Reply at 4. Therefore, Kahn must demonstrate that Walmart is subject to specific personal jurisdiction.

California class.  *See* Am. Compl. ¶¶ 13, 63, 117–170, *Thomas v. Walmart*, No. 23-cv-5315 (N.D. Ill. Nov. 6, 2023), ECF No. 24.  Walmart argued that the Northern District of Illinois "lack[ed] personal jurisdiction over Walmart with respect to [the California plaintiff's] California state law claims" because the named California plaintiff could not "demonstrate either general or specific personal jurisdiction" over Walmart.  *See Thomas*, 720 F. Supp. 3d at 661; *Mussat*, 953 F.3d at 447.  The *Thomas* court subsequently dismissed those claims and let claims brought by the Illinois named plaintiffs on behalf of a nationwide class proceed.  *See Thomas*, 720 F. Supp. 3d at 667 (dismissing Counts III, IV, and V, all California-specific claims); Am. Compl. ¶¶ 171–213, *Thomas v. Walmart*, No. 23-cv-5315.  Plaintiffs suggest that Walmart "seek[s] to prevail, twice, on opposite theories."  Pl.'s Opp'n at 4–5 (quoting *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992)).  But that is incorrect.  In both *Thomas* and in this case, Walmart argued that only a named plaintiff must demonstrate that a federal court has personal jurisdiction over the defendant.  *See* Def.'s Reply at 2, 4.  And, here, Plaintiffs are not named plaintiffs in *Kahn*.  *See* Am. Compl., *Kahn I*, No. 22-cv-4177.

Therefore, Walmart has facially shown that *Kahn* should "proceed to its conclusion first" because the first-to-file rule applies.  *See Ragonese*, 617 F.2d at 830.  This Court may forgo "mechanically appl[ying]" the rule upon weighing "equitable considerations."  *See Blackhawk Consulting, LLC*, 975 F. Supp. 2d at 63.  The equitable considerations this Court must consider are "(1) whether all parties are present in both cases, (2) the location of witnesses, and (3) the stage of the respective proceedings."  *Furniture Brands*, 804 F. Supp. 2d at 7 (citation omitted).  After consideration of these factors, this Court finds that equitable considerations do not outweigh the application of the first-to-file rule in this case.

### A. Party Presence – Class Membership

The first equitable consideration this Court considers is "whether all parties are present in both cases." *Furniture Brands*, 804 F. Supp. 2d at 6–7. Walmart alleges that Plaintiffs qualify as members in the *Kahn* litigation, and because Plaintiffs are already putative members of those classes, they are not prejudiced by a stay. This Court agrees that Plaintiffs meet the eligibility criteria of the *Kahn* classes.

For example, the *Kahn* Multi-State Consumer Protection Class includes "[a]ll persons who purchased merchandise from a Walmart store in the State of Illinois or *any other state with similar laws*, within the applicable statute of limitations . . . and paid higher prices for the merchandise than the advertised shelf-prices." *See* Compl. ¶ 51, *Kahn I*, No. 22-cv-4177 (emphasis added). And Kahn included the District of Columbia as an example of a "state with similar laws" in footnote 13 of his complaint. *Id.* ¶ 51 n.13 (citing D.C. Code § 28-3901 *et seq.*).

Although the *Kahn* nationwide and multi-state classes[5] have not been certified yet, this Court believes that Plaintiffs satisfy *Kahn*'s requirements. As in the case of the Multi-State Consumer Protection Class, both Plaintiffs are "persons who purchased merchandise from a Walmart store" in a state with consumer protection statutes like the ICFA and UDTPA,[6] and they

---

[5] *See supra* note 1 for a discussion of the other *Kahn* multi-state class, the Multi-State UDTPA Class.

[6] The DCCPPA prohibits "any person [from] engag[ing] in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby[.]" D.C. Code § 28-3904. Similarly, the ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to . . . the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'. . . ." 815 Ill. Comp. Stat. 505/1 *et seq.* The Illinois UDTPA characterizes "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" as a deceptive practice. 815 Ill. Comp. Stat. 510/2(a)(11).

are claiming that they paid more than the advertised shelf price. *See* Am. Compl. ¶¶ 1, 2, 36, 97, 132.

Plaintiffs do not contest that the *Kahn* multi-state classes completely subsume their proposed class. *See generally* Pl.'s Opp'n. Nor do Plaintiffs challenge their own membership in *Kahn*'s proposed multi-state classes. *Id.* at 4–5. Instead, Plaintiffs argue that the Court should not apply the first-to-file rule because the *Kahn* district court has not certified the *Kahn* classes. *See* Pl.'s Opp'n at 4–7. This argument fails.

Neither party can cite binding precedent on this Court that suggests the first-to-file rule applies to putative classes. *See* Pl.'s Opp'n at 6–7; Def.'s Reply at 5–7. Plaintiffs cannot point to a single case to support their proposition. *See* Pl.'s Opp'n at 6.[7] Walmart, on the other hand, mentions that the Sixth Circuit and several lower federal courts have already considered this question.[8] *See, e.g.*, Def.'s Reply at 5 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016) ("[F]or purposes of identity of the parties when applying the first-

---

[7] Neither case that Plaintiffs cite addresses whether the first-to-file rule applies to putative classes. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (holding that absent class certification, claims from nonresident putative classes should not be dismissed); *Gomez v. Trump*, 490 F. Supp. 3d 276, 291 (D.D.C. 2020) (granting and denying in part Plaintiffs' motions to certify classes in lawsuits against the State Department regarding its adjudications of DV-2020 diversity visa and derivative beneficiary applications), *overruled on other grounds by Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024).

[8] Walmart cities several cases from lower federal courts around the country to support the proposition that the first-to-file rule applies to putative classes when considering party presence. *See, e.g.*, Def.'s Reply at 5 n.3 (citing *Gonzalez v. Homefix Custom Remodeling Corp.*, 670 F. Supp. 3d 337, 343–44 (E.D. Va. 2023) ("Where the two compared actions are proposed class actions, courts applying the First-to-File Rule 'have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified.'" (quoting *Baatz*, 814 F.3d at 790)); *Yancey v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-377, 2023 WL 5019769, at *3 (E.D. Mo. Aug. 7, 2023) (rejecting plaintiffs' argument "that the first-filed-rule motion is premature because the class in the first-filed case has yet to be certified"); *Santana v. Cavalry Portfolio Servs., LLC*, No. 19-cv-3773, 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019) ("That a first-filed class action has not yet reached the class certification stage does not prevent application of the first-filed rule." (citing *Baatz*, 814 F.3d at 790)).

11

to-file rule, courts . . . look[] at whether there is substantial overlap with the *putative class* even though the class has not yet been certified.") (emphasis added)).  The Court is persuaded by that line of cases because, amongst other reasons, adopting the opposite rule "could force resource-draining duplicative class actions to proceed simultaneously."  *See Baatz*, 814 F.3d at 791.

### B.  Location of Witnesses

The second equitable consideration this Court considers is "the location of witnesses." *Furniture Brands*, 804 F. Supp. 2d at 6–7.  Plaintiffs argue that proceedings should continue in this Court because "this case may require depositions of named plaintiffs, putative class members, or employees [who are located] in D.C."  Pl.'s Opp'n at 7 (quoting Def.'s Mot. at 6). Walmart concedes that point.  But it argues that D.C. is not a convenient forum because "Walmart is based in Arkansas and plaintiffs will likely seek depositions of individuals who live in Arkansas."  *See* Def.'s Mot. at 6.  And if the parties need to depose any individuals in D.C. Walmart suggests that "those depositions can occur after the stay is lifted."  *Id*.

Therefore, it is unclear that this forum heavily favors either party.  *See Blackhawk Consulting*, 975 F. Supp. 2d at 62 (transferring a second-filed case to another forum where most witnesses resided because the motions "clearly identif[ied] the purpose and relevance of each witness's testimony").  And, consequently, this Court believes that any witnesses located in D.C. can be deposed after this Court lifts the stay.

### C.  Stage of Respective Proceedings

The last equitable consideration this Court considers is "the stage of the respective proceedings."  *Furniture Brands*, 804 F. Supp. 2d at 6–7.  And the Court finds that this factor clearly favors granting the stay.

The *Kahn* class action began on August 9, 2022—roughly 17 months before this case. *See* Compl., *Kahn I*, No. 22-cv-4177; Def.'s Mem. Supp. Mot. Compel at 1, 132. Since then, the Seventh Circuit reversed the *Kahn* district court's dismissal on July 3, 2024, holding that Plaintiff had sufficiently alleged that Walmart intended for consumers to rely on inaccurate shelf prices, and that Walmart's practices were deceptive, despite the company's previous fines. *See Kahn II*, 107 F.4th at 591–92. Kahn amended his complaint, and he seeks to certify the same nationwide and two multi-state classes as alleged in his original complaint. *See* Am. Compl. ¶¶ 49, 51–52 nn.13–14, *Kahn I*, No. 22-cv-4177. Discovery in *Kahn* is expected to close on December 10, 2025. *See* Min. Entry, *Kahn I*, No. 22-cv-4177.

By contrast, this case is just getting started. This Court has not held an initial scheduling conference, nor have the parties exchanged discovery. Plaintiffs argue that this case is further along because they "already performed an extensive investigation into Walmart's pricing practices in D.C., having identified hundreds of mispriced items, dates of the mispricing, and means of identifying class members who purchased those items [in their amended complaint]." Pl.'s Opp'n at 9. None of these allegations appear to involve named Plaintiffs. Am. Compl. ¶¶ 73–89. Instead, these allegations appear to be linked to transactions made by Plaintiffs' private investigator, Scott Kucik, and not by a consumer for personal use. *Id.* None of this evidence has been admitted to this Court, nor has this Court scheduled any hearings to resolve the evidentiary issues that these allegations raise.

\*   \*   \*

"Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975). "In

some cases, staying the case allows parties to 'obtain[ ] the relief sought' in another forum, which could render the present case moot." *Faizi v. Garland*, No. 24-cv-839, 2024 WL 5075824, at *5 (D.D.C. Dec. 11, 2024) (alteration in original) (quoting *Barcardi & Co. Ltd. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*, No. 04-cv-519, 2007 WL 1541386, at *2 (D.D.C. May 24, 2007)). "The same reasoning applies here with equal force because resolution of the [*Kahn*] action may moot this entire case." *Id.*

The Court finds that Plaintiffs are already members of the *Kahn* classes, and consequently, their interests are represented in that litigation. "Since both cases involve overlapping allegations and given that plaintiffs are expected to seek the same discovery in both cases, the overlap is likely to be significant." Def.'s Mot. at 6. And, therefore, the outcome of that class action may make Plaintiffs' claims moot. Moreover, staying this case furthers judicial economy and does not prejudice Plaintiffs because their case may proceed in this District if the *Kahn* district court narrows the class to exclude them or ultimately declines to certify the *Kahn* classes. *See Bell v. Dep't of Def.*, No. 16-cv-2403, 2018 WL 4637006, at *18 (D.D.C. Sept. 27, 2018).

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay (ECF No. 41) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 4, 2025                                                                                   RUDOLPH CONTRERAS
                                                                                                                                United States District Judge